# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Hubert Philogene, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 08-01399 (RWR) |
| v. | ) | |
| | ) | |
| District of Columbia, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

Defendants the District of Columbia, the Department of Consumer and Regulatory Affairs, the Alcoholic Beverage Regulation Administration and the Metropolitan Police Department ("Defendants"), by and through undersigned counsel and pursuant to Fed. Rs. Civ. P. 12(b)(5) and 12(b)(6), hereby move this Honorable Court to dismiss the Plaintiff's Amended Complaint. The Court should grant the Defendants' Motion, because:

1.  Prior to removal, Plaintiff failed to effectuate proper service pursuant to SCR-Civil 4;

2.  The Department of Consumer and Regulatory Affairs, the Alcoholic Beverage Regulatory Administration and the Metropolitan Police Department are *non sui juris*;

3.  The Mayor is not a proper party;

4.  Plaintiff's non-federal claims against the District are barred, because the plaintiff failed to comply with the mandatory notice requirements of D.C. Code § 12-309;

5.  Plaintiff's claims of illegal citations and a violation of constitutional due process rights must be dismissed because Plaintiff is not the real party in interest and does not have capacity to sue on behalf of an LLC;

6. Plaintiff's claims of illegal citations and due process violations should be dismissed because Plaintiff failed to exhaust his administrative remedies;

7. Plaintiff's constitutional claims must be dismissed because Plaintiff cannot demonstrate that the District of Columbia maintained a custom or policy that resulted in a violation of Plaintiff's constitutional rights.

A Memorandum of Points and Authorities in support of this Motion, along with a proposed Order, are attached. Because this is a dispositive motion, the District is not required to seek the Plaintiff's consent pursuant to LCvR 7(m).

Dated: August 19, 2008

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Toni Michelle Jackson
TONI MICHELLE JACKSON/KMJ [453765]
Chief, General Litigation Section III

/s/ Nicholas Coates
NICHOLAS COATES[1]
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor
Washington, D.C. 20001
(202) 724- 6644 (office)
(202) 741-0578 (fax)
Email: Nicholas.Coates@dc.gov

---

[1] Appearance entered under D.C. App. 49 (c)(4).

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2008, I caused the foregoing DEFENDANTS'

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, MEMORANDUM OF

POINTS AND AUTHORITIES SUPPORTING DEFENDANTS' MOTION TO DISMISS and

proposed Order to be filed with the Clerk of the Court using the CM/ECF system and also mailed

a copy via U.S. Mail, first-class postage pre-paid to:

Hubert Philogene
915 5th St. NW
Washington, DC 20001


                                        /s/ Nicholas Coates
                                        NICHOLAS COATES
                                        Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Hubert Philogene,               )
                                )
        Plaintiff,              )
                                )        Civil No. 08-01399 (RWR)
v.                              )
                                )
District of Columbia, et al,    )
                                )
        Defendants.            )
_____)

### MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants District of Columbia, the Department of Consumer and Regulatory Affairs, the Alcoholic Beverage Regulation Administration and the Metropolitan Police Department ("Defendants"), by and through the undersigned counsel, respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiff's Amended Complaint.

### BACKGROUND

On May 29, 2008, Plaintiff filed a Complaint in the Superior Court of the District of Columbia, Case number 2008 CA 004005B. In his Complaint, Plaintiff alleged that Defendants illegally cited his business for operating without a license. See Complaint ¶¶ 6-14, attached as Exhibit A. On June 27, 2008, Defendants filed a Consent Motion for More Definite Statement, which was granted on July 16, 2008. On July 17, 2008, Plaintiff filed an Amended Complaint, in which he claimed Defendants illegally cited his business, Caribbean Cultural Center, LLC, and illegally arrested him. *See* Am. Compl. ¶ 1, attached as Exhibit B. Plaintiff's Amended Complaint alleges common law claims of false arrest and imprisonment and illegal citations, and constitutional claims of an illegal

seizure and due process violation as a result of the alleged illegal citations.  On August

12, 2008, Defendants removed the case to federal court.

### STANDARD OF REVIEW

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate when a moving party

has failed to set forth a claim for which he is entitled to relief.  The determination of

whether a dismissal is proper must be made on the face of the pleadings alone.  *See*

*Telecommunications of Key West, Inc. v. United States*, 757 F.2d 1330, 1335 (D.C. Cir.

1985).  A plaintiff is required to plead enough facts to state a claim for relief that is

plausible on its face. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007).

In order to survive a motion to dismiss, a plaintiff's complaint must contain "more

than labels and conclusions and a formulaic recitation of the elements of a cause of

action." *Twombly*, 127 S.Ct. at 1964-65.  "When the allegations in a complaint, however

true, could not raise a claim of entitlement to relief, this basic deficiency should be

exposed at the point of minimum expenditure of time and money by the parties and the

court." *Id.* at 1966.

### DISCUSSION

**I.  Plaintiff's Amended Complaint should be dismissed because prior to removal
     Plaintiff failed to effectuate proper service on the District of Columbia.**

In actions removed from state court to federal court, the sufficiency of service of

process prior to removal is determined by the law of the state from which the action was

removed; after removal, sufficiency of service of process is determined according to

federal law.  28 U.S.C. § 1448; *see also Rentz v. Swift Transp. Co.*, 185 F.R.D. 693, 696

(M.D. Ga. 1998); *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285,

1286 (11th Cir. 1985)(A federal court may consider the sufficiency of service of process

after removal by first determining whether the plaintiff had complied with the state law provisions governing service of process during the period in which the action was pending in state court).

In this case, prior to removal, Plaintiff failed to properly effectuate serve on the Defendants pursuant to the D.C. Superior Court Rules. D.C. Superior Court Rule 4(j)(1) states that:

> Service shall be made upon the District of Columbia by delivering (pursuant to paragraph (c)(2)) or mailing (pursuant to paragraph (c)(3)) a copy of the summons, complaint and initial order to the Mayor of the District of Columbia (or designee)[2] and the Corporation Counsel[3] of the District of Columbia (or designee)[4].

SCR-Civil 4(j)(1).

The mandatory language of SCR-Civil 4(j) does not permit the court to exercise any discretion. *Bulin v. Stein*, App. D.C., 668 A.2d 810 (1995). The Rules are clear and unambiguous regarding who must be served in order to bring a cause of action against the District of Columbia. According to Rule 4(j), service on the Mayor and the Attorney General is proper only if they are served personally, or service is made on an official designee of the Mayor or Attorney General.

In *Eldridge v. District of Columbia*, 866 A.2d 786 (D.C. 2004), the Court of Appeals dismissed the plaintiff's complaint for failure to effect proper service of process. In that case, "although the Complaint was mailed to the Office of the Mayor and the Office of the Corporation Counsel and signed for by employees in those respective

---

[2] The Mayor has designated Tabatha Braxton, Arlethia Thompson, and/or Kadesha Washington to accept service of process on his behalf.

[3] Per an Executive Order dated May 26, 2004, the Office of the Corporation Counsel is now called the Office of the Attorney General.

[4] The Attorney General has designated Darlene Fields, Tonia Robinson and/or Gale Rivers to accept service of process on his behalf.

offices, they were not, however, signed for and received by the specific employees designated to receive service of process." (*Id.* at 787.) The Court of Appeals upheld the trial court's dismissal of the Complaint. In so doing, the Court acknowledged the legitimate policy considerations behind the requirements of SCR-Civil 4(j)(1) by stating:

> [a]s an institutional defendant, the District of Columbia is subject to many lawsuits. The Mayor and the Corporation Counsel must be put on notice when a lawsuit is filed against the District, and Super. Ct. Civ. R. 4 (j)(1) provides the manner by which a plaintiff can satisfy this requirement. In their official capacities the Mayor and the Corporation ... Counsel receive an enormous amount of mail. Super. Ct. Civ. R. 4 (j)(1) serves as a filter on this mail and assures that when an individual seeks to initiate a suit against the District, the required papers will get to the proper destination.

*Id.* at 787. Accordingly, the court concluded that, since the Mayor and the Corporation Counsel "specifically appointed someone to receive service of process pursuant to [SCR-Civil] 4(j)(1)... [t]hose designees are the only individuals upon whom process can be served." (*Id.* at 788.)

Service via certified mail is permissible under SCR-Civil 4(j), but it must comply with all other provisions of Rule 4. Therefore, pursuant to SCR-Civil 4(l), it is the plaintiff's obligation to prove that the District was served in accordance with the provisions of Rule 4(j). If service is attempted via registered or certified mail, which is permitted under SCR-Civil 4(c)(3), "the return shall be accompanied by the signed receipt attached to an affidavit." SCR-Civil 4(l)(2). According to the Rule, "if the return receipt does not purport to be signed by the party named in the summons," the affidavit also must include "specific facts from which the Court can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process set out in subdivisions (e) through (j) of this Rule." *Id.* Simply put, if the Mayor or Attorney General does not personally sign the certified return receipt, it is the plaintiff's obligation

to attest to facts showing that the mailing was received by the Mayor or Attorney General's official designees for service of process.

Additionally, a plaintiff must, "within 60 days of the filing of the complaint...file either an acknowledgement of service or proof of service of the summons, the complaint and any order directed by the Court to the parties at the time of filing." SCR-Civil 4(m). If a party fails to follow the 60-day filing requirement, the complaint shall be dismissed. *Id.*; *see also Gross v. District of Columbia, et al.*, 734 A.2d 1077 (1999) ("[Rule 4(m)] confers no discretion in the event of noncompliance; in the most straightforward manner, failure to timely file proof of service compels automatic dismissal."); *Cameron v. Washington Metro. Area Transit Auth.*, 649 A.2d 291, 293 (D.C. 1994) ("The language of this rule is plain and unambiguous. The rule states that...failure to [follow its prescriptions] shall result in dismissal."); *Dorsey v. District of Columbia*, 839 A.2d 667, 668-669 (D.C. 2003) (upholding dismissal for failing to comply with mandatory Rules 4(j) and (m), even when plaintiff would be barred by the statute of limitations to re-bring the claim).

Here, Plaintiff filed his Complaint on May 29, 2008. *See* Courtview Summary, attached as Exhibit C. Plaintiff filed several affidavits of service with the Superior Court, attached as Exhibits D-I. These affidavits and the attached return receipts show that service was not made on the Mayor, Attorney General or any of their official designees. *See* Exhibits D-K; SCR-Civil 4(j). Additionally, Plaintiff failed to provide any specific facts to show that the individuals who signed the return receipts met the appropriate qualifications for receipt of process. *See* SCR-Civil 4(l). Therefore, these affidavits prove that service was not proper on the District. *Id.*; SCR-Civil 4(j).

On August 11, 2008, prior to removal, Plaintiff filed five affidavits of service by process server, attached as Exhibits J-N. These affidavits state that a process server served official designees of the Mayor and the Attorney General on August 7, 2008. *See* Exhibits L-P. Because these affidavits were filed well after 60 days from the filing of the original Complaint, Plaintiff failed to comply with the mandatory proof of service rules. *See* SCR-Civil 4(m). Therefore, under D.C. Rules, Plaintiff's Amended Complaint must be dismissed pursuant to the mandatory language in SCR-Civil 4(m). Accordingly, because the sufficiency of service of process prior to removal is determined by the law of the state, Plaintiff's Amended Complaint must be dismissed. *Rentz*, 185 F.R.D. 698, 696.

## II. All claims against the Department of Consumer and Regulatory Affairs, the Alcoholic Beverage Regulatory Administration and the Metropolitan Police Department must be dismissed because they are *non sui juris*.

A governmental agency may neither sue nor be sued in the absence of a statutory provision to that effect. *See Blackmar v. Guerre*, 342 U.S. 512 (1952); *see also, Arnold v. Moore*, 980 F. Supp. 28 (D.D.C. 1997) (*citing Roberson v. District of Columbia Bd. Of Higher Ed.*, 359 A.2d 26, 31 n.4 (D.C. 1976)); *Miller v. Spence*, 330 A.2d 250, 251 n. 1 (D.C.1974); *Fields v. District of Columbia Department of Corrections*, 789 F. Supp. 20 (D.D.C. 1992).

There is no statutory authority authorizing suit against the Department of Consumer and Regulatory Affairs ("DCRA"), the Alcoholic Beverage Regulation Administration ("ABRA") or the Metropolitan Police Department ("MPD"). *See* D.C. Code §§ 5-101.01, *et seq.*, 28-3902, *et seq.*, 25-201, *et seq.* While ABRA is an independent agency, it does not have authority to sue or be sued. *See* D.C. Code § 25-201, *et seq.*; *compare* D.C. Code § 34-2202.02, *et seq.* (Water and Sewer Authority is "an

independent authority . . . that has a separate legal existence within the District government" including the power "[t]o sue and be sued").

The DCRA, ABRA and MPD have no statutory authority to sue or be sued. Therefore they are *non sui juris*, and all claims against DCRA, ABRA and MPD should be dismissed.

### III.  All claims against the Mayor should be dismissed because the Mayor is not a proper party.

When sued in their official capacities, government officials are not personally liable for damages. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  A suit for damages against municipal officials in their official capacities is thus equivalent to a suit against the municipality itself. *Id.* at 165-66; *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

The Amended Complaint only alleges actions taken by the DCRA, ABRA and MPD and contains no allegations of any actions taken by the Mayor. *See* Am. Compl. ¶¶ 4-6.  Because the Amended Complaint only challenges the actions of DCRA, ABRA and MPD, the Mayor is not a proper party to this suit. *Hinson ex rel. N.H. v. Merritt Educational Center*, 521 F. Supp.2d 22, 34 (D.D.C. 2007)(holding that, since the complaint contained no allegations whatsoever of actions taken by the Mayor, the suit was effectively one against the District of Columbia).  Therefore, Plaintiff's claims against the Mayor should be dismissed.

**IV.  All non-federal claims against the District should be dismissed with prejudice because Plaintiff failed to provide the District with mandatory 12-309 notice.**

**A.  The District has no record of any claim notice from the Plaintiff.**

Plaintiff has not provided the District with notice required by Section 12-309.

Section 12-309 states:

> [a]n action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.  A report in writing by the Metropolitan Police Department, in regular course of duty, is sufficient notice under this section.

D.C. Code § 12-309

It is well-settled that compliance with the notice requirement of Section 12-309 is "a mandatory prerequisite to filing a lawsuit against the District." *McRae v. Olive*, 368 F. Supp. 2d 91, 95 (D.D.C. 2005); *see also District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (D.C. 1995).  "The rationale underlying the Section 12-309 notice requirement is to (1) protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978)(internal citations omitted).  To protect this purpose, courts strictly construe the plain language of Section 12-309. *See, e.g., District of Columbia v. Dunmore, 662 A.2d 1356, 1359 (D.C. 1995)*.  Courts interpreting the statute have held that the District must receive notice within six months of the events that allegedly have caused a claimant's injury. *DeKine v. District of Columbia*, 422 A.2d

981, 984 (1980). Notice received even one day past due is considered untimely and completely bars recovery against the District. *Id.* at 986.

All notices of claims against the District of Columbia are forwarded directly to the Tort Liability Section of the District of Columbia Office of Risk Management. *See* Affidavit of Robert Carter, attached as Exhibit O. In this case, the Tort Liability Section received no claim notice from Plaintiff. *Id.* Because it is well past six months of Plaintiff's alleged injuries, Plaintiff did not and cannot provide Section 12-309 notice. Accordingly, Plaintiff's claims of illegal citations and false arrest and imprisonment against the District must be dismissed with prejudice.

### B. Plaintiff's alleged May 30, 2008 letter does not satisfy Section 12-309.

Plaintiff claims that he satisfied Section 12-309 by providing a "notice letter delivered by plaintiff on May 30, 2008." *See* Am. Compl. ¶ 29. The Plaintiff has provided no proof of the alleged May 30, 2008 notice letter and, as previously asserted, the District has no record of any claim notice. Even if Plaintiff sent a notice letter on May 30, 2008, the letter would not satisfy Section 12-309. Plaintiff's Amended Complaint seeks "relief for illegal arrest and citation." *Id.* at ¶ 1. The Amended Complaint alleges an illegal arrest on June 2, 2007[5] and unlawful citations on May 19, 2007, May 27, 2007 and July 18, 2007. *Id.* at ¶¶ 10, 12. Therefore, a May 30, 2008 notice letter would still be untimely because it was filed well after six months of any of Plaintiff's claimed injuries. Accordingly, Plaintiff did not, and cannot, provide Section 12-309 notice and all claims of illegal citations and false arrest and imprisonment against the District must be dismissed with prejudice.

---

[5] While Plaintiff claims to have been arrested on June 2, 2007, the police report attached as

**The police reports do not provide notice under Section 12-309.**

Plaintiff may argue that Section 12-309 was satisfied through "reports and records of the [a]rrest, the included exhibits showing the citation and all other legal hearings regarding this matter." *See* Am. Compl. ¶ 29.  Section 12-309 states that notice must be given by writing to the Mayor or through certain police reports.  *See* D.C. Code § 12-309.  The exhibits showing the citation and all other legal hearings regarding this matter do not, and cannot, provide Section 12-309 notice.

Section 12-309 states that "[a] report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section."  D.C. Code § 12-309.  In order for a police report to satisfy 12-309, it must include the approximate time, place, cause, and circumstances of the injury or damage.  *Miller v. Spencer*, 330 A.2d 250, 252 (D.C. 1974).  While the report is not required to be precise, it must "recite facts from which it could be reasonably anticipated that a claim against the District might arise."  *Doe by Fein v. District of Columbia*, 697 A.2d 23, 27 (D.C. 1997), *citing Pitts v. District of Columbia*, 391 A.2d 803, 809 (D.C. 1978); *see also Washington v. District of Columbia*, 429 A.2d 1362, 1366 (D.C. 1981) (en banc) (to meet 12-309 requirements, a police report must describe the injuring event with sufficient detail to reveal, in itself, a basis for the District's potential liability).

In *Doe by Fein*, the plaintiff claimed that the District failed to investigate and protect a minor from abuse and neglect after the minor was burned while in her godmother's care.  *Doe by Fein*, 697 A.2d 23, 27.  The plaintiff argued that a police report describing the burns suffered by the minor provided sufficient 12-309 notice.  *Id.*  The court, however, found that the relevant injury requiring 12-309 notice was not the

---

Exhibit E of Plaintiff's Amended Complaint show that Plaintiff was arrested on July 2, 2007.

physical harm sustained by the child, but the District's failure to intervene and take custody of the minor. *Id.* at 27. Although the report gave the time, place, cause and circumstances of the minor's burn injuries, it did not provide the District with notice of its failure to intervene and failed to "disclose or suggest any basis for liability on the part of the District of Columbia." *Id* at 29. Consequently, the Court held that the police report did not provide sufficient 12-309 notice. *Id.*; *see also Braxton v. National Capital Housing Authority*, 396 A.2d 215 (D.C. 1978) (a police report of a burglary and theft was insufficient to constitute notice of a negligence claim against the District because there was no indication in the report that District employees were involved in the events leading up to the burglary and theft).

In this case, the police reports state that Plaintiff was arrested because of an expired business license. *See* Exhibit E of Am. Compl. As in *Doe by Fein*, this is not the relevant injury requiring Section 12-309 notice. *Doe by Fein*, 697 A.2d 23, 27. The relevant injury requiring notice is not the arrest itself, but any claims or evidence of an illegal arrest or citation. The reports do not make, or even suggest, any basis of liability on the part of the District, particularly any facts to suggest an illegal arrest or citation. *See* Exhibit E of Am. Compl. Therefore, the police reports do not provide Section 12-309 notice. Because Plaintiff has not, and cannot, provide Section 12-309 notice, all claims of illegal citations and false arrest and imprisonment against the District must be dismissed with prejudice.

**V. Plaintiff's claims of illegal citations and all associated due process claims must be dismissed because Plaintiff is not the real party in interest and does not have capacity to sue on behalf of an LLC.**

Federal Rule of Civil Procedure 17 states that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). When an individual sues in his own capacity, the laws of the individual's domicile control who he can sue or be sued by. *See* Fed. R. Civ. P. 17(b).

In this case, Plaintiff sued Defendants in his own capacity as Hubert Philogene, 1904 Bronzegate Blvd, Silver Spring MD 20904. *See* Compl and Am. Compl. Because Plaintiff is suing in his individual capacity and he is domiciled in D.C., D.C.'s laws control who he can sue and be sued by. Fed. R. Civ. P. 17(b).

The D.C. Code states that a:

> [a] member of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except where (1) the object of the proceeding is to enforce a member's right against or liability to the limited liability company, or (2) as provided in §§ 29-1043 through 29-1046.

D.C. Code § 29-1015. An LLC is an artificial entity, separate from its members. *HB Mgmt., LLC v. Brooks*, 2005 D.C. Super. LEXIS 6 (D.C. Super. Ct. 2005). In *Brooks*, the court stated:

> [a]ny action brought by or against the LLC must be brought in the name of the LLC, not its members, unless a member is bringing a derivative action on behalf of the LLC. *See* D.C. Code § 29-1015 (2004)...Members, like corporate shareholders, own an interest in the LLC; they are not the LLC...

*Id*.

Plaintiff claims to be the President of the Caribbean Cultural Center, LLC, which he references as "the Lime." *See* Am. Compl. ¶¶ 3, 7. Plaintiff, however, brings these claims individually and not on behalf of the LLC. *See*. Am. Compl. Plaintiff's Amended

Complaint claims that the "District of Columbia is liable to the named plaintiff(s) for…illegal citations stating that the "Lime" was operating without the proper license." *Id.* at 28. All the damages or injuries claimed as a result of the alleged illegal citations and due process violations only involve or affect the Lime. *See* Am. Compl. ¶¶ 8-24. The only real party in interest for these issues related to the Lime is the Lime itself, not Plaintiff individually. Because the true party of interest is an LLC, the claims must be brought in the name of, or on behalf of, the LLC. *See* Fed. R. Civ. P. 17(a). The Plaintiff cannot assert these claims as an individual. *See* D.C. Code § 29-1015; *Brooks*, 2005 D.C. Super. LEXIS 6. Accordingly, all claims of illegal citations and associated due process violations must be dismissed.

## VI. Plaintiff's claims of illegal citations and due process violations should be dismissed because Plaintiff failed to exhaust his administrative remedies.

Plaintiff claims that he was illegally cited and that these illegal citations violated his due process rights. *See* Am. Compl. ¶ 27. As asserted above, Plaintiff does not have standing to bring these claims on behalf of the LLC. Additionally, these claims should be dismissed because Plaintiff failed to exhaust his administrative remedies. *See* 7 DCMR 806.1.

The District of Columbia Municipal Regulations, which are included as exhibit H in Plaintiff's Amended Complaint, state that "[a] licensee may challenge the issuance of a citation issued by an ABRA Investigator or MPD Officer by requesting in writing a show cause hearing before the Board. The written requests for a show cause hearing must be received by ABRA within thirty (30) days from the date that the citation was issued to the establishment." *Id.*; *see also* Exhibit H of Am. Compl. Plaintiff had ample opportunity to avail himself to these administrative processes and remedies, but failed to do so.

Additionally, the order revoking the Lime's Retailer's Class "CN" License, attached as Exhibit H in Plaintiff's Amended Complaint, states that:

> ...pursuant to section 11 of the District of Columbia Administrative Procedure Act, Pub. L. 90-614, 82 Stat. 1209, D.C. Official Code § 2-510 (2001), and Rule 15 of the District of Columbia Court of Appeals, any party adversely affected has the right to appeal this Order by filing a petition for review, within thirty (30) days of the date of service of this Order, with the District of Columbia Court of Appeals, 500 Indiana Avenue, N.W., Washington, D.C. 20001. However, the timely filing of a Motion for Reconsideration pursuant to 23 DCMR § 1719.1 (April 2004) stays the time for filing a petition for review in the District of Columbia Court of Appeals until the Board rules on the motion. See D.C. App. Rule 15(b).

Exhibit H of Amended Complaint. Plaintiff again failed to avail himself to these administrative processes and remedies.

Plaintiff failed to exhaust the administrative remedies available to him by statute, and referenced in his own exhibits, and it is inappropriate for the Plaintiff to now bring these claims before this Court. Accordingly, Plaintiff's claims of illegal citations and due process violations should be dismissed.

**VII.  All constitutional claims must be dismissed because Plaintiff cannot demonstrate that the District of Columbia maintained a custom or policy that resulted in a violation of Plaintiff's constitutional rights.**

The District of Columbia cannot be held liable under a theory of *respondeat superior* for the constitutional torts of its employees. *Monell v. Department of Social Services*, 436 U.S. 658, 690-695 (1978). The Amended Complaint attempts to assert that the District of Columbia is responsible for the alleged acts of Sergeant Mack. *See* Am. Compl. ¶ 25. Because *Monell* clearly provides that *respondeat superior* liability does not exist, Plaintiff's claims of an illegal seizure must fail.

Plaintiff then attempts to allege that the District of Columbia has a custom, policy, or practice of allowing police officers to arrest and cite businesses or persons operating a

business without a license. *Id.* at ¶ 25. This claim also fails under the dictates of *Twombly*. *Twombly*, 127 S.Ct. 1955 (2007). Plaintiff's bare assertion in paragraph 25 of his Amended Complaint is simply insufficient as a matter of law to state a *Monell* claim against the District of Columbia. A single incident involving police officers is not sufficient to establish fault on the part of the District. *Monell*, 436 U.S. 658, 690-695 (1978). In order to prevail on a *Monell* claim against the District, a plaintiff must prove the constitutional tort arose from "action pursuant to official municipal policy." *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. 1997) (alleged practice of excessive force was not part of policy). Plaintiff has not done so. Accordingly, Plaintiff's claims of constitutional unlawful seizure should be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons and pursuant to Fed. Civ. Rs. P. 12(b)(5) and 12(b)(6), the Defendants hereby move this Honorable Court to dismiss the Plaintiff's Amended Complaint with prejudice.

Dated: August 19, 2008.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

*/s/ Toni Michelle Jackson*
TONI MICHELLE JACKSON [453765]
Chief, General Litigation Section III

_/s/ Nicholas Coates_
NICHOLAS COATES[6]
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor
Washington, D.C. 20001
(202) 724- 6644 (office)
(202) 742-0578 (fax)
Email:  Nicholas.Coates@dc.gov

---

[6] Appearance entered under D.C. App. 49 (c)(4).



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

HUBERT PHILOGENE,                    :

~~Pomblant,~~                        :

~~CARIBBEAN CULTURAL CENTER, LLC~~   :

~~DBA LIME~~                         :

1909 Bronzegate Blvd. Silver Spring  :
MD. 20904                            :

**Plaintiffs,**                      :

v.                                   :    Civ.No:    0004005-08

DISTRICT OF COLUMBIA                 :    Related case:

The Mayor — 1350 Pennsylvania Ave. **Defendant.**   :
NW Washington DC. 20004

Attorney General 441 4th street N.W. 6fl south
Washington DC. 20001
**Complaint**
DCRA          441 N. Capitol street N.E.    **(Punitive Damage)**
9fl. Washington DC. 20002

Plaintiff Hubert L. Philogene, d/b/a Caribbean Cultural Center, LLC. And Lime Night

Club ("Lime") prose brings this suit against the District of Columbia, Department of

Consumer and Regulatory Affairs (DCRA) for punitive damage in the sum of one

hundred million dollars ($100,000,000.00).

### Introductory Statement

This suit is for punitive Damage in the sum of 100,000,000.00 and such other relief that

the court deems just and equitable

RECEIVED
Civil Clerk's Office
MAY 2 9 2008
Superior Court of the
District of Columbia
Washington, D.C.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

|  |  |
|---|---|
| **HUBERT PHILOGENE,** | : |
| **President,** | : |
| **CARIBBEAN CULTURAL CENTER, LLC** | : |
| **D/B/A "LIME"** | : |
|  | : |
|  | : |
|  | : |
| **Plaintiffs,** | : |
| **v.** | :     **Civ.No:** |
|  | : |
| **DISTRICT OF COLUMBIA** | :     **Related case:** |
|  | : |
| **Defendant.** | : |

### Complaint
### (Punitive Damage)

Plaintiff Hubert L. Philogene, d/b/a Caribbean Cultural Center, LLC. And Lime Night

Club ("Lime") prose brings this suit against the District of Columbia, Department of

Consumer and Regulatory Affairs (DCRA) for punitive damage in the sum of one

hundred million dollars ($100,000,000.00).

### Introductory Statement

This suit is for punitive Damage in the sum of 100,000,000.00 and such other relief that

the court deems just and equitable

## Jurisdiction

1. Subject matter jurisdiction of this court is founded on D.C. Official code §11-921.

2. Personal jurisdiction id founded under official code §13-423(a)(1).

## Parties

3. Plaintiff Caribbean Cultural Center, LLC is a District of Columbia incorporated limited liability company located at 915 5th Street N.W. Washington, DC 20001.

4. Plaintiff Hubert L. Philogene is the President of Caribbean Cultural Center, LLC.

5. Defendant District of Columbia Department of Consumer and Regulatory Affairs (DCRA) is a division of a municipal corporation created under the laws of the District of Columbia and is being sued pursuant to D.C. Official code §1--102 (2001).

## Factual Allegations

6. Mr. Hubert L. Philogene was arrested for Operating Business "Lime" without a license 05/27/2007 & Failure to Obtain Occupancy Permit 05/27/07.

7. Mr. Hubert L. Philogene was found guilty based on the evidence that the District of Columbia presented.

8. Lime was authorized to operate as a nightclub by the District of Columbia Department of Alcohol and Beverage and did not need other basic license to operate at the occupancy level the lime was operating at.

9. Lime had a DCRA issue certificate of occupancy permit (CO#91872) for the use of a restaurant.

### Jurisdiction

1.  Subject matter jurisdiction of this court is founded on D.C. Official code §11-921.

2.  Personal jurisdiction id founded under official code §13-423(a)(1).

### Parties

3.  Plaintiff Caribbean Cultural Center, LLC is a District of Columbia incorporated limited liability company located at 915 5th Street N.W. Washington, DC 20001.

4.  Plaintiff Hubert L. Philogene is the President of Caribbean Cultural Center, LLC.

5.  Defendant District of Columbia Department of Consumer and Regulatory Affairs (DCRA) is a division of a municipal corporation created under the laws of the District of Columbia and is being sued pursuant to D.C. Official code §1--102 (2001).

### Factual Allegations

6.  Mr. Hubert L. Philogene was arrested for Operating Business "Lime" without a license 05/27/2007 & Failure to Obtain Occupancy Permit 05/27/07.

7.  Mr. Hubert L. Philogene was found guilty based on the evidence that the District of Columbia presented.

8.  Lime was authorized to operate as a nightclub by the District of Columbia Department of Alcohol and Beverage and did not need other basic license to operate at the occupancy level the lime was operating at.

9.  Lime had a DCRA issue certificate of occupancy permit (CO#91872) for the use of a restaurant.

10. Lime was not a public hall inasmuch as it did not entertained more than 400 people on any given night..

11. The license held by the corporation was a class C/N license under District of Columbia §25-113. On-premises retailer's licenses. §25-101.

12. The District of Columbia did not take the business to the Alcoholic and Beverage Regulation Board, instead brought charges on Mr. Hubert L Philogene as an individual. §25-801. §25-804 Notification from DCRA, Fire Department, and Metropolitan Police Department.

13. §25-203. Transfer of functions of Alcoholic Beverage Control Division of the Department of Consumer and Regulatory Affairs.

14. No District of Columbia regulations allows DCRA to regulate a nightclub under 400-person capacity.

## COUNT 1

(Operation of a night club is allowed under D.C. Dept Alcohol & Beverage Regulatory Affairs and does not require DCRA Approval)

5-29-08

Hubert L. Philogene

Hubert L. Philogene
Prose
915 5th Street N.W.
Washington, DC 20001
E-mail: compnet_hubert@yahoo.com

10. Lime was not a public hall inasmuch as it did not entertained more than 400 people on any given night..

11. The license held by the corporation was a class C/N license under District of Columbia §25-113. On-premises retailer's licenses. §25-101.

12. The District of Columbia did not take the business to the Alcoholic and Beverage Regulation Board, instead brought charges on Mr. Hubert L Philogene as an individual. §25-801. §25-804 Notification from DCRA, Fire Department, and Metropolitan Police Department.

13. §25-203. Transfer of functions of Alcoholic Beverage Control Division of the Department of Consumer and Regulatory Affairs.

14. No District of Columbia regulations allows DCRA to regulate a nightclub under 400-person capacity.

## COUNT 1

(Operation of a night club is allowed under D.C. Dept Alcohol & Beverage Regulatory Affairs and does not require DCRA Approval)

5-29-08

Hubert L. Philogene

Hubert L. Philogene
Prose
915 5th Street N.W.
Washington, DC 20001
E-mail:

 

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION
Washington, D.C. 20001

_District of Columbia_
                    Plaintiff

vs.

Civil Action No. **3182-07**

_Caribbean Cultural Center_
        and
_Hubert Philogene_         Defendant

FILED Since Janu 8, 2007

FILED
MAY 17 2007
THE OFFICE OF
JUDGE IN CHAMBERS

### ORDER

Upon consideration of the motion _for temporary restraining order_

filed by _government against alleged unlicensed public hall_

and after hearing argument on behalf of all parties concerned, it is, by the Court, this **17th**

day of _____May_____, 20__07__,

ORDERED:

(1) That the motion be, and it is hereby,    ☐ GRANTED    ☒ DENIED

(2) That _too many relevant factual disputes [about_ _without prejudice_
_prior citations and fines and apparent conflicts_
_between DC's on-line information and statutes and_
_between ABC license (CN) and restaurant business_
_license] exist to permit fair resolution of motion._

(3) _Parties to attempt settlement and if none to apply for_
_resolution through Prel. Injunction hearing with more_
Copies to: _complete facts._

_Mary Ellen Abrecht_
                    JUDGE

_parties_

Form CV-545/Apr 03



EXHIBIT

B

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

Hubert Philogene
1909 Beauregard Blvd
Silver Spring MD 20904

**Plaintiff**

vs.

(DCRA) District of Columbia
Department of Consumer Regulatory Affairs
941 north Capitol Street N.E.
941 Washington DC. 20002

Office of The Attorney General
441 4th street N.W. 6th fl    **Defendants**

The Mayor
1350 Pennsylvania Ave.
N.W Washington DC. 20004

CIVIL ACTION No. 2008CA 004005B

(ABRA) Alcholic Beverage Regulation
941 north capitol st. N.E. suite 7200
washington DC. 20002

(MPD) Metropolitan Police Department
George Valentine
Deputy Attorney General
441 4th st. N.W Washington DC
suite 600                          20001

Ammended
**COMPLAINT**

1. Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.

See attach

Wherefore, Plaintiff demands Judgment against Defendant in the sum of $ 100,000,000.00
with interest and costs.

703-268-1553
**Phone:**

DISTRICT OF COLUMBIA, ss

_____, being first duly sworn on oath deposes and says that the
foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all
set-off and just grounds of defense.

_____
(Plaintiff)                                              (Agent)

Subscribed and sworn to before me this _17_ day of _July_ 20_08_.

_____
(Notary Public/Deputy Clerk)

FORM CV-101V Nov. 08

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

HUBERT PHILOGENE                    :
                                    :
                                    :    Civil Action No. 2008 CA 004005 B
                                    :    Calendar 1
                                    :    Judge Gerald I Fisher
                                    :    Next Event: September 5, 2008
PLAINTIFF(S),                       :
                                    :
                                    :
DISTRICT OF COLUMBIA, et al         :
                                    :
DEFENDANT.                          :

### PLAINTIFF(S) (PRO SE)
### REPONSE TO DEFENDANTS REQUEST FOR DEFINITE STATEMENT

### COMPLAINT

### CLAIM UNDER FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION DUE TO COMMON LAW FALSE ARREST AND FALSE IMPRISONMENT, UNLAWFUL SHUT DOWN AND CITATIONS TO BUSINESS.

### INTRODUCTION

1. This case is an action for pecuniary damages in the sum of one hundred Million dollars ($100,000,000.00), punitive damages and other relief for illegal arrest and citations.

2. I believe the Court should grant my motion because I have suffered grievances, lost of income and business; lost of income capacity; loss of due process based on the fourteenth amendment; due to unjust and intentional torts brought forth by the Department Of Consumer and Regulatory Affairs hereafter known as DCRA & the Department of

1

Alcoholic and Beverage Regulation Board herein after known as ABRA and Metropolitan Police Department herein after known as MPD.

## Jurisdiction and Venue

1. Subject matter jurisdiction of this court is founded on D.C. Official code §**11-921.**

2. Personal Jurisdiction ID founded under official code §**13-423(a)(1)**

## PARTIES

3. Plaintiff(s) Hubert Leslie Philogene herein after known as Mr. Philogene is the President of Caribbean Cultural Center, LLC.

4. Defendant District Of Columbia Department of Consumer and Regulatory Affairs (DCRA) is a division of a municipal corporation created under the laws of District of Columbia and is being sued pursuant to D.C. Official code §**1-102 (2001).**

5. Defendant District Of Columbia Alcohol Beverage Regulation Administration (ABRA) is a division of a municipal corporation created under the laws of District of Columbia and is being sued pursuant to D.C. Official code § **1-102 (2001)**

6. Defendant Metropolitan Police Department is a division of a municipal corporation created under the laws of District Of Columbia and is being sued pursuant to D.C. Official code § **1-102 (2001)**

## BACKGROUND

7. Mr. Philogene   previously owned a Contracting company CompNet in the District of Columbia from June 30, of 2000 to June of 2007. The Contracting Firm was growing steadily and Mr. Philogene was securing contracts on a steady basis. He decided to put Compnet on hold in order to dedicate his time to The Caribbean Cultural Center Herein after known as

2

the "Lime". In the process of getting the Caribbean Cultural Center LLC off the ground Mr. Philogene encountered many hardships. These hardships included the loss of his home through foreclosure and a disruption with his business Investors. These set backs nearly brought the Lime to a close. With the support of his Wife of eleven years Nandred Navarro and financial gifts from friends he was able to establish the Lime as one of the up and coming clubs in D.C. Mr. Philogene was able to bring in enough revenue to pay off old debts such as past due rents in the amount of $48,000. He was then able to keep his payments current to his landlord, suppliers and staff. **EXHIBIT A**

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

HUBERT PHILOGENE                :
                                :
                                :      **Civil Action No. 2008 CA 004005 B**
                                :      **Calendar 1**
                                :      **Judge Gerald I Fisher**
                                :      **Next Event: September 5, 2008**
PLAINTIFF(S),                   :
                                :
v.                              :
                                :
DISTRICT OF COLUMBIA, et al     :
                                :
DEFENDANT.                      :

---

## ALLEGATIONS

8. On January 15, 2007 Sergeant Kenneth W. Mack herein after known as Sergeant Mack came to the "Lime" and asked to see a copy of my license, which I immediately showed him. He came to the "Lime" on five more occasions: January 28th 2007, February 19th 2007, March 12th 2007, April 8

3

2007 and April 9 2007 asking on all occasions to see a copy of my license which I immediately showed him. I then asked the Sergeant why he needed to see my license five times when he replied "we are going to shut you down by directives of DCRA". On May 11th 2007, Clement Stokes, a DCRA Investigator with a motion for a Preliminary injunction, served me. On May 12th Sergeant Kenneth Mack came to the "Lime" he asked me if I was served with court documents, I answered in the affirmative. He then told me "we are going to shut you down tonight." I asked Sergeant Mack how it was possible to shut me down without a court hearing and or decision, he then proceeded to make a phone call, he informed me that he was speaking to Linda K. Argo the Director of DCRA. After finishing his phone conversation Sergeant informed me that he was under orders to shut me down on said night. He then proceeded to dismiss my staff stating "Go home the club is closed for the weekend."

9. He informed the police officers on detail for night patrol and his accompanying officers that no one was allowed entrance to the club. I was never served with a citation during and or after this entire incident.

10. On  May 17 2007, I attended the hearing at the Superior court with Judge Weinberg presided. Case No.CA3182-07 Judge Weinberg denied the motion brought against me by the District of Columbia. **EXHIBIT B.** I reopened the "Lime" for business on May 18, 2007 with no problems. On May 19, 2007 on or around 11pm at night while I was not on the premises Sergeant Mack went to the "Lime" requesting to see the license. The "Lime" was operating under code with an ABRA certified Bar Manager, eight bartenders, fifteen patrols and two police detail officers. My staff contacted me via phone informing me of the situation. I instructed my staff to furnish Sergeant Mack with a copy of the license along with the order issued by Judge Weisberg. Sergeant Mack decided to ignore the order from the judge by unlawfully giving a citation to the "Lime" for operating a business without a license and operating without an occupancy permit Sergeant Mack also shut down the "Lime" on May 19. 2007. **EXHIBIT C.**

11. I became very frustrated so I decided to contact Maria Delaney of ABRA for help via email on May 26, 2007. I asked that they define my license and explain to me if I was conducting business unlawfully and or whether my

4

license was sufficient to conduct business as a nightclub. I needed to know whether the citations and shut downs were just. I received a response from Ms. Delaney stating that these citations and shut downs were not under the directives of ABRA and I should be contacting DCRA and MPD for an explanation. I followed the advice given to me by Ms. Maria Delaney and attempted to contact DCRA for an explanation via phone and in person at their address 941 North Capital St. 9th floor NW. Washington D.C. 20002 to no avail. I left messages and my contact information and no one called me back. **EXHIBIT D.**

12. On May 27, 2007 Sergeant Mack visited the "Lime and issued me a citation in the amount of $1,000.00 dollars for operating with out a license and operating without occupancy permit and proceeded to shut down the "Lime". I contacted DCRA ON MAY 28, 2007 and spoke with the council for ABRA Mr. Fred Mosley he assured that the "Lime" was operation in accordance with my C/N license. He also pointed out that ABRA was not responsible for the shut downs or citations and again instructed me to contact DCRA. On June 2nd, 2007 Sergeant Mack came to the "Lime" and again requested that I show him my license, I furnished him with my Alcohol and Beverage license, (ABC) Night Club license (CN) and the Certificate of occupancy. He then requested to see my restaurant license I informed him that the restaurant license had expired and obsolete since I was not operating as a restaurant. He then proceeded to arrest me, he took me to the 1st District police station where I spent the night. **EXHIBIT E.** Sergeant Mack came to the "Lime" on July 18, 2007 to arrest me I contacted Commander Groom from the 1st District who gave an order to Sergeant Mack to render two citations at $10000.00 dollars each for operating with out a license and operating without an occupancy permit. He also told Sergeant a physical arrest was not necessary and Sergeant Mack complied.

13. Caribbean Cultural Center LLC. brought a suit against the District of Columbia, **Case No.0003182-07**. Judge G. Beauden residing at the hearing on August 31, 2007 Judge Beauden asked Attorney General Robert A. Debaradinis Jr whether Caribbean Cultural LLC had all the necessary licenses to operate and he answered "yes" judge Beauden issued an order To join the case with Case No. CA3182-07and uphold the decision made by Judge Weisberg to deny the District a Preliminary injunction and allow the

Caribbean Cultural Center to operate as a business. The District of Columbia filed a stipulation of dismissal in the civil court hearing. **EXHIBIT F.**

14. I reopened the "Lime" on September 1, 2007 my cash flow was non-existent. I was in discussions with Andre Demoyer to form a partnership Mr. De Moya had capital to invest in the business and I needed the financial help to

Resuscitate the "Lime." On September 30, 2007 the CN license expired. I was served a cease and desist by ABRA. I attempted on many occasions to to restore my CN license where I was told that due to a pending show cause hearing it would be best that I waited till the decision was rendered. The decision was made to revoke my license due to:

1.  My failure to complete an application to ABRA showing that my operating agreement had been changed to include two partners Mr. Allen and Mr. Garnier.
2.  For two primary tier violations for extending hours of operation on February 24, 2006 and October 29, 2006.

15. My failure to complete the application to inform ABRA of the change in the Operating agreement was brought on by problems within the partnership. I was attempting to cure the disagreements in the partnership before completing the application.

16. These problems were brought to ABRA's attention in the Hearings on July 18, 2007 and August 7, 2007. Please see the transcript of the hearing, an Order to Stay the ABRA Board's decision from Attorney Ashley E. Wiggins. **EXHIBIT H.**

17. Further more Mr. Allen and Mr. Garnier testified that they had removed themselves from the partnership by leaving the premises on June 18, 2006 taking with them Alcohol and other items from the "Lime." Moreover there are laws that ABRA has to follow regarding Primary Tier violations §1604 and they are listed as such:

a. First primary care violation the fine shall be $1000 to $2000 dollars

b. For the second primary tier violation within two years the fine shall be $2000 to $4000 dollars

c. For the third primary tier violation in three year fine shall be $4000 to $6000 dollars

6

d. For the fourth primary tier violation the ABC license shall be revoked.

18. ABRA's reason for revoking the license issued to Caribbean Cultural Center LLC is contradictory to the laws in §1604. The "Lime" had only three Primary Tier Violations there fore the "Lime should have been charged a fine of $4000 to $6000.00 dollars instead of having its license revoked. Furthermore it is stated **Title §25-801 (b)"**Subject to subsection (c) of this section, ABRA investigators and the Metropolitan Police department shall issue citations for civil violations of this title that are set forth in the schedule of civil penalties established under **§25-830."** The Caribbean Cultural center was never cited for extending hours of operation on neither of the dates listed as a violation. Please find the decision for revoking the Caribbean Cultural Center LLC license made by ABRA. **EXHIBIT H.**

Title §25-801 states that it is the authority of the Board to enforce this title; enforcement responsibilities of ABRA investigators and Metropolitan Police Department.

(c) A citation for any violation for which the penalty includes the suspension of a license shall be issued under the direct authority of the Board as a result of an investigation carried out by ABRA investigators.

(d) Prosecutions for misdemeanors under this title shall be prosecuted and initiated by information filed in the Superior Court of the District of Columbia by the Corporation Counsel. Prosecutions for felonies under this title shall be prosecuted by the United States Attorney for the District of Columbia.

§25-804 Notifications from DCRA, Fire Department and Metropolitan Police Department

(a) In accordance with procedures that the Mayor shall establish, the Department of Consumer and Regulatory Affairs and the Fire Department shall promptly notify the Board if a licensed establishment is the subject of a citation or other enforcement action for a violation of laws or regulations enforced by these departments.

19. What is the duty of ABRA to a Licensee when they are being continually cited and closed down wrongfully? Why did ABRA ignore the laws written in Title 25 knowing that the License held by Mr. Philogene was appropriate for operating the "Lime? Is it not ABRA's duty to contact DCRA and MPD on behalf of its Licensee to interpret said License? ABRA failed Mr.

Philogene by letting this heinous and unjust act by DCRA and MPD continue. Why did ABRA allow DCRA to bring this hearing before the Superior Court when according to Title 25 it is in their jurisdiction?

ABRA is an independent District of Columbia Government regulatory agency created by DC law 13-298, the Title 25, DC code enactment and Related Amendments Act of 2001. effective May 3, 2001. Prior to the enactment of this law, ABRA was a division of the District's Department of Consumer and Regulatory Affairs (DCRA).

Why did DCRA ignore the rules set forth in Law 13-298? Why did ABRA Stand by and allow DCRA to take jurisdiction of shutting down the "LIME" for an inappropriate license?
ABRA failed The Caribbean Cultural Center LLC and Mr. Philogene by deciding not to be involved in the matter.
ABRA should have sent a copy of its Class License definitions along with a copy of Mr. Philogene's license to DCRA and the MPD.
Do ABRA, DCRA and MPD deserve no comeuppance for their crimes?

20. On January 28th 2008 I attended a hearing in criminal court (Case No.2007 CDC27582) on the same motion that was dismissed in civil court. The District of Columbia stated in their legal brief that I did not have the appropriate license to operate the "Lime." This information was contradictory to Attorney General Robert A. Debaradinis Jr response in the Civil court hearing when he answered "yes" when asked directly by judge Beauden whether I had all my necessary licenses. Judge Bruce D. Baudin Entered an order in favor of the District of Columbia. This case is pending appeal in Criminal court at this time.

21. I was invited to a meeting of club zone overtime in the 1st District Precinct on September 18, 2006 as a Night Club Owner. This meeting was held by ABRA and SOD regarding police detail. Caribbean Cultural Center LLC has records of several receipts showing payments to MPD for night patrol detail where the "Lime is listed as a club. **EXHIBIT I.**

22. The Caribbean Cultural Center LLC Operated lawfully with all the necessary licenses. A class CN4 license which under the ABRA law states that "A CN license will be issued only for a nightclub, including hotel, nightclub: alcoholic beverages and food, which may provide music and dancing facilities for patrons and er requirements set out in the act."

8

An occupancy license, which was amended by DCRA to say occupancy load of 400 and to also have the word nightclub added after the request was made by the District of Columbia at the hearing on May 17, 2008 (Case No CA3182-07). **EXHIBIT J**

23. Mr. Philogene hired two attorneys' Kevin McCant esq. and Ashley E. Wiggens esq. , which he paid a total of $24000.00. Mr. Philogene felt that he did not receive proper representation due to the attorneys' lack of knowledge in ABRA laws and failure to do research. A complaint was placed against both attorneys' in the D.C. Bar association. Mr. Philogene could not recover due to severe monetary loss, which led to a final dissolving of Caribbean Cultural LLC. Mr. Philogene is forced to try this current case by himself due to said loss of income and distrust in the legal system.

24. The charges, arrest and shut downs were all unlawful.
Mr. Philogene was forced to return to the public sector to find work after years of owning and operating two successful businesses. Mr. Philogene has suffered a great loss, which includes but is not limited to loss of income; loss of income capacity; Loss of Business and Loss of personal financial gain and security.

## Liability of the District of Columbia

25. Sergeant Mack was who arrested and presented the citations to the plaintiff(s) is a MPD officer who acted under color of law and scope of his employment and treated Mr. Philogene as described above.

26. The arrest and citations were caused by a District of Columbia police maker or a District of Columbia custom, policy, or practice of allowing police officers to arrest and cite a business or person for operating a business without a license.

## Constitutional Claims for Relief

9

27. On the facts alleged above the District of Columbia is liable to the named plaintiff (s) under 42 U.S.C. § 1983 for violation under color of law of their constitutional rights for due process and rights to be free from unreasonable seizure of their persons under the Fourth Amendment to the United States Constitution.

## COMMON LAW CLAIMS FOR RELIEF

28. On the facts alleged above defendant, District of Columbia is liable to the named plaintiff(s) for false arrest and imprisonment and illegal citations stating that the "Lime" was operating without the proper licenses.

29. The notice requirements of D.C. code §12-309 have been satisfied as to the named plaintiff(s) by the notice letter delivered by plaintiff on May 30, 2008 and by reports and records of the Arrest, the included exhibits showing the citations and all other legal hearings regarding this matter.

## PRAYER FOR RELIEF

WHEREFORE, the named plaintiff(s) request relief as follows:

   a. an order granting the plaintiff(s) punitive damages in the amount of one hundred million dollars.
   b. A judgment declaring that the defendant violated the fourth and fourteenth Amendment.
   c. An order-compelling defendant to expunge all records of the arrests of named plaintiff(s) described herein.
   d. An order directing defendant to reimburse criminal fines and forfeited collateral collected from the named plaintiff(s)
   e. Attorneys' fees and cost pursuant to 42 U.S.C. §1988 and
   f. Renewal of all licenses to operate a night club
   g. A venue of same or similar setting to operate said business
   h. And such other relief including injunctive relief, as is just and equitable.

## Jury Demand

Trial by jury is demanded on all issues for which a jury is available.

Respectfully Submitted.

Hubert Philogene
PRO SE

Print

*Exhibit A*

Page 1 of 1

From: MChernoff@aol.com (MChernoff@aol.com)
To: compnet_hubert@yahoo.com
Date: Tuesday, April 25, 2006 12:09:29 AM
Cc: mmoore@srgpe.com; mfaller@srgpe.com
Subject: Balance due from Caribbean Culture Center

The attached Excel file shows a total due at this time of $35,470.45 for rent, taxes and legal fees.  This amount must be wired to my Buzzard K, LLC checking account no later than Thursday morning or I will authorized my attorney to begin eviction proceedings.  You assure me that you will be paying the amount due so please do not incur additional charges by being tardy.  I look forward to receiving the May rent payment on the first of next month.

Marty
720-254-5555

RENT

| | | |
|---|---|---|
| 3/1/2006 | 3,000.00 | |
| 4/1/2006 | 15,000.00 | |
| RENT TOTAL | | 18,000.00 |

PROPERTY TAX

| | | |
|---|---|---|
| 2004 | 2,997.26 | |
| 2005 | 5,993.08 | |
| 01/01/06-04/01/06 | 2,117.39 | |
| TOTAL TAX | | 11,107.73 |

LEGAL

| | | |
|---|---|---|
| 7/29/2005 | 441.60 | |
| 10/5/2005 | 646.67 | |
| 11/9/2005 | 190.50 | |
| 12/7/2005 | 47.00 | |
| 12/21/2005 | 301.79 | |
| 1/24/2006 | 1,014.80 | |
| 2/28/2006 | 1,560.39 | |
| 3/24/2006 | 1,712.87 | |
| 4/19/2006 | 447.10 | |
| TOTAL LEGAL | | 6,362.72 |

| | |
|---|---|
| TOTAL DUE 4/1/06 | 35,470.45 |

Exibit B

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION
### Washington, D.C. 20001

District of Columbia
_____
Plaintiff

vs.

Civil Action No. 3182-07

FILED

MAY 1 7 2007

THE OFFICE OF
JUDGE IN CHAMBERS

Caribbean Cultural Center
_____
Defendant
and
Hubert Philogene

ORDER

Upon consideration of the motion _for temporary restraining order_

filed by _government against alleged unlicensed public hall_

and after hearing argument on behalf of all parties concerned, it is, by the Court, this _17th_

day of _____May_____, 2007,

ORDERED:

(1) That the motion be, and it is hereby,   ☐ GRANTED   ☒ DENIED _without prejudice_

(2) That _too many relevant factual disputes [about prior citations and fines and apparent conflict between DC's on-line information and statutes and between ABC license (CN) and restaurant business license] exist to permit fair resolution of motion._

(3) _Parties to attempt settlement and if none to apply for resolution through Prel. Injunction hearing with more complete facts._

Copies to:

_Mary Ellen Abrecht_
JUDGE

parties

Form CV-547/Apr. 03

2500(285; VANCES 05/23/2007 9:4



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## FAMILY DIVISION

_Christian Culture Centre_
_____
                    **Plaintiff**

v.

JACKET NO.  5378-07

_District of Columbia_
_____
                    **Respondent**

## ORDER

Upon consideration of the motion _for TRO_ _____

filed by _Plaintiff_ _____

and after hearing argument on behalf of all parties concerned, it is

by the Court this ___31st___ day of ___August___, 19 _2007_

ORDERED:

(1) That the motion be, and it is hereby, ☐ GRANTED  ☑ DENIED

(2) That _Parties this case shall be joined with CA3182-07_
_which is pending before Judge Weisberg. and treats the same_
_issues. (3) Since J. Weisberg has issued an Order which_
_denies the District's request for a Preliminary injunction which_
_would prevent the Plaintiff's here from operating their business_
_the Plaintiffs may continue to operate their business under_
_the terms of the license in place at this time._

Copies to:

_Bruce D. Beaudin_
**JUDGE**

Exhibit B

★ ★ ★  GOVERNMENT
OF THE
DISTRICT OF COLUMBIA

ALCOHOLIC BEVERAGE REGULATION ADMINISTRATION
ALCOHOLIC BEVERAGE CONTROL BOARD
941 North Capitol Street, NE, Suite 7200
Washington, DC 20002

ABRA 2005

LICENSE
NUMBER    72458

LICENSE
CLASS    Retailer CN 04

Lime
Caribbean Cultural Center Llc
Center
1824 HALF ST SW

Layout and Endorsements:

3rd Year Payment Due: 09/30/2006

Voluntary Agreement:

LICENSE IS VALID FROM: 10/01/05 to 09/30/07

ISSUE DATE: 09/30/05

THE LAW REQUIRES THIS LICENSE TO BE POSTED IN A CONSPICUOUS PLACE ON THE PREMISES

---

★ ★
GOVERNMENT OF THE DISTRICT OF COLUMBIA
Department of Consumer and Regulatory Affairs

Business License Center - Room 1100
941 North Capitol Street, N.E.
Washington D.C. 20002

Unique Business ID# 80011XXXX-111696

Anthony A. Williams, Mayor

## CERTIFICATE of REGISTRATION

IS TO CERTIFY    that all applicable Trade Name requirements of the Omnibus Regulatory Reform
of 1998 have been complied with and accordingly, this **CERTIFICATE OF REGISTRATION**
is hereby issued to:

IBBEAN CULTURAL CENTER, LLC.

Name: **LIME**

November 09, 2004

Exibit B

# C of O

## CERTIFICATE OF OCCUPANCY

**PERMIT NO.**
CO 144223

THIS PERMIT IS VALID ONLY FOR THE PREMISES
OF THE PROJECT ADDRESS

**DATE :** 6/25/2007

| ADDRESS : | FLOOR(S): | PRCLID : 0664 | -000 0 | 0001 |
|---|---|---|---|---|
| 1824  HALF, ST. SW | 1ST AND 2ND | WARD : 2 | ZONE : M | (lot) |

PERMISSION IS HEREBY GRANTED TO:

**CORPORATION :  CARIBBEAN CULTURAL CENTER**
**ID No. :  L19539**

TRADING AS:

APPROVED USES:  OTHER - SEE DESCRIPTION          PREVIOUS USES:  RESTAURANT

| TYPE : | OCCUPIED SQ. FOOTAGE : | OCCUP. LOAD : | EXPIRATION DATE : |
|---|---|---|---|
| USE CHANGE | | 400 | NONE |

DESCRIPTION OF USE:
RESTAURANT/NIGHT CLUB 598 SEATS

THIS CERTIFICATE SHALL BE POSTED CONSPICUOUSLY ON THE ABOVE PREMISES AT ALL TIMES...

Interim
Director                   Linda K. Argo

PERMIT CLERK :       THINGOC MACIDAN

Exhibit C

## Ticket 1

| Field | Value |
|---|---|
| 2. PHONE NO. | (202) 870-3664 |
| 3. VENDOR NO. | |
| 4. ADDRESS | 19204 |
| 5. SEX | M |
| 6. RACE | B |
| 7. BIRTH DATE | 8/10/64 |
| 8. SOCIAL SECURITY NO. | |
| DEFENDANT'S NAME – LAST – FIRST – MIDDLE | Thelogene, Hubert Leslie |
| 9. BIRTHPLACE (CITY & STATE) | Bronzetate Blvd Silver Spring MD |
| 10. HEIGHT | 6'1" |
| 11. WEIGHT | 210 |
| 12. HAIR | blk |
| 13. EYES | Bro |
| 14. COMPLEXION | med |
| 8. PERMIT HOST | |
| 16. LOCATION OF OFFENSE | 1834 Half St |
| 17. DISTRICT WHERE OFFENSE OCCURRED | SW (LMC) |
| 18. DATE OF OFFENSE | 5/12/07 |
| 19. TIME OF OFFENSE | 2350 |
| 20. CHARGES | |
| □ FISHING VIOLATION | |
| □ VENDING VIOLATION | □ SALE OF UNPREPACKAGED FOOD |
| □ UNTAXED CIGARETTES | □ PLACARDS/SIGNS/POSTERS |
| □ SELLING CIGARETTES WITHOUT LICENSE | □ UNLEASHED DOG |
| □ HEALTH CERTIFICATE (NONE/EXPIRED) | □ NOISE ACT VIOLATION |
| □ IMPROPER REFRIGERATION OF FOOD | □ RADAR DETECTOR |
| | □ OTHER Operating a Public Vehicle |
| 21. CCN | 060-213 |
| 22. MPD DISPOSITION | 06-12-07 |
| 23. COLLATERAL/BOND RECEIPT NO. | |
| FINE $ | |

Ticket Number 0163254

## Ticket 2

| Field | Value |
|---|---|
| 2. PHONE NO. | (202) 870-3664 |
| 3. VENDOR NO. | |
| 4. ADDRESS | 19204 |
| 5. SEX | M |
| 6. RACE | B |
| 7. BIRTH DATE | 8/10/64 |
| DEFENDANT'S NAME – LAST – FIRST – MIDDLE | Thelogene, Hubert Leslie |
| 9. BIRTHPLACE (CITY & STATE) | Bronzetate Blvd Silver Spring MD |
| 10. HEIGHT | 6'1" |
| 11. WEIGHT | 210 |
| 12. HAIR | blk |
| 13. EYES | Bro |
| 14. COMPLEXION | med |
| 16. LOCATION OF OFFENSE | 1834 Half St |
| 17. DISTRICT WHERE OFFENSE OCCURRED | SW (LMC) |
| 18. DATE OF OFFENSE | 5/12/07 |
| 19. TIME OF OFFENSE | |
| 20. CHARGES | |
| □ FISHING VIOLATION | |
| □ VENDING VIOLATION | □ SALE OF UNPREPACKAGED FOOD |
| □ UNTAXED CIGARETTES | □ PLACARDS/SIGNS/POSTERS |
| □ SELLING CIGARETTES WITHOUT LICENSE | □ UNLEASHED DOG |
| □ HEALTH CERTIFICATE (NONE/EXPIRED) | □ NOISE ACT VIOLATION |
| □ IMPROPER REFRIGERATION OF FOOD | □ RADAR DETECTOR |
| | □ OTHER Operating a public vehicle |
| 21. CCN | 060-213 |
| 22. MPD DISPOSITION | 06-12-07 |
| 23. COLLATERAL/BOND RECEIPT NO. | |
| FINE $ | |

Ticket Number 0163252

District addresses (both tickets):
- 1st District — 415 4th Street, S.W.
- 2nd District — 3320 Idaho Avenue, N.W.
- 3rd District — 1620 V Street, N.W.
- 4th District — 6001 Georgia Avenue, N.W.
- 5th District — 1805 Bladensburg Road, N.E.
- 6th District — 100 42nd Street, N.E.
- 7th District — 2455 Alabama Avenue, S.E.

Government of the District of Columbia - Metropolitan Police Department - VIOLATION CITATION - BTD 10/01

1. DEFENDANT'S NAME - LAST - FIRST - MIDDLE (At Time of Arrest)

2. PHONE NO.

3. VENDOR NO.

4. ADDRESS
1454 Newton St N.W.

| 5. SEX | 6. RACE | 7. BIRTH DATE | 8. SOCIAL SECURITY NO. | 9. BIRTHPLACE (CITY & STATE) |
|---|---|---|---|---|
| F | B | 8/6/87 | 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 | Washington DC |

| 10. HEIGHT | 11. WEIGHT | 12. HAIR | 13. EYES | 14. COMPLEXION | 15. PERMIT NO/ST |
|---|---|---|---|---|---|
| 5'11 | 102 | blcn | brn | Med | 577062772 |

| 16. LOCATION OF OFFENSE | 17. DISTRICT WHERE OFFENSE OCCURRED | 18. DATE OF OFFENSE | 19. TIME OF OFFENSE |
|---|---|---|---|
| | 1D | 5/19/07 | 2345 |

20. CHARGES

- ☐ FISHING VIOLATION
- ☐ VENDING VIOLATION
- ☐ UNTAXED CIGARETTES
- ☐ SELLING CIGARETTES WITHOUT LICENSE
- ☐ HEALTH CERTIFICATE (NONE/EXPIRED)
- ☐ IMPROPER REFRIGERATION OF FOOD
- ☐ SALE OF UNPREPACKAGED FOOD
- ☐ PLACARDS/SIGNS/POSTERS
- ☐ UNLEASHED DOG
- ☐ NOISE ACT VIOLATION
- ☐ RADAR DETECTOR
- ☒ OTHER Operating p.b.

FINE $ 1500.00

| 21. CCN | 22. MPD DISPOSITION | 23. COLLATERAL/BOND RECEIPT NO. |
|---|---|---|
| 065-937 | | |

You are hereby directed to report, within 15 days, to the district in which the citation was issued to print the required amount of collateral for the above-listed violation. Bring this citation with you.

Failure to post collateral within 15 days from the date you receive this citation will result in the case being presented in the D.C. Superior Court for disposition.

If you wish to request a TRIAL you MUST appear in person within 15 days at the district in which the citation was issued and an arraignment date will be scheduled for you. You do not need to post collateral in order to receive a TRIAL. Bring this citation with you.

| ☐ 1st District | 415 4th Street, S.W. |
|---|---|
| ☐ 2nd District | 3320 Idaho Avenue, N.W. |
| ☐ 3rd District | 1620 V Street, N.W. |
| ☐ 4th District | 6001 Georgia Avenue, N.W. |
| ☐ 5th District | 1805 Bladensburg Road, N.E. |
| ☐ 6th District | 100 42nd Street, N.E. |
| ☐ 7th District | 2455 Alabama Avenue, S.E. |

Ticket Number  **0163257**

---

Government of the District of Columbia - Metropolitan Police Department - VIOLATION CITATION - BTD 10/01

1. DEFENDANT'S NAME - LAST - FIRST - MIDDLE (At Time of Arrest)

2. PHONE NO.

3. VENDOR NO.

4. ADDRESS
1454 Newton St N.W.

| 5. SEX | 6. RACE | 7. BIRTH DATE | 8. SOCIAL SECURITY NO. | 9. BIRTHPLACE (CITY & STATE) |
|---|---|---|---|---|
| F | B | 3/19/81 | 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 | DC |

| 10. HEIGHT | 11. WEIGHT | 12. HAIR | 13. EYES | 14. COMPLEXION | 15. PERMIT NO/ST |
|---|---|---|---|---|---|
| 5'11 | 103 | blk/brn | | Med | 577062777 |

| 16. LOCATION OF OFFENSE | 17. DISTRICT WHERE OFFENSE OCCURRED | 18. DATE OF OFFENSE | 19. TIME OF OFFENSE |
|---|---|---|---|
| Newton St N.W. | 1D | 5/19/07 | 2345 |

20. CHARGES

- ☐ FISHING VIOLATION
- ☐ VENDING VIOLATION
- ☐ UNTAXED CIGARETTES
- ☐ SELLING CIGARETTES WITHOUT LICENSE
- ☐ HEALTH CERTIFICATE (NONE/EXPIRED)
- ☐ IMPROPER REFRIGERATION OF FOOD
- ☐ SALE OF UNPREPACKAGED FOOD
- ☐ PLACARDS/SIGNS/POSTERS
- ☐ UNLEASHED DOG
- ☐ NOISE ACT VIOLATION
- ☐ RADAR DETECTOR
- ☒ OTHER Operating p.b.

FINE $ 1000.00

| 21. CCN | 22. MPD DISPOSITION | 23. COLLATERAL/BOND RECEIPT NO. |
|---|---|---|
| 065-937 | | |

You are hereby directed to report, within 15 days, to the district in which the citation was issued to post the required amount of collateral for the above-listed violation. Bring this citation with you.

Failure to post collateral within 15 days from the date you receive this citation will result in the case being presented in the D.C. Superior Court for disposition.

If you wish to request a TRIAL you MUST appear in person within 15 days at the district in which the citation was issued and an arraignment date will be scheduled for you. You do not need to post collateral in order to receive a TRIAL. Bring this citation with you.

| ☐ 1st District | 415 4th Street, N.W. |
|---|---|
| ☐ 2nd District | 3320 Idaho Avenue, N.W. |
| ☐ 3rd District | 1620 V Street, N.W. |
| ☐ 4th District | 6001 Georgia Avenue, N.W. |
| ☐ 5th District | 1805 Bladensburg Road, N.E. |
| ☐ 6th District | 100 42nd Street, N.E. |
| ☐ 7th District | 2455 Alabama Avenue, S.E. |

Ticket Number  **0163256**



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CRIMINAL DIVISION

UNITED STATES OF AMERICA
DISTRICT OF COLUMBIA

VS.

Case No. 2007 CDC 16772

PDID No. 451-797

HUBERT PHILOGENE

### ORDER ASSESSING COSTS

The defendant in the above-entitled matter, having been found guilty on the 28TH day of JANUARY 20 08, of TWO Misdemeanor charge(s) and _____ Felony charge(s), is hereby, this 28TH day of JANUARY 20 08

ORDERED to pay the aggregate amount of $ 100.00 (ONE HUNDRED DOLLARS) as costs assessed under the Victims of Violent Crime Compensation Act of 1981. Such costs shall be paid today or on or before the 2ND day of JUNE 20 08, the date scheduled for imposition of sentence (payable at the Finance Office of the Superior Court, Room 1226). Said amount is payable to the District of Columbia Treasurer and shall be deposited by the Finance Office to the credit of the Crime Victims' Compensation Fund.

_____ JUDGE

White-Court Jacket     Green-Defendant     Canary-Dept. of Employment Services     Pink-Finance Office     Goldenrod-Finance Office

82-3194-P

CD-1419/Jun. 82



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CRIMINAL DIVISION

## NOTICE TO RETURN TO COURT

Case No. 2007 CDC 027502

Defendant HUBERT L PHILOGENE

YOUR CASE IS SET FOR **9:00 am** ON **January 28, 2008**

BEFORE THE HONORABLE JUDGE **COURTROOM 120** IN Courtroom **120**

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA, 500 INDIANA AVENUE, N.W. FAILURE TO

APPEAR PROMPTLY MAY RESULT IN THE ISSUANCE OF A WARRANT FOR YOUR ARREST.

### IMPORTANT

It is your responsibility to appear on time in the proper courtroom. Your obligation is to remain in the courtroom until released by a Judicial Officer. Your name should be listed on the court calendar posted at the courtroom entrance. If it is not, please check with the Clerk in the courtroom before court begins or with the Pretrial Services Agency in Room C-301, or with a Clerk at the Information Window in the lobby of the courthouse to find out if your case will be handled in a different courtroom. If Court is closed due to an emergency, you are obligated to return to Court the next business day at 9:00 a.m.

If you fail to reappear while your case is in trial it may continue in your absence up to and including the rendering of a verdict by the Court or Jury.

_____
Signature of Defendant

**Penalties for failure to appear for a pending Felony charge: 5 years or $5,000 fine**

**Penalties for failure to appear for a pending Misdemeanor/Traffic charge: 180 days or $1,000 fine.**

1909 BRONZEGATE BLVD
SILVER SPRING, MD 20910
_____
Address of Defendant

_____
Vic Simon, Deputy Clerk

November 29, 2007

cdntrtc.doc

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
V.

HUBERT PHILOGENE

**JUDGMENT IN A CRIMINAL CASE**

Case Number: 2007 CDC 16772
PDID No. 451-797

## THE DEFENDANT:

☐ ENTERED A PLEA OF GUILTY TO COUNT (S) _____

☒ WAS FOUND GUILTY ON COUNT (S) (1) _____
AFTER A PLEA OF NOT GUILTY.

| Count | Nature of Charges | Title & Section | Date of Offense |
|---|---|---|---|
| 1 | Operating Business without a license | | 07/18/2007 |

## SENTENCE OF THE COURT

AS TO COUNT (1): FIVE (5) DAYS IN JAIL, E.S.S. AS TO ALL. FOLLOWED BY SIX MONTHS UNSUPERVISED PROBATION TO RUN CONCURRENT WITH 2007 CDC 27582. FINE OF $250.00 (TWO HUNDRED FIFTY DOLLARS) DUE 06/02/2008.

☐ The Defendant is hereby ordered placed on probation - See page 2 of this order for conditions of probation

Costs in the aggregate amount of $ 100.00 _____ have been assessed under the Victims of Violent Crime Compensation Act of 1996, and ☐ have ☒ have not been paid.

01/28/2008
Date

Judge
JOHN H. BAYLY, Associate Judge
Name and Title of Judicial Officer

Certification by Clerk pursuant to Criminal Rule 32(d).

01/28/2008
Date

Antoinette Wilson
Deputy Clerk



HUNTERB 01/28/2008 11:23:1

Exhibit d

To:         <maria.delaney@dc.gov>
Sent:       Thursday, May 24, 2007 1:43 AM
Subject:    Inquiry regarding compliance

Dear Ms. Delaney,

As you know I have been dutifully trying to have all the required licenses and permits for my business, Lime Club, at 1824 Half Street, SW, and I have been complying with all applicable laws, regulations, and policies. As you know, I even hired police officers to provide for additional public safety through MPD's Club Zone Overtimer Detail Program.

Despite my efforts and assurances from ABC inspectors that everything here is in order and that I am in total compliance, for some unknown reason, MDP officers have, on repeated occasions, been issuing citations to me (0163258 and 0163257, for example, for a total of $2,000) for "operating a public hall without a certificate." But, I have NOT been operating as a Public Hall.

In addition to these citations, MPD officers have, on two successive weekends, illegally shut my business down with no authority or justification. They kicked all of my customers out and closed me down based on their assertion that I cannot operate my business without a Public Hall license. This not only caused me financial hardship, but also put all of my employees out on the street and damaged my reputation.

I have been operating in compliance with the provisions of Section 710.3 by charging a minimum fee for food and beverage. Even your inspectors, who have been here and observed my operation in person, have confirmed to me that since I have a CN 04 License (72458) and a Restaurant License (80011XXXX-65003379, both of which are issued to my Caribbean Cultural Center, LLC, I am in compliance.

In addition to the problems described above, now MPD is not providing me with the Club Zone Overtime Detail which I have paid for, because MPD is maintaining that I am not operating with a valid license. How does this contribute to enhancing public safety? MPD is representing to me that ABRA and DCRA have asked MPD to take these actions against me. Is this true?

In addition to issuing the illegal citations referenced above, I have been advised that MPD officers, as part of what I have to assume is an intentional vindictive against my club, have been submitting 251s (Incident Reports) related to my business which may or may not accurately reflect reality. I realize that is a disconcerting statement, but I believe this is possibly part of an MPD scheme to lay a foundation to close my business down by whatever means possible.

On top of everything else, now, Mr. Stokes (from DCRA ?) is preventing me from renewing my license based on the fact that MPD has cited me for these alleged and unfounded "violations." And DCRA has also issued fines to me, totaling $12,000, for not having a public hall license.

I do not understand why I seem to have been singled out for this harrasment by MPD's First District and possibly DCRA.

As a result of all of the above, I have hired an attorney to file a lawsuit against any and all parties which are breaking the law by engaging in these unlawful and unjustified actions against me. My lawyer is also going to fight these unfounded citations issued by MPD.

I will be grateful if you could please advise me what else I am supposed to do to correct these injustices?

Thank you very much,

Hubert Philogene
c (202) 870-3664

Print                                                                    Page 1 of 1

**From:** hubert philogene (compnet_hubert@yahoo.com)
**To:**
**Date:** Sunday, July 20, 2008 8:49:08 AM
**Subject:**

*De*laney, Maria **(ABRA)" <maria.delaney@dc.gov>** wrote:

> Mr. Philogene,
>
>
> While your establishment does have a pending show cause hearing currently scheduled before the
> Alcoholic Beverage Control Board for June 27, 2007 at 1 p.m., the citations referenced in your letter were
> not issued by and are not under the jurisdiction of the Alcoholic Beverage Regulation Administration.  As
> a result, I would suggest that you contact the Metropolitan Police Department (MPD) and or the
> Department of Consumer and Regulatory Affairs who would be in a better position to discuss these
> issues with you.
>
>
> Maria
>
>
> *Maria M. Delaney*
> *Director*
> *Government of the District of Columbia*
> *Alcoholic Beverage Regulation Administration*
> *941 North Capitol Street, N. E., Suite 7200*
> *Washington, D.C. 20002*
>
> *Phone:   (202) 442-4423*
> *FAX:     (202) 727-4052*
>
> *Email:   maria.delaney@dc.gov*

Exhibit E

**METROPOLITAN POLICE DEPARTMENT**
Washington, D.C.

P.D. 163 Rev. 1/2002
ARREST/PROSECUTION REPORT
G.O. 401.5

| 1. PERSON NOTIFIED OF NAME CHANGE – UNIT – DATE/TIME – NCIC NO. (ID ONLY) | 2. ID NUMBER (ID ONLY) |
|---|---|
| | *451797 |

**5. UNIT-ARREST NO.**
010703436

| 3. DEFENDANT'S TRUE NAME – LAST, FIRST, MIDDLE (ID ONLY) | 4. CID NUMBER |
|---|---|
| Philogene, Hurbert Leslie | |

**3. Arresting Officer's Name**
OWENS, C.

| Rank | Badge # | Agency |
|---|---|---|
| OFC. | 3776 | MPDC |

**12. COURT DATE**
07/02/07   7/6/07

| 6. DEFENDANT'S NAME – LAST, FIRST, MIDDLE (At time of arrest) | 7. DEA LAB NUMBER |
|---|---|
| PHILOGENE, HUBERT LESLIE | |

**9. TYPE OF RELEASE**
☐ CITATION ☐ BOND
☐ COLLATERAL

**10. NICKNAME / ALIAS**

| 11. PHONE NUMBER |
|---|
| (202) 870-3664 |

**14. TIME IN D.C.**

**13. ADDRESS (Include Room / Apt. No. & State if Outside D.C.)**
▸ 1909 BRONZEGATE BLVD. SILVER SPRING, MD. 20904

| 15. ☐ CHILD ABUSE | ☐ GANG | ☐ HATE SPECIAL INTELLIGENCE | ☐ SENIOR CITIZEN | ☐ DOMESTIC VIOLENCE | 16. SEX ▸ Male | 17. RACE ▸ Black | 18. BIRTHDATE ▸ 2/6/68 | 19. SOCIAL SECURITY NUMBER 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 |
|---|---|---|---|---|---|---|---|---|
| 20. NEED INTERPRETER ☐ YES ☒ NO | 21. HEIGHT 6-01 | 22. WEIGHT 210 | 23. HAIR BLK | 24. EYES BRO | 25. COMPLEX Med | 26. PERMIT NO/ST P-425-319-512-098 / MD | | 27. BIRTHPLACE (City & State) ST. CROIX / U.S. VIRGIN |

**28. CO-DEFENDANTS: Number 0 (If more than 3, list on back)**
NAME, ADDRESS, ZIP CODE AND PHONE NUMBER

| 29. IMPERSONATOR? ☐ M ☐ F ☒ NO | 30. ETHNICITY AFRICAN | 31. CAUTION NONE |
|---|---|---|

1.

| 32. SCARS/MARKS/TATTOOS NONE |
|---|

2.

| 33. HAT N/A | 34. JACKET N/A | 35. PANTS BLUE JEANS |
|---|---|---|

3.

| 36. COAT N/A | 37. SHIRT WHITE SHIRT | 38. SKIRT/DRESS N/A |
|---|---|---|

**CHECK MADE BY (Name)**
OFC. BROWN

| 39. WALES/NCIC CHECK |
|---|
| NCIC NUMBER 58951 | WARRANT ON FILE (If Yes, enter Warrant Numbers) Yes ☐ No ☒ |

**40. LOCATION OF OFFENSE (Exact Address, include Room / Apt No.)**
▸ 1824 HALF ST. S.W. WASHINGTON D.C. 20024

| DATE OF OFFENSE ▸ 07/02/07 | TIME OF OFFENSE ▸ 0055 |
|---|---|

**40. LOCATION OF ARREST (Exact Address, include Room / Apt No.)**
▸ 1824 HALF ST. S.W. WASHINGTON D.C. 20024

| DATE OF ARREST ▸ 07/02/07 | TIME OF ARREST ▸ 0105 |
|---|---|

**42. ASSISTING OFFICERS NAME, RANK, BADGE NO. & UNIT OR AGENCY**
▸ SIPES, MPO, 4265, MPD

ASSISTING OFFICER'S NAME, RANK, BADGE NO. & UNIT OR AGENCY

| DATE | TIME | LOCATION | 43. DEFENDANT ADVISED OF RIGHTS OFFICER'S NAME – ADVISING / COMPLETING PD FORM 47/47A NOT ADVISED | BADGE NO. | UNIT |
|---|---|---|---|---|---|

**44. COMPLAINANTS / WITNESSES (If sworn member – Name, Rank, Badge No. and Unit)   MORE ☐   See Back**

| NAME – LAST, FIRST, M.I. | ADDRESS – STREET, CITY, STATE, ZIP CODE | BIRTHDATE | HOME PHONE NO. | WORK PHONE NO. |
|---|---|---|---|---|
| W-1 ▸ OWENS, CHARLES | 415 4TH ST. S.W. WASHINGTON D.C. | N/A | N/A | (202) 698-0555 |
| W-2 ▸ | | | | |

| 45. SPEC. OPS PSA 104 | 46. TACTICS 1 – Routine Patrol | 47. PREMISES NIGHT CLUB | 48. SCHOOL ZONE ☐ PUBLIC HOUSING ☐ |
|---|---|---|---|

| CHARGES | NO! OR WARRANT NUMBER | CCN | MPD DISPOS. | COLLA./BOND RECEIPT NO |
|---|---|---|---|---|
| 1. OPERATING A BUSINESS W/O LICENSE | | 088-739 | cust | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

| 50. PROPERTY RECOVERY / ITEMS OF EVIDENCE | | | 51. INITIALS – DATE – UNIT OF PERSON TAKING PRINT | 53. RIGHT THUMB PRINT |
|---|---|---|---|---|
| PROPERTY BOOK / PAGE NO. 1295 / 181 | CSES NO. | | | |

52. M. O., WEAPONS, HANGOUTS, HABITS, INSTRUMENTS

DISTRIBUTION: Page 1 to ID & R ; Page 2 & 3 to Prosecutor; Page 4, Unit Copy; Page 5 Officer's Copy

**COMPLETE ALL REQUIRED FIELDS AND MAKE FIVE COPIES FRONT TO BACK**

| 55. EMPLOYMENT HISTORY (List present employment if any, on Line 1) | | | | |
|---|---|---|---|---|
| FROM–DATE TO | EMPLOYER | ADDRESS | BUS. PHONE | OCCUPATION |
| 06-01-05 | SELF EMPLOYED | 1824 HALF ST. S.W. WDC | (202) 870-3664 | BUSINESS |
| | | | | |

| 56. NAMES OF LIVING FAMILY, RELATIVES, FRIENDS AND ASSOCIATES (Begin with immediate family) | | | | |
|---|---|---|---|---|
| RELATIONSHIP | DOB/AGE | NAME – LAST, FIRST, M.I. | ADDRESS – STREET, CITY, STATE, ZIP CODE | PHONE NUMBER |
| WIFE | 32 | NAVARO, NANDRED | 1909 BRONZEGATE BLVD. SILVER SPRING. MD 20901 | (301) 328-0293 |
| | | | | |
| | | | | |

| 57. MILITARY SERVICE BRANCH/DATE FROM – TO: | 58. TELEPHONE CALL MADE | 59. PHONE NUMBER |
|---|---|---|
| NONE | ☐ YES ☒ NO ☐ REFUSED | |

60. STATEMENT OF FACTS: (Give a brief statement in your own words, of the facts surrounding the offense and the arrest. (Use Continuation Form PD 202A for additional space. Note present condition of any injured person(s). Do not give Witnesses' Names or Addresses. Refer to them as W1 or W2, etc. as indicated in Item 31.)

The event occurred on 07/02/07 at approximately 0055 at 1824 HALF ST. S.W. WASHINGTON D.C. 20024 in Washington DC.

ON THE ABOVE LISTED DATE AND TIME MPO SIPES, OFC. KEHOE AND I OFC. OWENS WERE CONDUCTING A BUSINESS CHECK OF THE LIME NIGHT CLUB AT THE LISTED LOCATION. WE SPOKE TO THE DEFENDANT MR. HUBERT LESLIE PHILOGENE (OWNER) AND INQUIRED ABOUT HIS BUSINESS LICENSE. D-1 PRODUCED A BASIC BUSINESS LICENSE #80011XXXXX-65003379 CATEGORY: 112 WITH AN EXPIRED LICENSE DATE OF 05/31/2007. D-1 STATED THAT HE HAD NO CURRENT LICENSE. D-1 WAS THEN PLACED UNDER ARREST AND TRANSPORTED TO THE FIRST DISTRICT FOR FURTHER PROCESSING.

61. DEFENDANT'S VERSION / REMARKS: [What did defendant say about the offense or his/her whereabouts at the time of offense? (Use PD 118 for defendant's written statement.)]

| 62. RECORD CLERK'S NAME | | 3. | 5. | 64. PROPERTY BOOK/PAGE NO. PRISONER'S PROPERTY ONLY |
|---|---|---|---|---|
| OFC. BROWN | | | | 1256/308 |
| ARREST RECORD SUMMARY | | 4. | 6. | |
| 1. | 2. | | | |

65. BAIL REFORM ACT CASES: Was a statement made by defendant in reference to his/her failure to appear? ☐ Yes ☐ no
(if yes, include in Defendant's Version/Remarks Section above.)

| 66. PRINTED NAME – OFFICER MAKING STATEMENT | BADGE NUMBER | RANK | 68. SIGNATURE OF REVIEWING OFFICIAL | | |
|---|---|---|---|---|---|
| CHARLES OWENS | 3776 | OFC | Sgt. P. W. Mc | | |
| 67. SIGNATURE OF OFFICER MAKING STATEMENT | UNIT | DATE | UNIT | DATE | |
| OFC. Charles J. Oc | 1D | 7/2/2007 | 1-D | 7-2-07 | |

# METROPOLITAN POLICE DEPARTMENT
## Court Case Review

Page 1 of 1

PD 168 Revised 1/2002

| | |
|---|---|
| DEFENDANT'S TRUE NAME: (Last, First, Middle) | CCN NUMBER 088-739 / DATE OF ARREST 07/02/07 |
| DEFENDANT'S NAME (AT TIME OF ARREST) PHILOGENE, HUBERT LESLIE | PROPERTY CONTROL NUMBER |
| POLICE CHARGES: OPERATING A BUSINESS W/O LICENSE | DEA LAB NUMBER |

CO-DEFENDANTS: (List name and arrest number)

1.    3.
2.    4.

| OFFICER/DETECTIVES NAMES: | BADGE | UNIT: | CASE INVOLVMENT (Use codes table from reverse side) | | |
|---|---|---|---|---|---|
| 1 OWENS, C. | 3776 | MPDC | PC | | |
| 2 SIPES | 4265 | MPD | 2N | | |
| | | | 2N | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |

I HEREBY CERTIFY THAT THE ABOVE ☐ LISTED MEMBERS PARTICIPATED IN THE INVESTIGATION OF THIS ARREST AND ARE INVOLVED POLICE WITNESSES.

| | Badge No. | Unit |
|---|---|---|
| Preparing Officer (Last, First, MI) CHARLES OWENS | 3776 | 1D |
| Preparing Officer's Signature OFC. Chas H.O | | Date 7/2/07 |
| Reviewing Official (Last, First, MI) MACK, KENNETH W. | Rank SGt. | Unit 1-D |
| Reviewing Official's Signature SGt. K.W.M | | Date 7-2-07 |

**Court Notification Form**

AUSA/OCC Use Only

Washington, D.C.

Metropolitan Police
Department

**Incident-Based Event Report**

**TYPE OF REPORT**
- Offense
- Incident

**FILL IN THE OVALS COMPLETELY**
- Right Mark ●
- Wrong Marks ⊘ ⊙ ◑

**1 DATE AND TIME OF EVENT**

Start Date: Month 02  Day 07  Year 00  Hour 05  Minute 15

**2 DATE OF REPORT:** Month 02  Day 07  Year 01  Hour 01  Minute 05

**3 DISTRICT** 1
**4 SECTOR** 0
**5 BEAT** 40
**6 COMPLAINT NUMBER** 0887 3

**7 EVENT LOCATION ADDRESS**
1424 HALF ST SW
WASHINGTON D.C. 20024

EVENT NO. 1
OPERATING A BUSINESS W/O LICENSE

**14 EVENT NO. 2**
ABC INCIDENT

- Four of
- In front of
- Along side of
- Inside of
- NW Corner
- NE Corner
- SW Corner
- SE Corner

**9 REPORT RECEIVED BY**
- TRU
- Walk-in
- On-scene
- Radio run

**10 IS RADIO RUN EVENT LOCATION AND LOCATION THE SAME?**
- Yes
- No
EVENT NO. 3

**PROPERTY TYPE**
- Public
- Private

**WEATHER CONDITIONS**
- Clear
- Cloudy
- Rain
- Snow
- Other
- Not applicable
- Unknown

**FORCED ENTRY**
- Yes
- No

**POINT OF ENTRY** N/A

**a. Method Used** N/A

**b. Tools Used** N/A

**SUSPECTED HATE CRIME**
- None
- Race
- Religion
- Sexual Orientation
- Ethnicity
- Other

**SECURITY SYSTEM (Mark all that apply)**
- Alarm/Audio
- Alarm/Silent
- Camera
- Dog
- Dead bolt
- Unlocked
- Exterior lights
- Interior lights
- Fence
- Guard
- Neighborhood watch
- Other
- Not applicable
- Unknown

**LOCATION TYPE (Mark only one)**
- Alley
- Bank/Savings & loan
- Bus stop
- Church/Synagogue/Temple
- College/University
- Commercial office building
- Construction site
- Convenience store
- Department/Discount store
- D.C. government building
- Doctor's office/Hospital
- Drug store
- Federal/Government bldg.
- Field/Woods
- Grocery/Supermarket
- Hotel/Motel/Etc.
- Jail/Prison
- Lake/Waterway
- Liquor store
- Park area
- Parking lot/Parking garage
- Public housing project

**DESIGNATED AREAS (Mark all that apply)**
- Public/Private school
- Rental storage facility
- Residence/Home
- Restaurant
- Service station
- Sidewalk
- Specialty store
- Street/Highway/Road
- Tavern/Night club
- Other
- Not applicable
- Unknown
- Victim's vehicle
- Suspect's vehicle
- Taxi-cab
- Bus
- Train/Metro/Amtrak/Etc.
- Hallway
- Elevator
- Stairwell
- Basement/Laundry room
- Apartment/Condo unit
- Single family dwelling
- Hotel/Motel room
- College/University dorm
- Classroom
- Office room
- Vacant building/room
- Customer area
- Storage area
- In public housing
- W/in 1 block public housing
- W/in 1,000 ft. of school
- Other
- Not applicable
- Unknown

**PARTY/VICTIM INFORMATION**
**32 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1**
OWENS, CHARLES

**33 RELATED TO EVENT NO(S).**

**38 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1**

**39 RELATED TO EVENT NO(S).**

**VICTIM TYPE**
- Individual
- Financial inst.
- Business
- Religious org.
- Government
- Police officer
- Society/Public
- Other

**VICTIM TYPE**
- Individual
- Business
- Financial inst.
- Government
- Religious org.
- Society/Public
- Police officer
- Other

**DATE OF BIRTH**

**AGE RANGE**
- 0-1 yr.
- 2-12 yrs.
- 13-17 yrs.
- 18-65 yrs.
- Over 65

**SEX**
- Male
- Female
- Unknown

**HOME PHONE** NONE

**BUSINESS PHONE** (202) 698-0555

**DATE OF BIRTH**

**AGE RANGE**
- 0-1 yr.
- 2-12 yrs.
- 13-17 yrs.
- 18-65 yrs.
- Over 65

**SEX**
- Male
- Female
- Unknown

**HOME PHONE** ( )

**BUSINESS PHONE** ( )

**RACE/ETHNICITY (Mark all that apply)**
- American Indian/Alaskan Native
- Asian/Pacific Islander
- Black
- Chinese
- Latino/Hispanic
- Jamaican
- Japanese
- Korean
- Vietnamese
- White
- Other
- Unknown/Refused

**RACE/ETHNICITY (Mark all that apply)**
- American Indian/Alaskan Native
- Asian/Pacific Islander
- Black
- Chinese
- Latino/Hispanic
- Jamaican
- Japanese
- Korean
- Vietnamese
- White
- Other
- Unknown/Refuse

**HOME ADDRESS**
- DC Resident
- Non-DC Resident
- Unknown

NONE

**37 HOME ADDRESS**
- DC Resident
- Non-DC Resident
- Unknown

**BUSINESS ADDRESS/SCHOOL**
415 4th St. SW
WASHINGTON DC. 20024

**BUSINESS ADDRESS/SCHOOL**

**OCCUPATION** POLICE OFFICER

**IS EVENT RELATED TO OCCUPATION?**
- Yes
- No
- Unknown

**OCCUPATION**

**IS EVENT RELATED TO OCCUPATION?**
- Yes
- No
- Unknown

**ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1**
NONE

**ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1**

**STATUS**
- Open
- Closed
- Closed by arrest

**REVIEWER**

**DISTRIBUTION**

| 55 | IS VICTIM #1 THE REPORTING PERSON? IF NO, ENTER THE NAME, ADDRESS AND PHONE NUMBER OF THE REPORTING PERSON. ○ Yes ○ No | Name: _____ Address: _____ | Phone-Area Code: _____ |

| 56 | DID THE REPORTED EVENT OCCUR AS A RESULT OF AN INTRA-FAMILY MATTER? ○ Yes ● No | 56A WAS PD FORM 378A ISSUED? ○ Yes ● No | 57 IS CPO/TPO OUTSTANDING? ○ Yes ● No ○ Unknown | IF YES, ENTER CPO/TPO #: |

**58 INJURIES** Use the following codes to describe injuries. (Mark all that apply)

N = None Visible
M = Apparent Minor Injury
B = Apparent Broken Bones

O = Other Major Injury
I = Possible Internal Injury
G = Gunshot

L = Severe Laceration
T = Loss of Teeth
U = Unconscious

| INJURED? | NUMBER | INJURY CODE | DESCRIBE INJURY | WHERE TAKEN | BY WHOM | DCFD AMB. | DCFD AMB. # | STATUS |
|---|---|---|---|---|---|---|---|---|
| ○ Victim | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Suspect | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Victim | | | N | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Suspect | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Victim | | | A | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Suspect | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Victim | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Suspect | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |

**59 PART III - PROPERTY**

| Codes | S = Stolen | I = Impounded | L = Lost |
|---|---|---|---|
| | E = Evidence | V = Vehicle from which theft occurred | P = Suspected proceeds of crime |
| | R = Recovered | | O = Other |
| | F = Found | D = Alleged drug type | |

a. Property Book & Page No. **1295/181**
b. Location of Property Book **IS**

| Code | Description of Item(s) | Serial Number/Operation ID No. | Model No. | Color | Size | Quantity | Comp. Value | Age | MPDC Value |
|---|---|---|---|---|---|---|---|---|---|
| E | BUSINESS LICENSE (CERTIFIED) | 800-11-XXXX-65XXIFPB | | | | 1 | | | |
| | | | | | | | | | |

**60 VEHICLE INFORMATION** Vehicle operated/used by: ○ Victim ○ Suspect ○ Victim's vehicle taken by suspect

| Code | Year | Make | Model | Color | Body | Tag No./State/Year | VIN |
|---|---|---|---|---|---|---|---|
| | N/A | | | | | | |

**61 PART IV - SUSPECT/MISSING PERSON INFORMATION** (Use narrative if additional space is needed.)

| #1 ○ Suspect ○ Missing | a. Race ○ Asian ○ White ○ Black ○ Latino/Hispanic ○ Other ○ Unknown | b. Sex ● Male ○ Female ○ Unknown | c. Exact Age or Range 38 | d. Height 6-01 | e. Weight 210 | f. Eyes BRO | g. Hair BLK |
|---|---|---|---|---|---|---|---|
| h. Complexion MED | i. Scars NONE | j. Mustache MED | k. Facial Hair NONE | l. Hat N/A | m. Coat/Jacket N/A | n. Pants BLUE JEANS | o. Blouse/Shirt WHI. SHIRT | p. Perpetrator Suspected of Us. ○ Alcohol ○ Dr ○ Computer ○ N |

q. Weapons Used in Offense (Mark all that apply)

| Firearm | | | Other | | | Color | Make | Model | Cali |
|---|---|---|---|---|---|---|---|---|---|
| ○ Handgun ○ Revolver ○ Rifle | ○ Shotgun ○ Semi-automatic ○ Automatic | ○ Other firearm | ○ Cutting instrument ○ Blunt object ○ Motor vehicle | ○ Hands/Feet/Teeth ○ None ○ Unknown | ○ Other (specify) | | | | |

| 62 #2 ○ Suspect ○ Missing | a. Race ○ Asian ○ White ○ Black ○ Latino/Hispanic ○ Other ○ Unknown | b. Sex ○ Male ○ Female ○ Unknown | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|
| h. Complexion | i. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Us. ○ Alcohol ○ Dr ○ Computer ○ N |

q. Weapons Used in Offense (Mark all that apply)

| Firearm | | | Other | | | Color | Make | Model | Cali |
|---|---|---|---|---|---|---|---|---|---|
| ○ Handgun ○ Revolver ○ Rifle | ○ Shotgun ○ Semi-automatic ○ Automatic | ○ Other firearm | ○ Cutting instrument ○ Blunt object ○ Motor vehicle | ○ Hands/Feet/Teeth ○ None ○ Unknown | ○ Other (specify) | | | | |

| 63 #3 ○ Suspect ○ Missing | a. Race ○ Asian ○ White ○ Black ○ Latino/Hispanic ○ Other ○ Unknown | b. Sex ○ Male ○ Female ○ Unknown | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|
| h. Complexion | i. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Us. ○ Alcohol ○ Dr ○ Computer ○ N |

q. Weapons Used in Offense (Mark all that apply)

| Firearm | | | Other | | | Color | Make | Model | Cali |
|---|---|---|---|---|---|---|---|---|---|
| ○ Handgun ○ Revolver ○ Rifle | ○ Shotgun ○ Semi-automatic ○ Automatic | ○ Other firearm | ○ Cutting instrument ○ Blunt object ○ Motor vehicle | ○ Hands/Feet/Teeth ○ None ○ Unknown | ○ Other (specify) | | | | |

*Value of vehicles to be entered by Information Processing section

CCN **088-739**    PAGE

PART VI MISSING PERSONS

PROBABLE CAUSE OF ABSENCE AND DESTINATION

IF MISSING PERSON HAS RUN AWAY BEFORE, GIVE DATE AND WHERE LOCATED:

CLASSIFICATION
○ Critical
○ Non-critical

CLASSIFIED BY:

PHYSICAL/MENTAL CONDITION (i.e., diabetic)

DESCRIBE ARTICLES OF JEWELRY WORN AND IDENTIFICATION CARRIED

NAME OF PARENT/GUARDIAN

ADDRESS OF PARENT/GUARDIAN

IF JUVENILE, ENTER MOTHER'S MAIDEN NAME

MISSING PERSON SECTION NOTIFIED (Na

COMPLA
NUMBE

0 8 8 7

NARRATIVE     Describe event and action taken. If additional narrative space is needed, use PD Form 251-A.

Item Number
Continued

ON THE ABOVE LISTED DATE AND TIME MPO SIPES, OFC. KEYHOE
AND I OFC. OWENS CONDUCTED A BUSINESS CHECK OF THE LISTED
LOCATION. WE INQUIRED ABOUT THE BUSINESS LICENSE. S-1 PRODUCED
AN EXPIRED BUSINESS LICENSE 05/31/2007. S-1 WAS ARRESTED
AND TRANSPORTED TO THE FIRST DISTRICT FOR PROCESSING.
G-1 OBSERVED CUSTOMERS AND EMPLOYEES ENTERING AND
EXITING THE ESTABLISHMENT AND THAT ESTABLISHMENT
WAS OPEN FOR BUSINESS.

FAXED TO ABRA 07/02/07; MRS. BENNETT

EVIDENCE TECHNICIAN/CSES #     NAME OF INVESTIGATOR NOTIFIED     TELETYPE NOTIFIED (Name)     TELE

REPORTING OFFICER'S SIGNATURE: OFC. Chauch L. Ow     ELEMENT: 10     OTHER POLICE AGENCY (Indicate if report prepared by officer other than MPD)     SECOND OFFICER'S NAME: MPO SIPES     ELEMENT: 10     SIGNATURE OF SUPERVISOR: SGt. KuPMa

BADGE NUMBER

○ USCP
○ USSS
○ METRO TRANSIT
○ OTHER

BADGE NUMBER

BADGE NUMBER

OFC. CHARLES OWENS

PA

P.D. 252 Rev. 1/2002 | Metropolitan Police Department | **SUPPLEMENT REPORT** | Washington, D.C.

| ☐ Classification Change  ☒ Additional Information | **1. DISTRICT** 1D | **2. BEAT** 104 | **3. RA** 104 | **4. ORIGINAL CLASSIFICATION** OPERATING A BUSINESS | **5. COMPLAINT NUMBER** 088-739 |
| | **6. DATE OF THIS REPORT** 7/2/2007 | | | **7. REPORTING ELEM.** 1D | **8. CLASSIFICATION OF REPORT CHARGED TO:** |

| **9. DATE AND TIME OF EVENT** 07/02/070055 | **10. DATE AND TIME OF ORIG. RPT.** 7/2/2007 02:17 | **11. EVENT LOCATION** 1824 HALF ST. S.W. WASHINGTON D.C. | **12. PROPERTY TYPE** NIGHT CLUB |
| **13. RADIO RUN RECEIVED** NO | **14. DESCRIBE LOCATION** BUILDING | **15. WHERE ENTERED** N/A | **16. TOOLS/WEAPONS** N/A | **17. METHODS** N/A |

| 8. | **COMPLAINANT/MISSING PERSON/FIRM** OWENS, CHARLES | **SEX** M | **RACE** B | **DATE OF BIRTH** N/A | **COMPLAINANT/MISSING PERSON/FIRM** | **SEX** | **RACE** | **DATE OF BIRTH** |

| Missing Person | ☒ SUSPECT ☐ MISSING PERSON | **RACE** Black | **SEX** Ma | **AGE** | **HEIGHT** 6-01 | **WEIGHT** 210 | **EYES** BR | **HAIR** BL | **COMPLEXION** Med | **SCARS** NON | **HAT** N/A | **COAT** N/A | **JACKET** N/A | **PANTS** BLU | **SHIRT** WHI |
| | ☐ SUSPECT ☐ MISSING PERSON | **RACE** | **SEX** | **AGE** | **HEIGHT** | **WEIGHT** | **EYES** | **HAIR** | **COMPLEXION** | **SCARS** | **HAT** | **COAT** | **JACKET** | **PANTS** | **SHIRT** |

**a. SOLVABILITY FACTORS** Complete each item below. If additional space is needed, use the narrative section. If necessary, use PD Form 251-A. Refer to the specific item numbers when continuing information in the narrative section or on PD Form 251-A.

| | | | If yes, enter name(s), address(es), phone number(s), hours of availability and brief account. |
|---|---|---|---|
| IS THERE A WITNESS? | ☐ YES ☒ NO | | |
| IS A SUSPECT NAMED? | ☒ YES ☐ NO | | Enter the name and include any nickname used. PHILOGENE, HUBERT LESLIE |
| IS THE STOLEN PROPERTY TRACEABLE? | ☐ YES ☒ NO | | Include reason why or why not. |
| IS PHYSICAL EVIDENCE PRESENT? | ☐ YES ☒ NO | | Describe it. |
| IS THE PERPETRATOR KNOWN TO THE VICTIM? | ☐ YES ☒ NO | | If yes, describe the relationship. |
| WAS A REFERRAL FORM GIVEN TO THE COMPLAINANT? | ☐ YES ☒ NO | | N/A |
| DURING WHAT HOURS IS COMPLAINANT AVAILABLE FOR INTERVIEW ANYTIME | | | N/A |
| IS AN MO OR PATTERN INDICATED? ☐ YES ☒ NO | | DESCRIBE MO OR PATTERN N/A | |

*Case Closed With Arrest*

| **21. ADDITIONAL STOLEN PROPERTY** | | | | | | | **Property Book** |
|---|---|---|---|---|---|---|---|
| **CODE** | **ITEM** | **SERIAL NO./OPERATION ID NO.** | **MODEL NO.** | **COMP. VALUE** | **AGE** | **MPDC VALUE** | |
| | | | | | | | **BOOK/PAGE NO.** ADDITIONAL VALUE |
| | | | | | | | **ORIGINAL VALUE** |
| **YEAR** | **MAKE** **MODEL** **COLOR** **BODY** | **TAG / STATE / YEAR** | **VEHICLE IDENTIFICATION NO.** | * * * | | | **TOTAL PROP. VALUE** |

**22. NARRATIVE:** Record your activity and all developments in the case subsequent to your last report. List the names, addresses, sex, race, age, and arrest numbers of all arrested persons. Explain any change in classification. List the names, addresses, and telephone numbers of all witnesses and suspects.

Case closed with the arrest of PHILOGENE, HUBERT LESLIE a Black Male of 1909 BRONZEGATE BLVD. SILVER SPRING, MD. 20904, social security number 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, date of birth 2/6/85, arrest number 010703436.

| **23. STATUS** ☐ OPEN ☐ PRIOR CLOSED ☒ CLOSED | ☐ UNFOUNDED (EXPLAIN IN NO. 22) ☐ SUSPENDED (EXPLAIN IN NO. 22) | **24. TELETYPE NO.** | **25. SOLVABILITY RATING** | **26. SOLVABILITY CLASSIFICATION** |
| **27. INVESTIGATIVE OFFICER'S RECOMMENDATION** ☐ SUSPEND ☐ INVESTIGATE FURTHER | | **27. SUPERVISOR'S RECOMMENDATION** ☐ SUSPEND ☐ INVESTIGATE FURTHER | | |
| **28. REPORTING MEMBER'S SIGNATURE** O.F.C. Church I.O. | **BADGE/ELEM** 5776/1D | **30. INVESTIGATOR'S SIGNATURE** **BADGE/ELEM** | **31. SUPERVISOR'S SIGNATURE** SGT. Kauffman | **BADGE/ELEM** S-812 1-D |
| **29. INVESTIGATIVE REVIEW OFFICER** | **33. SUPERVISOR** | **BADGE/ELEM** | **34. REVIEWER** | **35. DISTRIBUTION** |

* * * Value of vehicles will be entered by the Information Processing Section.
Data Processing Division    OWENS, C.

Page 1 of 1 Pages

**Metropolitan Police Department — Property in the Custody of the Property Division - Washington, D.C.**

| 1. Property Control No. | 2. Receiving Elem. | 3. Property Book & Page No. | 4. CCN | Page 1 of 1 | 5. No. of Items | 6. No. of Associates | 7. D&L Lab Number |
|---|---|---|---|---|---|---|---|
| | 1 D | 1295 / 181 | 088-739 | | 1 | 0 | |
| 8. CSES Number | 9. Name of Member Recovering Property | | Badge No. | 10. Name of Member Preparing Return | | Badge No. | |
| | OFC. OWENS, C. | | 3776 | OFC CHARLES OWENS | | 3776 | |

Use the following codes to classify property in Item B below:

A = Abandoned
B = Turned Over to Police for Destruction
C = Suspected Proceeds of Crime
D = Estate of Deceased
E = Evidence
F = Found
G = Safekeeping/Recovered Stolen Auto
H = Held for Civil Forfeiture
I = Impounded
J = Removed from Impounded Vehicle
K = Set out for Eviction
L = Prisoner's Property
M = Alleged Mentally Ill

1. Date recovered 01/02/07
2. Where was property found? 1804 HALF ST. S.W. WASHINGTON D.C. 2002A

## PART I. Description of Property

| A. Item No. | B. Description of Item | C. Color | D. Serial Number | E. Classification | F. Quantity | G. Storage Site | H. Storage Facility | I. Storage Location | J. Gemology Released | K. Date Released | Method of Disposition | Sale Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BASIC BUSINESS LICENSE | | 8001IXXXXX-65003379 | E | 1 | | | | | | | |

Check block that apply

## PART II. Motor Vehicle Surrendered or In Custody

| Tag Number | Registration State/Year | Body Style | No. of Time | Make | Year of Manufacture | Vehicle Identification Number | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Anti-freeze in vehicle? ☐ Yes ☐ No | Radiator tagged and drained? (Date) ☐ Yes ☐ No | | Auto Theft Notified (Name, date & time) | | Teletype notified (Name, date & time) | | | | | | | |

## PART III. Property Released

| Item No. | | | Released to: (Signature) | Address | | Returned By (Initials) | Date of Release | Method of Disposition | Fees to D.C. Treas |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

***COMPLETE ALL REQUIRED FIELDS AND MAKE (4) COPIES FRONT TO BACK***

P.D. 81 Rev. 1/2002

**PART IV. Property Ownership/Claim Information**

Use the following codes in Item B (Type of Associate) - O =Owner  C = Claimant  D = Defendant  L = Lienholder  F = Finder

| Item No. | B. Type of Associate | C. Name of Associate | D. Address | E. Social Security No. | F. Telephone | G. Owner Notified | H. Charge | I. Age | J. Arrest No. | K. D |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | D | PHILOGENE, HUBERT | 1909 BRONZEGATE BLVD. SILVER | 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 | (202) 870- | ☒Yes ☐No | | 0 1 0 7 | | |

**PART VI. Property Name/Address**
(for Continued Ownership Claim)

| Name | Address | Telephone No. | Foreign County |
|---|---|---|---|

L. Name of Person Making Notification(s) | Date

M. Was NCIC Check Made for Identifiable property?
☐ Yes (Attach copy of NCIC Inquiry) ☒ No

**PART VII. Statement of Facts**

ON THE ABOVE LISTED DATE AND TIME MPO SIPES, OFC. KEHOE AND I OFC. OWENS WERE CONDUCTING A BUSINESS CHECK OF THE LIME NIGHT CLUB AT THE LISTED LOCATION. WE SPOKE TO THE DEFENDANT MR. HUBERT LESLIE PHILOGENE (OWNER) AND INQUIRED ABOUT HIS BUSINESS LICENSE. I PRODUCED A BASIC BUSINESS LICENSE #8001 1XXXXX-65003379 CATEGORY: 112 WITH AN EXPIRED LICENSE DATE OF 05/31/2007. D-1 STATED THAT HE H[...] NO CURRENT LICENSE. D-1 WAS THEN PLACED UNDER ARREST AND TRANSPORTED TO THE FIRST DISTRICT FOR FURTHER PROCESSING.

Signature of Commanding Officer



BASIC BUSINESS LICENSE

PUB HEALTH: FOOD EST RET
RESTAURANT

CARIBBEAN CULTURAL CENTER, LLC
1824 HALF ST SW
WASHINGTON, DC 20024

MCOATS, LEONARD
CARIBBEAN CULTURAL CENTER
3117 BIRCH ST NW
WASHINGTON, DC 20015

THE LAW REQUIRES THIS LICENSE TO BE POSTED IN A CONSPICUOUS PLACE ON THE PREMISES.

| | METROPOLITAN POLICE DEPARTMENT Washington, D.C. | Evidence Envelope |
|---|---|---|
| Exhibit Number | **EVIDENCE** | 1 OF 1 |
| | | 2. PDID No. |

1. Defendant

HUBERT PHILOGENE

3. Alias

4. Date of Birth 7/6/68

6. Apt. No.

5. Address 1909 BRONZEGATE BLVD. SILVER SPRING MD. 20904

7. Social Security No. 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

8. Birthplace ST. CROIX VIRGIN ISLAND

9. Date of Offense 7/2/07

| 10. Sex M | 11. Race B | 12. Hgt. 6-01 | 13. Wgt. 215 | 14. Hair BLK | 15. Eyes BRO | 16. Co-Defendant No. 1 |

17. Complaint Number 088-739

18. Dist. of Arrest

19. Date/Time 7/2/07 0005

20. Co-Defendant No. 2

21. Charge OFF. BUSINESS W.O. LIC.

22. Dist. & Arrest No. 10 0107037

23. Property Book 1295

24. Page No. 181

25. EVIDENCE (1) BUSINESS LICENSE

26. Where Obtained Exactly (i.e., location in residence, auto, or on person) 1874 HALF ST. SW. WASHINGTON D.C.

27. Seized By OFC. OWENS, C.

28. Assigned To 1D

29. Purchased By

30. Amount Paid

31. Collected By

32. Assigned To

**PERSON RECOVERING EVIDENCE WILL PERSONALLY PLACE IN ENVELOPE AND SEAL**

Signature OFC. Charles Owens

Date 7/2/07

Time

Printed Name CHARLES L. OWENS

Assigned 1D

OF THE NARCOTIC BRANCH

Location Picked Up

Date

Time

35. Witnesses

DELIVERED TO THE DRUG ENFORCEMENT ADMINISTRATION, MID ATLANTIC REGIONAL LABORATORY AT 1440 MCCORMICK DR., LARGO, MD., FOR ANALYSIS

36. Lab Number

BY: _____

Narcotics and Special Investigations Division, M.P.D.C.

P.D. 95 Rev. 5/04.

Date

Pouch Size: 10" x 12"

KU-125-2

# DISTRICT OF COLUMBIA FINAL DISPOSITION REPORT

| ST NAME | FIRST | MIDDLE | SUFFIX | OCA | | F.B.I. Number | SID/PDID Number |
|---|---|---|---|---|---|---|---|
| HILOGENE, HURBERT LESLIE | | | | | | | 451797 |

| IAS AND/OR NICKNAME | PLACE OF BIRTH (STATE OR COUNTRY) | CO |
|---|---|---|
| | U.S. Virgin Islands | US |

| X RACE | DOB | SOCIAL SECURITY NUMBER | HEIGHT | WEIGHT | EYES | HAIR | SCARS, MARKS, TATTOOS |
|---|---|---|---|---|---|---|---|
| 1 B | 02/06/1968 | 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 | 601 | 210 | BRO | BLK | |

| OME ADDRESS | STREET | CITY – TOWN | STATE | ZIP CODE |
|---|---|---|---|---|
| | | | | |

| HARGE | | DATE OF OFFENSE |
|---|---|---|
| 669 OTHER MISDEMEANOR (NOT CATEGORIZED) (operating a business without a license) | ORI: DCMPD 0000<br>CONTRIBUTOR: PD<br>ADDRESS: WASH, DC | 07/02/2007 |
| | | DATE OF ARREST |
| | | 07/02/2007 |

| ARRESTING OFFICER (LAST, FIRST, MI) | BADGE NUMBER |
|---|---|
| OWENS | 3776 |

| ARREST NUMBER | PHOTO AVAILABLE THIS ARREST | PALM PRINT THIS ARREST |
|---|---|---|
| 010703436 | X | X |

| CTN NO/DOCKET NUMBER | SENTENCE IMPOSED BY COURT |
|---|---|
| | |

**ISPOSITION (CHECK ONE)**
- GUILTY ☐
- NOT GUILTY ☐
- DISMISSED ☐
- NOLLE PROSEQUIT ☐
- OTHER:

| THIS FORM SUBMITTED BY:<br>ORI D C001017A<br>US ATTORNEY<br>WASHINGTON, DC 20530 | PROBATION:<br>SUPERVISED ☐<br>UNSUPERVISED ☐ |
|---|---|
| SENTENCE IMPOSED BY COURT<br>PROBATION ☐<br>SUPERVISED ☐<br>UNSUPERVISED ☐ | DATE OF FINAL DISPOSITION |

ADDITIONAL CHARGE



001071830002





PHILOGENE          HURBERT
02/06/1968
M                  B
115000451797
Metropolitan Police Dept



PHILOGENE          HURBERT
02/06/1968
M                  B
115000451797
Metropolitan Police Dept



PHILOGENE          HURBERT
02/06/1968
M                  B
115000451797
Metropolitan Police Dept

EXHIBIT F

Filed
D.C. Superior Court
07 Dec 05 P06:23
Clerk of Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| DISTRICT OF COLUMBIA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CARIBBEAN CULTURAL CENTER, LLC | )   2007 CA 003182 B |
| D/B/A "LIME" | ) |
| | ) |
| and | ) |
| | ) |
| HUBERT L. PHILOGENE | ) |
| PRESIDENT, | ) |
| CARIBBEAN CULTURAL CENTER, LLC. | ) |
| | ) |
| Defendants. | ) |

### STIPULATION OF DISMISSAL

Plaintiff District of Columbia, through counsel, pursuant to Rule 41(a) (1) of the

Superior Court Rules of Civil Procedure hereby stipulate that this case be dismissed.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

ROBERT HILDUM
Acting Deputy Attorney General,
Public Safety Division

/s/ Alicia D. Washington
ALICIA D. WASHINGTON #454303
Chief, Neighborhood and Victim Services Section

/s/ Robert A. DeBerardinis, Jr.
ROBERT A. DEBERARDINIS, JR. #335976
Assistant Attorney General
Suite 450-North
441 4th Street, N.W.
Washington, D.C. 20001
(202) 727-6338
Counsel for Plaintiff

/s/ J. Gordon Forester, Jr.
J. Gordon Forester, Jr
Bar. No. 4424
1914 Sunderland Place, N.W.
Washington D.C. 20036
202-293-3353
Counsel for Defendant Caribbean
Cultural Center

/s/ Ashley E. Wiggins
Ashley E. Wiggens
Bar. 481557
1912 Sunderland Place, N.W.
Washington, D.C. 20036
202-429-9000
Counsel for Defendant Philogene

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing dismissal was mailed by first class

postage this 5th day of December 2007 to:

J. Gordon Forester, Jr
1914 Sunderland Place, N.W.
Washington D.C. 20036
202-293-3354
Counsel for Defendant Caribbean
Cultural Center

Ashley E. Wiggens
1912 Sunderland Place, N.W.
Washington, D.C. 20036
202-429-9000
Counsel for Defendant Philogene

/s/Robert A. DeBerardinis, Jr
Robert A. DeBerardinis, Jr.
Assistant Attorney General

- 2 -

Alcoholic Beverage Regulation Administration: Class License Definitions                    Page 1 of 4



District of Columbia

Adrian M. Fenty 

## Alcoholic Beverage Regulation Administration

**ABRA HOME**

**SERVICES**
Licenses
Licenses in Safe-keeping
Permits

**INFORMATION**

**ONLINE SERVICE REQUESTS**

### Class License Definitions

- Manufacturer's License Class A
- Manufacturer's License Class B
- Wholesaler's License Class A
- Wholesaler's License Class B
- Retailer's License Class A
- Retailer's License Class B
- Retailer's License Class C

- Retailer's License Class D
- Retailer's License Class F
- Retailer's License Class G
- Club License
- ABC Manager's License
- ABC Solicitor's License
- Caterer's License

#### Manufacturer's License Class A

The license authorizes the licensee to operate a rectifying plant, a distillery, or a winery in the District of Columbia. The licensee may sell the manufactured product to another DC license holder for resale or US territorial law for resale.

- A rectifying plant and distillery fee is $6,000.
- A winery fee is $1,600.
- A distillery producing more than 50% non-alcoholic beverage fee is $3,000.

↑ Top

#### Manufacturer's License Class B

The license authorizes the licensee to operate a brewery in the District of Columbia. The licensee may sell the beer manufactured at the brewery to another DC license holder for resale, to a dealer licensed under the State or US territorial law for resale, or directly to a consumer. However, when sold to a consumer, the beer must be sold in barrels, kegs, or sealed bottles and, after sale may not be opened or consumed on the brewery premises. Fee is $5,000.

↑ Top

#### Wholesaler's License Class A

The license authorizes the licensee to sell non-alcoholic and alcoholic beverages, beer, wines, and light wines to another DC license holder for resale or to a dealer licensed under State of US territorial law for resale. The licensee may sell only beer and wines directly to a consumer. All beverages shall be sold in barrels, kegs, sealed bottles, or other closed containers, and after sale, may not be opened or consumed on the Wholesaler's premises. No wholesaler in the category, unless also licensed as a Wholesale druggist or grocery, may engage in any other business on the licensed premises. Fee is $5,200.

↑ Top

#### Wholesaler's License Class B

The license authorizes the licensee to sell only beer and wines to another DC license holder for resale, or directly to a consumer. All beer and wines shall be sold in barrels, kegs, sealed bottles, or other closed containers and, after sale, may not be opened or consumed on the Wholesaler's premises. Fee is $2,600.

↑ Top

#### Retailer's License Class A

The license authorizes the licensee to sell and deliver alcoholic beverages, beer, wines, directly to consumers and licensed caterers only. Alcoholic beverages may not be sold to other licensees, except for licensed caterers, for resale. The beverages shall be sold or delivered in containers as was received by the licensee, and no beverages may be opened or consumed on the Retailer's premises. Fee is $2,600.



**Retailer's License Class B**

The license authorizes the licensee to sell only beer and wines directly to consumers only. No beer and wines resale. The beer and wines shall be sold in the same barrel, keg, sealed bottle, or other closed container may not be opened or consumed on the Retailer's premises. Fee is $1,300.

**Retailer's License Class C**

The license authorizes the licensee to keep for sale and to sell spirits, wines and beer directly to consumers premises. All alcoholic beverages may be displayed and dispensed in full sight of the consumer. There follows:

- A **Class C Restaurant ("CR")** license will be issued only for bona fide restaurants. To apply for adequate kitchen and dining facilities; shall have adequate employees; shall derive at least forty-receipts from the sale of food or have annual gross food sales of $2,000 per occupant; shall keep hours prior to closing and shall meet all other requirements in the Act. A Class C Restaurant may performances, and facilities for dancing by patrons. Fee ranges from $1,000 to $2,600.
- A **Class C Tavern ("CT")** license will be issued only for a tavern. A tavern is a place serving both offer entertainment, except nude performances, which may allow dancing for its patrons only, but not which shall meet all other requirements set out in the Act. The size of the dance floor in a tavern (140) square feet, except that the license of a Class C Retailer's License whose license premises regularly-used dance floor in excess of one hundred and forty (140) square feet and who is occu disqualified under this definition. Fees ranges from $1,300 to $3,120.
- A **Class C Nightclub ("CN")** license will be issued only for a nightclub, including hotel nightclubs alcoholic beverages and food, which may provide music and dancing facilities for patrons and er requirements set out in the Act. Only nightclubs approved for nude performances before 1994 m performers. Fee ranges from $1,950 to $5,850.
- A **Class C Hotel ("CH")** license will be issued only for a hotel. Hotels must offer sleeping accom room in the same building for its guests, and have adequate kitchen equipment and employees. of license, hotel dining rooms must derive at least forty-five percent (45%) of their gross annual r serve alcoholic beverages for consumption in dining rooms, lounges, banquet halls, and other sh well as in the rooms of registered guests. However, any nightclub of a hotel's premises shall be l addition, hotels shall meet all other requirements set out in the Act. Fee ranges from $2,600 to $
- A **Class C Multipurpose ("CX")** license will be issued only for a legitimate theater, the Washing carrying marine vessel serving food or a club car or dining cars on a railroad. Fee ranges from $ vessel or dockside waiting area is $1,950.

**Retailer's License Class D**

The license authorizes the licensee to keep and sell wine and beer for consumption on the licensed pre sale or sold may be displayed and dispensed in full sight of the purchaser. There are five (5) types of C

- A **Class D Restaurant ("DR")** license will be issued only for bona fide restaurants. To qualify for adequate kitchen and dining facilities; shall have adequate employees; shall derive at least forty-receipts from the sale of food or have annual gross food sales of $1,500 per occupant; shall have hours prior to closing and shall meet all other requirements in the Act. A Class D Restaurant ma performances and facilities for dancing by patrons. Fee ranges from $600 to $1,560.
- A **Class D Tavern ("DT")** license will be issued only for a tavern. A tavern is a place serving both offer entertainment, except nude performances, and allow dancing for its patrons only, but not its shall meet all other requirements set out in the Act. The size of the dance floor in a tavern may n square feet, except that the holder of a Class D Retailer's License whose licensed premises on S used dance floor in excess of one hundred and forty (140) square feet and who is occupying the under this definition. Fee ranges from $1,000 to $1,950.
- A **Class D Nightclub ("DN")** license will be issued only for a nightclub, including hotel nightclub alcoholic beverages and food, which may provide music and dancing facilities for patrons and er requirements set out in the Act. Only nightclubs approved for nude performances before 1994 m performers. Fee ranges from $1,300 to $4,550.
- A **Class D Hotel ("DH")** license will be issued only for a hotel. Hotels must offer sleeping accom room in the same building for its guests, and have adequate kitchen equipment and employees. of license, hotel dining rooms must derive at least forty-five percent (45%) of their gross annual r serve alcoholic beverages for consumption in dining rooms, lounges, banquet halls, and other sh well as in the rooms of registered guests. However, any nightclub of a hotel's premises shall be l addition, hotels must meet all other requirements set out in the Act. Fee ranges from $1,300 to $



Alcoholic Beverage Regulation Administration: Class License Definitions



Page 3 of 4

- A Class D Multipurpose ("DX") license will be issued only for a legitimate theater, the Washington Convention Center, a passenger carrying marine vessel serving food or a club car or dining cars on a railroad. Fee ranges from $650 to $1,300 and for each additional vessel or dockside waiting area is $650.

............................................................. 🔺 Top

### Retailer's License Class F

The license authorizes the licensee to temporarily sell wine and beer to be consumed on the premises described on the application for the license, so long as food is also served. The beer or wine will be served in open containers. Application for this license shall be on forms prescribed by the Board, and its issuance shall be solely in the discretion of the Board and shall be on such other terms and conditions as the Board and shall be on such other terms and conditions as the Board may require. Fee is $130 per day.

............................................................. 🔺 Top

### Retailer's License Class G

The license authorizes the licensee to sell for consumption or to permit the consumption of spirits, wine, and beer for one (1) day only on the premises described in the application for the license, so long as food is also served. The beer or wine shall be served in open containers. Application for this license shall be on forms prescribed by the Board, and its issuance shall be solely in the discretion of the Board and shall be on such other terms and conditions as the Board and shall be on such other terms and conditions as the Board may require. Fee is $300 per day.

............................................................. 🔺 Top

### Club License

The license permits the consumption of alcoholic beverages on those parts of the club's premises as the Board may approve. For the purpose of this license, a "club" is defined as a corporation that is organized for the promotion of a common purpose (but not for a commercial or business purpose), is a membership organization and owns or leases all or a portion of a building. A club must elect its governing body annually and none of the club's officers or employees may profit from its operations, aside from compensation in the form of salary. The holder of this category of license may not sell alcoholic beverages to club members or their guests.

............................................................. 🔺 Top

### ABC Manager's License

A manager's license authorizes the licensee to manage a licensed business. Each manager must hold a valid Manager's license. The fees for a Manager's license can vary. The basic one year fee is $130, however, renewals will now be based on the licensee's birthdate, and as such can vary during this transition period. Please do not complete the amount of payment until you are advised of the amount.

............................................................. 🔺 Top

### ABC Solicitor's License

The license authorizes the licensee to sell any alcoholic beverage on behalf of a vendor whose name appears upon the license and whom the solicitor represents. If a solicitor represents more than one (1) vendor, a separate license is issued for each vendor whom the solicitor represents. Fee is $325.

............................................................. 🔺 Top

### Caterer's License

Authorizes a licensee to sell and serve alcohol at catered events as part of the licensee's processing, preparation and service of food products, and where the sales and service of alcoholic beverages is incidental to the food preparation and service provided by the caterer. The fee can range from $300 to $5,000 depending on the gross annual receipts of the catering business.

Government of the District of Columbia
Citywide Call Center : (202) 727-1000
TTY/TDD Directory

Telephone Directory by Topic | Agencies | DC
Council | Search | Elected Officials
Feedback | Translations | Accessibility |
Privacy & Security | Terms & Conditions

John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, DC 20004



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION
### Washington, D.C. 20001

_District of Columbia_
                          **Plaintiff**

vs.                           Civil Action No. _3182-07_

_Caribbean Cultural Center_          FILED _January 8, 2007_
_Hubert and Philogens_    **Defendant**

MAY 17 2007

**ORDER**   THE OFFICE OF
          JUDGE IN CHAMBERS

Upon consideration of the motion _for temporary restraining order_

filed by _government against alleged unlicensed public hall_

and after hearing argument on behalf of all parties concerned, it is, by the Court, this _17th_

day of _May_ , 20_07_ ,

ORDERED:

(1) That the motion be, and it is hereby,   ☐ GRANTED   ☒ DENIED _without prejudice_

(2) That _too many relevant factual disputes [about_
_prior citations and fines and apparent conflict_
_between DC's on-line information and statutes and_
_between ABC license (CN) and restaurant business_
_license] exist to permit fair resolution of motion._

_(3) Parties to attempt settlement and if none to apply for_
_resolution through Prel. Injunction hearing with more_
Copies to: _complete fact._

                    _Mary Ellen Abrecht_
                        **JUDGE**

_parker_

Form CV-561(Apr. 00)

Filed
D.C. Superior Court
07 Jul 17 P04:07
Clerk of Court

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

DISTRICT OF COLUMBIA,                              )
          Plaintiff,                               )
                             )
      v.                                          )
                             )
CARIBBEAN CULTURAL CENTER, LLC          )
D/B/A "LIME"                                     )    2007 CA 003182 (B)
                             )    Judge Melvin R. Wright
                             )    Next Event: Init. Scheduling
HUBERT L. PHILOGENE, PRESIDENT,         )    Conference – 08/10/07 @ 9:30
CARIBBEAN CULTURAL CENTER, LLC.         )
          Defendants.                              )

### ORDER

Upon consideration of defendants' Motion to Dismiss the complaint and the opposition of the plaintiff, it is this 17th day of July 2007,

ORDERED, that defendants' motion is hereby DENIED.

*Melvin R. Wright*

_____
Melvin R. Wright, Associate Judge

Copies:

J. Gordon Forester, Jr.
1914 Sunderland Place, N.W.
Washington, D.C. 20036

Ashley E. Wiggins
1912 Sunderland Place, N.W.
Washington, D.C. 20036

Robert A. DeBerardinis Jr.
Assistant Attorney General
441 4th Street, N.W.
Suite 450 North
Washington, D.C. 20001



GOVERNMENT OF THE DISTRICT OF COLUMBIA

*Exhibit H*

# ABC APPLICATION

### FOR OFFICIAL USE ONLY

| APPLICATION NUMBER: | LICENSE NUMBER: | CONTROL NUMBER: |
|---|---|---|
| 60969 | 78958 | |

☑ New  ☐ Transfer New Location  ☐ Transfer with/sale  ☐ Transfer without/sale  ☐ Stock Transfer

| Date Accepted: 4/4/2005 | Date Issued: | Hearing Date: |
|---|---|---|
| Fees Paid: $ 73.50  From 4/4/2005 To 9/30/2005 | | Accepted By: M.R. |
| License Period:  From 4/4/2005 To 9/30/200 | | Ward/ANC: |
| Premise: 1st and 2nd floor | Storage: 1st and 2nd floors | |
| Board Approval Date: | Board Member's Initials: → | |

### TO BE COMPLETED BY APPLICANT

1. Type of License:  ☐ Manufacturer  ☐ Wholesaler  ☑ Retailer

Class of License:

☐ A ___ Tasting Permit

☐ B

☐ C ☑ Restaurant __ Tavern __✓ Nightclub __ Hotel __ Club __ Multi Purpose Facility __ Common Carrier
   Number of Seating: 598   Number of Rooms: _____

☐ D __ Restaurant __ Tavern __ Nightclub __ Hotel __ Club __ Multi Purpose Facility __ Common Carrier
   Number of Seating: _____   Number of Rooms: _____

☐ Additional Request __ Summer Garden __ Sidewalk Café __ 404.2 __ 405.1 __ Brew Pub

| 2. Name of Applicant: | 3. Trade Name: |
|---|---|
| Caribbean Cultural Center LLC | Lime |

4. Type of Applicant:  ☐ Sole Proprietor  ☐ Corporation  ☐ Partnership  ☑ LLC  ☐ Other (PLLC, PA, PC)
List Sole Proprietor, Partners, General Partner(s), Managing Member(s), Corporate Officer(s) or Director(s)

| Name | Address | Title |
|---|---|---|
| Hubert Philogene | 1120 Tanley Rd Silver Spring MD 20904 | Manager |
| | | |
| | | |

# Alcoholic Beverage
# Regulation Administration



# Entertainment Endorsement
# Fact Sheet

Maria Delaney, Director

Alcoholic Beverage Control Board
Charles A. Burger, Chair
    Vera M. Abbott
    Peter B. Feather
    Eartha Isaac
    Albert C. Lauber
    Judy A. Moy
    Audrey E. Thompson

D.C. Law 15-187, the "Omnibus Alcoholic Beverage Amendment Act of 2004", created the entertainment endorsement to streamline the licensing process and make clear the Alcoholic Beverage Control Board's explicit approval of various aspects of a licensee's format. The following are selected highlights from the D.C. Official Code and the D.C. Municipal Regulations pertaining to the requirements of an entertainment endorsement:

- "Entertainment" is defined as live music or any other live performance by an actual person, including live bands, karaoke, comedy shows, poetry readings, and disc jockeys. The term "entertainment" does not include the operation of a jukebox, television, radio, or other prerecorded music, or nude performances. (D.C. Code § 25-101(21A))

- "Cover charge" is defined as a fee required by an establishment to be paid by patrons for admission that is not directly applied to the purchase of food or drink. (23 DCMR § 1002.1)

- Class C or D Restaurant or Hotel licensees must apply for and hold an entertainment endorsement to have entertainment, dancing, or charge a cover. (23 DCMR § 1000.1)

- Class C or D Tavern licensees must apply for and hold an entertainment endorsement to have entertainment, charge a cover, or have a dance area larger than 140 square feet. A tavern with a dance area less than or equal to 140 square feet does not need to apply for and hold an entertainment endorsement. (23 DCMR § 1000)

- *Please be advised that an entertainment endorsement will not permit you to provide any format of entertainment that has been prohibited by ABC Board Order or voluntary agreement.*

- Class C or D Nightclub licensees do not need to apply for and hold an entertainment endorsement to have entertainment, dancing, or charge a cover. (23 DCMR § 1000.3)

- The entertainment endorsement will be placed on the establishment's ABC license and will indicate the establishment's hours of operation and which type(s) of



DC ST § 25-203

§ 25-203. Transfer of functions of Alcoholic Beverage Control Division of the Department of Consumer and Regulatory Affairs.

DC ST § 25-203

District of Columbia Official Code 2001 Edition
Division V. Local Business Affairs

Title 25. Alcoholic Beverage Regulation (Refs & Annos)

Chapter 2. Alcoholic Beverage Regulation Administration.

### § 25-203. Transfer of functions of Alcoholic Beverage Control Division of the Department of Consumer and Regulatory Affairs.

All positions, property, records, and unexpended balances of appropriations, allocations, assessments, and other funds available or to be made available to the Alcoholic Beverage Control Division of the Department of Consumer and Regulatory Affairs relating to the duties and functions assigned herein are transferred to ABRA.

CREDIT(S)

(May 3, 2001, D.C. Law 13-298, § 101, 48 DCR 2959.)

HISTORICAL AND STATUTORY NOTES

D.C. Law 13-298 amended and enacted into law Title 25 of the District of Columbia Official Code.

Legislative History of Laws

For D.C. Law 13-298, see notes following § 25-101.

DC CODE § 25-203

Current through June 4, 2008

Copyright © 2008 By The District of Columbia. All Rights Reserved.
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

This site is provided by West.

THOMSON

WEST



DC ST § 25-202
### § 25-202. Establishment of the Alcoholic Beverage Regulation Administration.

DC ST § 25-202

District of Columbia Official Code 2001 Edition
Division V. Local Business Affairs

Title 25. Alcoholic Beverage Regulation (Refs & Annos)

Chapter 2. Alcoholic Beverage Regulation Administration.

§ 25-202. **Establishment of the Alcoholic Beverage Regulation Administration.**

There is established an **Alcoholic Beverage Regulation Administration ("ABRA") as an independent agency** of the District to provide **professional, technical, and administrative staff** assistance to the Board in the performance of its functions. ABRA shall carry out its functions under the supervision of the Board.

CREDIT(S)

(May 3, 2001, D.C. Law 13-298, § 101, 48 DCR 2959.)

HISTORICAL AND STATUTORY NOTES

D.C. Law 13-298 amended and enacted into law Title 25 of the District of Columbia Official Code.

Legislative History of Laws

For D.C. Law 13-298, see notes following § 25-101.

DC CODE § 25-202

Current through June 4, 2008

Copyright © 2008 By The District of Columbia. All Rights Reserved.
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

This site is provided by West.



DC ST § 25-830
§ 25-830. Civil penalties.

DC ST § 25-830

District of Columbia Official Code 2001 Edition
 Division V. Local Business Affairs

    Title 25. Alcoholic Beverage Regulation (Refs & Annos)

      Chapter 8. Enforcement, Infractions, and Penalties.

        Subchapter II. Revocation, Suspension, and Civil Penalties.

          **§ 25-830. Civil penalties.**


(a) Within 90 days after May 3, 2001, the Board shall submit proposed regulations setting forth a schedule of civil penalties ("schedule") for violations of this title to the Council for a 60-day period of review, including Saturdays, Sundays, holidays, and periods of Council recess. If the Council does not approve, in whole or in part, the proposed regulations by resolution with the 60-day review period, the regulations shall be deem disapproved. The schedule shall replace all civil penalties, except as expressly provided in this title.

(b) The schedule shall be prepared in accordance with the following provisions:

(1) The schedule shall contain 2 tiers that reflect the severity of the violation for which the penalty is imposed:

(A) The primary tier shall apply to more severe violations, including service to minors or violation of hours of sale or service of alcoholic beverages.

(B) The secondary tier shall apply to less severe violations, including the failure to post required signs.

(2) A subsequent violation in the same tier, whether a violation of the same provision or different one, shall be treated as a repeat violation for the purposes of imposing an increased penalty; provided, that all secondary tier infractions cited by ABRA Investigators or Metropolitan Police Department Officers, during a single investigation or inspection on a single day, shall be deemed to be one secondary tier violation for the purposes of determining repeat violations under this section.

(c)(1) For primary tier violations, the penalties shall be no less than the following:

(A) For the first violation, no less than $1,000;

(B) For the second violation within 2 years, no less than $2,000; and

(C) For the third violation within 3 years, no less than $4,000;

(2) A licensee who has been found in violation of no more than 3 secondary tier violations and who is subsequently found in violation of a primary tier violation shall be penalized according to a first

primary tier violation.

(3) A licensee found in violation of a primary tier offense for the fourth time within 4 years shall have the license revoked.

(d)(1) For secondary tier violations, the penalties shall be no less than the following:

(A) For the first violation, no less than $250.

(B) For the second violation within 2 years, no less than $500.

(C) For the third violation within 3 years, no less than $750.

(2) A licensee found in violation of a secondary tier violation for the fourth time within 4 years shall be penalized according to a first primary tier violation. Every subsequent secondary tier offense within 5 years of the first violation shall be fined according to the schedule for primary tier violations.

(e) The Board may specify violations for which a licensee may be given a warning before the issuance of a citation for a first violation.

(f) The Board or the Council may amend the schedule. An amendment by the Board shall be submitted to the Council for its approval in accordance with subsection (a) of this section.

(g) The schedule and any amendments to the schedule shall be published in the District of Columbia Register and promulgated by the procedure adopted under § 25-211(e).

(h) Penalties or fines assessed under this chapter shall be credited to the General Fund of the District of Columbia.

CREDIT(S)

(May 3, 2001, D.C. Law 13-298, § 101, 48 DCR 2959.)

HISTORICAL AND STATUTORY NOTES

D.C. Law 13-298 amended and enacted into law Title 25 of the District of Columbia Official Code.

Legislative History of Laws

For D.C. Law 13-298, see notes following § 25-101.

Resolutions

Resolution 15-340, the "Alcoholic Beverage Regulation Civil Penalty Schedule Regulations Approval Resolution of 2003", was approved effective December 2, 2003.

DC CODE § 25-830

Current through June 4, 2008

Copyright © 2008 By The District of Columbia. All Rights Reserved.
END OF DOCUMENT



DC ST § 25-801

§ 25-801. Authority of the Board to enforce this title; enforcement responsibilities of ABRA Investigators and Metropolitan Police Department.

DC ST § 25-801

District of Columbia Official Code 2001 Edition
Division V. Local Business Affairs

Title 25. Alcoholic Beverage Regulation (Refs & Annos)

Chapter 8. Enforcement, Infractions, and Penalties.

Subchapter I. Enforcement.

**§ 25-801. Authority of the Board to enforce this title; enforcement responsibilities of ABRA Investigators and Metropolitan Police Department.**

(a) The Board shall have the authority to enforce the provisions of this title with respect to licensees and with respect to any person not holding a license and selling alcohol in violation of the provisions of this title.

(b) Subject to subsection (c) of this section, ABRA investigators and the Metropolitan Police Department shall issue citations for civil violations of this title that are set forth in the schedule of civil penalties established under § 25-830.

(c) A citation for any violation for which the penalty includes the suspension of a license shall be issued under the direct authority of the Board as a result of an investigation carried out by ABRA investigators.

(d) Prosecutions for misdemeanors under this title shall be prosecuted and initiated by information filed in the Superior Court of the District of Columbia by the Corporation Counsel. Prosecutions for felonies under this title shall be prosecuted by the United States Attorney for the District of Columbia.

(e) Violations committed by an unlicensed person selling alcohol in violation of the provisions of this title shall be forwarded by the Board to the Corporation Counsel for prosecution.

(f) ABRA investigators may request and check the identification of a patron inside of or attempting to enter an establishment with an alcohol license. ABRA investigators may seize evidence that substantiates a violation under this title, which shall include seizing alcoholic beverages sold to minors and fake identification documents used by minors.

CREDIT(S)

(May 3, 2001, D.C. Law 13-298, § 101, 48 DCR 2959; Sept. 30, 2004, D.C. Law 15-187, § 101(dd), 51 DCR 6525.)

HISTORICAL AND STATUTORY NOTES

(b)     The fee for the second year shall be paid no later than one (1) year from the date of issuance of the license; however, a licensee may pay the second year fee at the time the first year fee is paid. The payment of the second year license fee shall not require the filing of a clean hands certificate by the applicant.

208.2     The Board may impose a late fee upon a licensee for failure to timely remit the second-year fee or the renewal fee, in the amount of fifty dollars ($50) for each day after the due date of payment. The total amount of the late fee to be paid to ABRA, however, shall not exceed the annual cost of the license. The Board may suspend a license until the licensee pays the second-year fee and any additional fee imposed by the Board for late payment. A licensee who has not renewed timely shall not be permitted to sell or serve alcoholic beverages with an expired license.

208.3     The Board may suspend a license, permit, or endorsement where payment was made by the applicant to ABRA with a check returned unpaid. The applicant, in addition to any late fees imposed by the Board pursuant to § 208.2, shall also be charged by ABRA with a one hundred dollar ($100) returned check fee.

208.4     The annual fees for a Manufacturer's license Class A shall be as follows:

| | | |
|---|---|---|
| (a) | Rectifying Plant | $6,000; |
| (b) | Distillery | $6,000; |
| (c) | Distillery selling more than fifty percent (50%) of alcohol for non-beverage purposes and | $3,000; |
| (d) | Winery | $1,500. |

208.5     The annual fee for a Manufacturer's license Class B (brewery) shall be five thousand dollars ($5,000).

208.6     The annual fee for a Wholesaler's license Class A shall be five thousand two hundred dollars ($5,200).

208.7     The annual fee for a Wholesaler's license Class B shall be two thousand six hundred dollars ($2,600).

208.8     The annual fee for a Retailer's license Class A shall be two thousand six hundred dollars ($2,600).

208.9    The annual fee for a Retailer's license Class B shall be one thousand three hundred dollars ($1,300).

208.10    The annual license fees for all Class C licenses, except the Washington Convention Center and the DC Arena, shall be based on the certificate of occupancy for the establishment and are as follows:

| Class | Capacity | Fee |
|---|---|---|
| CR restaurant | 99 or fewer | $1,000 |
| CR restaurant | 100 to 199 | $1,300 |
| CR restaurant | 200 to 499 | $1,950 |
| CR restaurant | 500 or more | $2,600 |
| CT tavern | 99 or fewer | $1,300 |
| CT tavern | 100 to 199 | $2,080 |
| CT tavern | 200 or more | $3,120 |
| CN nightclub | 99 or fewer | $1,950 |
| CN nightclub | 100 to 199 | $2,600 |
| CN nightclub | 200 to 499 | $3,250 |
| CN nightclub | ~~500 to 999~~ | ~~$4,550~~ |
| CN nightclub | 1,000 or more | $5,850 |
| CH hotel | 99 or fewer guest rooms | $2,600 |
| CH hotel | 100 or more guest rooms | $5,200 |
| CX club | | $1,950 |
| CX multipurpose facility | | $1,950 |
| CX marine vessel, single vessel | | $1,950 |
| CX marine vessel line, for 3 or fewer vessels and dockside waiting areas | | $3,250 |
| For each additional vessel or dockside waiting area | | $1,950 |
| CX railroad dining or club car, single car | | $650 |
| CX railroad company, all dining or club cars | | $1,950 |

208.11    The annual license fees for all Class D licenses, except the Washington Convention Center and the DC Arena, shall be based on the certificate of occupancy for the establishment and shall be as follows:

28

(e)    That the zoning of the premises to be licensed will allow the issuance of the license; and

(f)    That the applicant shall not engage in the sale or service of alcoholic beverages until a certificate of occupancy and all other business licenses have been issued for the business.

405.2    An application for a license under § 405.1 shall be made on forms prescribed by the Board and shall include the following information:

(a)    The street address of the establishment to be licensed or, in the case of new construction, the lot and square numbers of the ground upon which the establishment will be located; and

(b)    The date on which the applicant plans to open the establishment.

405.3    A license approved by the Board under § 405.1 shall not be issued until the premises have been finally inspected by the Board or its staff, or until the applicant provides to the Board the following:

(a)    A certificate of occupancy for the licensed premises;

(b)    Copies of all necessary business licenses for the premises;

(c)    Copies of all tax registration documents for the business; and

(d)    Copies of an executed lease or deed for the licensed premises, provided, however, that the business terms of the lease including the rent may be redacted by the applicant.

405.4    Applicants for licensure under § 405.1 shall pay the appropriate license fee, as set forth in § 208 of this title, and approval by the Board shall remain effective until the end of the appropriate licensure period set out in § 207 of this title. If the applicant has not opened his or her business by the time the licensure period ends, the Board may, in its discretion, extend its approval through such further period as it deems proper upon payment by the applicant of all or any portion of the license renewal fee.

SOURCE:  Final Rulemaking published at 51 DCR 4309, 4345-4346 (April 30, 2004).

# CHAPTER 7    GENERAL OPERATING REQUIREMENTS

Section
700    Instructions to Licensees
701    Posting of Legal Drinking Age and Identification Requirement
702    Use of Class CX and DX Clubs by Non-Members
703    Temporary Operating Retail Permit
704    Surrender of License
705    Hours of Sale and Delivery for Off-Premises Retail Licensees
706    Locking of Beverages During Non-Sale Hours
707    Manager's License
708    Disposal of Remaining Alcoholic Beverages
709    Notice of Employee's Criminal Conviction
710    Minimum Charge
711    Permits for Sampling Alcoholic Beverages
712    Pub Crawls
713    Street Festivals
714    Outdoor Events on Public Space
715    Outdoor Events on Private Space
716    One Day Substantial Changes
717    Corking Fee

700    **INSTRUCTIONS TO LICENSEES**

700.1    The Board shall develop and furnish to licensees, at the time of issuance of a license, written information describing the laws and rules applicable to the licensee's day-to-day operations.

700.2    Applications shall also be made available on the ABRA website. To the extent possible, applications shall be posted on the ABRA website in various languages for informational purposes. Applications submitted to the Board must be filled out in English.

AUTHORITY: Unless otherwise noted, the authority for this chapter is section 101 of D.C. Law 13-298, the "Title 25, D.C. Code Enactment and Related Amendments Act of 2001," codified at D.C. Official Code § 25-211 (2001), and Mayor's Order 2001-96, dated June 28, 2001 and Mayor's Order 2001-102. dated July 23, 2001.

SOURCE: Final Rulemaking published at 51 DCR 4309, 4349-4350 (April 30, 2004).

EDITOR'S NOTE: Pursuant to Mayor's Order 2001-96, dated June 28, 2001, "[t]he Alcoholic Beverage Control Administration [was] delegated the authority vested in the Mayor under D.C. Code § 25-211 of the ABC Act to promulgate rules to implement the provisions of the ABC Act."

SOURCE: Final Rulemaking published at 51 DCR 4309, 4354 (April 30, 2004).

### 709    NOTICE OF EMPLOYEE'S CRIMINAL CONVICTION

709.1    Each licensee shall immediately notify the Board in writing if the licensee discovers that any employee who sells, gives, furnishes, or distributes any alcoholic beverage has at any time prior to or during his or her employment been arrested or convicted for other than minor traffic violations. For purposes of this section, "immediately" shall mean notifying the Board within seven (7) days of discovering the criminal conviction.

SOURCE: Final Rulemaking published at 51 DCR 4309, 4354 (April 30, 2004).

### 710    MINIMUM CHARGE

710.1    As used in this section, the phrase "minimum charge" means a price or fee imposed by a licensee on a patron or individual for food and/or beverages, either at the point of entrance to an establishment or at the point of service of food and/or beverages within the establishment.

710.2    The minimum charge must be equal in value to the price the patron would pay for the food and or beverage(s) inside.

710.3    A minimum charge shall not be considered a cover charge and may be charged by an establishment without Board approval or an entertainment endorsement unless restricted by Board order or voluntary agreement.

710.4    Any holder of a Retailer's license Class C or D, who makes a permitted minimum charge for either food or a beverage, shall, during the hours when the minimum charge is made, keep posted in a conspicuous place at each public entrance to the room or place where the minimum charge is made a sign stating that a minimum charge is made, the amount of the minimum charge, and whether the minimum charge shall be applied to food and/or beverage(s).

710.5    The sign required by § 710.4 shall be not less than one square foot in area with lettering not less than one inch (1 in.) in height, and the letters shall be easily legible.

SOURCE: Final Rulemaking published at 51 DCR 4309, 4354 (April 30, 2004).

District of Columbia Municipal Regulations

**805**        **WARNINGS**

805.1      An ABRA investigator or MPD Officer is not precluded from issuing a warning before the issuance of a citation for a first violation as permitted by § 800 of this title.

SOURCE: Final Rulemaking published at 51 DCR 4309, 4362 (April 30, 2004).

**806**        **CITATION APPEALS**

806.1      A licensee may challenge the issuance of a citation issued by an ABRA Investigator or MPD Officer by requesting in writing a show cause hearing before the Board. The written request for a show cause hearing must be received by ABRA within thirty (30) days from the date that the citation was issued to the establishment.

| | | | |
|---|---|---|---|
| 25-761 | Structural requirements | Secondary | Y |
| 25-762 | Substantial change approvals | Secondary | Y |
| 25-762(b)(1) | - increase occupancy or the use of interior space | Primary | N |
| 25-762(b)(2) | - expand exterior public or private space including summer gardens or sidewalk cafes | Primary | N |
| 25-762(b)(3) | - expand to another floor, roof, deck | Secondary | Y |
| 25-762(b)(4) | - Provide for or expand entertainment area | Secondary | Y |
| 25-762(b)(5) | - Diminish or expand dining or food prep area | Secondary | Y |
| 25-762(b)(6) | - Provide permanent space for dancing | Secondary | Y |
| 25-762(b)(7) | - Change exterior design | Secondary | Y |
| 25-762(b)(8) | - Provide music or entertainment if none previously. | Secondary | Y |
| 25-762(b)(9) | - Change from recorded to live music or live entertainment or change the kind of music or entertainment provided | Primary | N |
| 25-762 (b)(10) | - Change entertainment to include nude performance | Secondary | Y |
| 25-762(b)(11) | - Change from full-menu to snack menu | Secondary | Y |
| 25-762(b)(12) | - Change on premises to carry-out, add carry out | Primary | Y |
| 25-762(b)(13) | - Extend hours of operation | Secondary | Y |
| 25-762(b)(14) | - Provide new mechanical/electronic entertainment | Secondary | Y |
| 25-762(b)(15) | - Change trade name/corp name w/ ownership change | Secondary | Y |
| 25-762(b)(16) | - Change booth size | Secondary | Y |
| 25-762(b)(17) | - Reduce number of toilet facilities | Primary | N |
| 25-762(b)(18) | - Increase number of vessels under on-premises | Secondary | Y |
| 25-763 | Signage | Secondary | Y |
| 25-764 | Advertisements | Secondary | Y |
| 25-765 | Advertisements on windows and doors | Secondary | Y |
| 25-766 | Prohibited statements | Secondary | Y |
| 25-771 | Reporting | Primary | N |
| 25-772 | Unlawful importation | Primary | N |
| 25-781 | Sale to minors | Primary | Y |
| 25-782(a) | Class A allow under 18 to enter between 8am-3pm | Secondary | Y |
| 25-782(d) | Deny admittance to someone of legal drinking age | Primary | N |
| 25-783(a) | Sale to someone who fails to produce a valid ID | Primary | N |
| 25-783(b) | Take reasonable steps to ascertain of legal age | Secondary | Y |
| 25-784(a) | Prohibit any person under 21 from sell, give, furnish or distribute, except as provided in 784b | Secondary | Y |
| 25-784(b) | 18-20 may sell, serve or deliver, but not bartend | Primary | N |
| 23 DCMR | Knowingly false or misleading affidavit | | |

Title 23

**District of Columbia Municipal Regulations**

## CHAPTER 8   ENFORCEMENT, INFRACTIONS, AND PENALTIES

Section
800       ABRA Civil Penalty Schedule
801       Primary Tier Violations
802       Secondary Tier Violations
803       Citations for Primary Tier Violations
804       Citations for Secondary Tier Violations
805       Warnings
806       Citation Appeals

**800       ABRA CIVIL PENALTY SCHEDULE**

| Section | Description | Violation | Warning |
|---|---|---|---|
| 25-112(e) | Failure to file a statement of expenditures | Secondary | Y |
| 25-113(b) | Failure to file a quarterly report | Secondary | Y |
| 25-405 | Transfer of Ownership without Board approval | Primary | N |
| 25-701 | No ABC Manager on duty | Secondary | Y |
| 25-702 | Owner knows, does not report employee's criminal conviction | Primary | Y |
| 25-711 | Posting and carrying of licenses | Secondary | Y |
| 25-712 | Signs: Warning re: pregnancy | Secondary | Y |
| 25-713 | Signs: legal drinking age/valid ID | Secondary | Y |
| 25-721 | Hours of Sale & Delivery- manufacturer & wholesaler | Primary | N |
| 25-722 | Hours of Sale & Delivery – off premises | Primary | N |
| 25-723 | Hours of Sale & Delivery – on-premises | Primary | N |
| 25-724 | Restriction of hours of operation | Primary | N |
| 25-725 | Noise | Secondary | Y |
| 25-726 | Control of litter, trash, garbage, and proper disposal of refuse, including cooking oils | Secondary | Y |
| 25-731 | Credit and delinquency | Secondary | Y |
| 25-732 | Payment plan for extenuating circumstances | Secondary | Y |
| 25-733 | Delivery and payment records and reports | Secondary | Y |
| 25-734 | Sale by retailer on credit | Primary | Y |
| 25-735 | Gifts and loans from manufacturer | Primary | Y |
| 25-736 | Gifts and loans from wholesaler | Primary | Y |
| 25-741(a) | A & B licensees provide go-cups | Secondary | Y |
| 25-741(b) | Back-up drinks | Secondary | Y |
| 25-742 | Solicitation of drinks by employee | Secondary | Y |
| 25-743 | Tie-in purchases | Primary | Y |
| 25-751 | Limitations on Container Size | Secondary | Y |
| 25-752 | Containers to be labeled | Secondary | Y |
| 25-753 | Keg Registration | Primary | N |
| 25-754 | Restrictions on storage of beverages | Primary | Y |

District of Columbia Municipal Regulations

Title 23

| 208.19 | submission | Primary | N |
|---|---|---|---|
| 23 DCMR 712 | Participation in a pub crawl without Board approval or in a manner other than as approved by the Board | Primary | N |
| 23 DCMR 2000.1 | The selling, delivering, or serving of alcoholic beverages at a catered event where snack items are the only food products served by the Caterer | Primary | N |
| 23 DCMR 2102 | Failure to maintain or keep records or invoices | Primary | N |

**AUTHORITY:** Unless otherwise noted, the authority for this chapter is section 101 of D.C. Law 13–298, the "Title 25, D.C. Code Enactment and Related Amendments Act of 2001," codified at D.C. Official Code § 25-211 (2001), and Mayor's Order 2001-96, dated June 28, 2001 and Mayor's Order 2001-102, dated July 23, 2001.

**SOURCE:** Final Rulemaking published at 51 DCR 4309, 4359-4361 (April 30, 2004).

**EDITOR'S NOTE:** Pursuant to Mayor's Order 2001-96, dated June 28, 2001, "[t]he Alcoholic Beverage Control Administration [was] delegated the authority vested in the Mayor under D.C. Code § 25-211 of the ABC Act to promulgate rules to implement the provisions of the ABC Act."

## 801          PRIMARY TIER VIOLATIONS

801.1      The Board may fine a licensee for a primary tier violation at a show cause hearing scheduled pursuant to the notice requirements set forth in § 1604 as follows:

(A)   For the first primary tier violation, the fine shall be $1000-$2000.

(B)   For the second primary tier violation within 2 years, the fine shall be $2,000-$4,000.

(C)   For the third primary tier violation in three years, the fine shall be $4,000-$6,000.

(D)   For the fourth primary tier violation in four years, the ABC license shall be revoked.

**SOURCE:** Final Rulemaking published at 51 DCR 4309, 4361 (April 30, 2004).

## 802          SECONDARY TIER VIOLATIONS

802.1      The Board may fine a licensee for a secondary tier violation at a show cause hearing scheduled pursuant to the notice requirements set forth in § 1604 as follows:

(A)   For the first secondary tier violation, $250-$500.

(B)   For the second secondary tier violation within two years, $500-$750.

Title 23                                        **District of Columbia Municipal Regulations**

    (C)    For the third secondary tier violation within three years, $750-$1,000.

    (D)    A licensee found in violation of a secondary tier violation for the fourth time within 4 years shall be penalized according to a first primary tier violation ($1,000-2,000). Every subsequent secondary tier offense within 5 years of the first violation shall be fined according to the schedule for primary tier violations.

SOURCE: Final Rulemaking published at 51 DCR 4309, 4361 (April 30, 2004).

803       **CITATIONS FOR PRIMARY TIER VIOLATIONS**

803.1    ABRA investigators or Metropolitan Police Department Officers ("MPD Officer") shall issue citations, pursuant to D.C. Official Code § 25-801(b), for primary tier violations as follows:

    (A)    For the first primary tier violation, the fine shall be $1000.

    (B)    For the second primary tier violation within 2 years, the fine shall be $2,000.

    (C)    For the third primary tier violation in three years, the fine shall be $4,000.

    (D)    For the fourth primary tier violation in four years, the violation shall be referred to the Board for a show cause hearing pursuant to § 1604.

SOURCE: Final Rulemaking published at 51 DCR 4309, 4361 (April 30, 2004).

804       **CITATIONS FOR SECONDARY TIER VIOLATIONS**

804.1    ABRA investigators or MPD Officers shall issue citations, pursuant to D.C. Official Code § 25-801(b), for secondary tier violations as follows:

    (A)    For the first secondary tier violation, the fine shall be $250.

    (B)    For the second secondary tier violation within two years, the fine shall be $500.

    (C)    For the third secondary tier violation within three years, the fine shall be $750.

    (D)    For the fourth secondary tier violation within four years, the fine shall be $1,000. Every subsequent secondary tier offense within five years of the first shall be fined according to the schedule for primary tier violation citations set forth in § 803 of this title.

SOURCE: Final Rulemaking published at 51 DCR 4309, 4361-4362 (April 30, 2004).

EXHIBIT H

# THE DISTRICT OF COLUMBIA
## ALCOHOLIC BEVERAGE CONTROL BOARD

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| District of Columbia | ) |
| | ) License Class "CN-04". |
| v. | ) License No. 72458 |
| | ) |
| Caribbean Cultural Center, LLC | ) |
| Ja Lime | ) |
| | ) |

### MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY

COMES NOW your respondent, Hubert Philogene, member and manager of Caribbean Cultural Center, LLC, (the "Licensee"), through counsel, and moves the Alcoholic Beverage Control Board ("Board") to dismiss, or in the alternative, stay Charges I, II, and III[1] of the show cause notice issued by the Board for the reasons set forth below.

### SUMMARY

This Board does not have jurisdiction to consider the validity of and/or the provisions of the Operating Agreement executed on February 24, 2007. Additionally, until such time as a court of competent jurisdiction determines that the Operating Agreement is valid and the alleged transfer of membership interests claimed to be set forth therein are valid an enforceable, Charge's I, II, and III against the respondents should not be considered by the Board.

The Board has charged the respondents, *inter alia,* with:

1.    **Charge I:**    Change in ownership interest of the Licensee by 50% or more

without seeking prior Board approval in violation of D.C. Code

---

[1] The show cause notice also includes two other charges, IV and V.  This Motion does not address those charges.

§25-405 (2001);

2. **Charge II:**   Failure to adhere to the filing requirements set out in D.C. Code §25-405 (2001), in violation of DCMR Title 23 §601.8; and

3. **Charge III:**   Failure to timely submit documentation to the Board reflecting a change of more than 25% of controlling interest of the License.

Each of these three charges (collectively referred to as "Charges") are based upon the Operating Agreement, a contract between the parties, and the alleged transfers of membership interests in the Licensee pursuant to its terms. These Charges hinge on the validity of the Operating Agreement and the membership interest allegedly transferred through it provisions[2]. Respondent Philogene's position is that the Operating Agreement and the alleged transfers are not valid and that a court of competent jurisdiction must make such a determination before this Board can consider and make any finding as to whether the Charges have occurred[3]. If the Operating Agreement and transfers are determined by the court not to be valid and/or enforceable, then these charges must fail and be dismissed. Therefore, these Charges should be dismissed or, in the alternative, stayed until such time as a court makes such a determination.

The Charges were brought by the Board as a result of a July 27, 2006 letter ("Request")

---

[2] See Specification A to Charge I which is incorporated as the basis for each of the Charges. "On February 27, 2006, an Operating Agreement ("Agreement") was entered into by the managing members Hubert Philogene, Phillip Allen, and George Garnier which changed the percentages of ownership or controlling interest in the Caribbean Cultural Center, LLC ("CCC") for each member. Specifically, the Agreement called for Hubert Philogene, Phillip Allen, and George Garnier to all become 33.3% interest holders in CCC."

[3] Mr. Garnier and Mr. Allen turned to this venue asking the Board to enforce their alleged rights under the Operating Agreement instead of turning to the court which would have proper jurisdiction over the rights of the parties. This Board does not have jurisdiction to enforce any contract between the parties or to make any determinations of fraud or misrepresentation between the members, as alleged in their July 27, 2006 letter to the Board requesting an emergency hearing. Mr. Philogene believes that the other members did not seek resolution in the proper venue in order to gain additional leverage for a monetary buyout of any alleged membership interest they believe have by having as the alternative action requested of this Board be that of revoking the Licensee's ABRA license.

from Mr. George Garnier and Mr. Phillip Allen requesting an emergency hearing by this Board to mandate that Mr. Philogene abide by the terms of the Operating Agreement or, in the alternative, revoke the Licencee's ABRA license. Specifically, Mr. Garnier and Mr. Allen asked this Board to enforce certain membership and managerial rights they believe they have under the provisions of the Operating Agreement[4]. Based on the allegations made in the Request, including the validity of the Operating Agreement, the Board and the District of Columbia issued a show cause notice to the respondents for a hearing on the Charges. This Board does not have jurisdiction to determine the validity of the Operating Agreement, including the transfer of any membership interest therefrom, or any other matter between the parties. This is a membership dispute as to the contractual rights and obligations of the alleged members. The Board's reliance on the questioned Operating Agreement should not be before this Board or occur until such time as a court of competent jurisdiction determines there actually was a valid transfer of interest to warrant the Board's Charges. Only if and until the court determines that a transfer did, in fact, occur should the Board entertain the merits of these Charges.

As discussed below, Mr. Philogene also asserts that numerous misrepresentations and/or incomplete representations are made in the July 27, 2006 Request.

### ARGUMENT

In the request, Mr. Garnier and Mr. Allen claim that the Operating Agreement is valid and in effect and that Mr. Philogene has performed illegal actions including filing a false statement on the ABRA application for a liquor license and fraudulent and/or negligent misrepresentations to Mr. Allen and Mr. Garnier. They further provide a list of his alleged unlawful actions: "(1)

---

[4] In their July 27, 2006 letter to the Board, Mr. Garnier and Mr. Allen also make claims that Mr. Philogene made fraudulent and negligent misrepresentations to them. There is no doubt that these claims are not proper to be determined by this Board.

changing the locks at the establishment to prevent entry by the Majority members; (2) cancelling

a scheduled event so that as to breach a valid contract between a third party and the Majority

Members; (3) making a false report to the Metropolitan Police Department; (4) making a false

statement to the Department of Consumer and Regulatory Affairs (DCRA) and the Board; (5)

making a false representation to the Majority Members concerning the existence of material

information required on the liquor license application; and (6) entering into contracts with third

parties without authorization to do so." None of the alleged unlawful actions are properly before

this Board with the exception of the alleged false statement on the ABRA application. Mr.

Philogene has claims against Mr. Garnier and Mr. Allen, however he acknowledges that these

claims are between himself and Mr. Allen and Mr. Garnier and must be brought in a court of

competent jurisdiction. Therefore, such claims are not addressed herein as they are not proper to

bring before this Board.

1.    It is Not Just and Proper for This Board to Require Mr. Phiogene to Abide by the
      Company's Operating Agreement or Even to Determine its Validity and/or Enforce its
      Provisions.

      As discussed in the Summary above and fully incorporated herein, this Board is without

jurisdiction to determine the validity of the Operating Agreement, much less enforce its

provisions.

2.    Mr. Philogene Did Not Make a False Statement on the Liquor License Application or on
      any Filing with DCRA.

      Mr. Garnier and Mr. Allen claim in their Request that Mr. Philogene made a false

statement on the liquor license application that he was the only member of the Company. They

go on to cite D.C. Code §25-401(c) as the basis of this alleged wronging. However, D.C. Code

§25-401(c) states in pertinent part that "*all* of the members of a limited liability company...shall

sign a notarized statement certifying that the application is complete and accurate. Any person who knowingly makes a false statement under oath that the Mayor or Board may require, shall be guilty of the offense of making false statements..." Mr. Allen and Mr. Garnier acknowledge that Mr. Philogene did not sign any such document that contained a false statement. See Request, Page 7 ("In fact, the document in question, which is contained in the Board's file, is unexecuted."). As such, Mr. Philogene could not have made a false statement under D.C. Code §25-401(c) as alleged by the other parties.

Mr. Allen and Mr. Garnier further claim that Mr. Philogene made a "false and fraudulent filing" in the "Two-Year Report for Foreign and Domestic Limited Liability Companies" which was filed with DCRA. They mistakenly state that this report was filed on July 29, 2005, however the report was filed on June 28, 2005 as evidenced by the "Filed" notation on the report itself. See Request, Exhibit 5. In this report, the current managers of the LLC must be listed. Mr. Garnier does not claim that he was improperly listed. Mr. Allen was not a manager, or even a member, of the Company as of the date of this filing. Even as allegedly evidenced by their own Exhibits to their Request, Mr. Allen did not become a member or manager of the Company until the February 24, 2006 meeting of the members as set forth in Exhibit 2 to their Response.

## CONCLUSION

Based on the foregoing, Charge I, II, and II should be dismissed, or in the alternative, stayed because this Board does not have jurisdiction to consider and/or rely on the provisions of the Operating Agreement between the parties until such time as a court of competent jurisdiction determines the validity of the July 24, 2007 Operating Agreement and its provisions.

RESPECTFULLY SUBMITTED,

Ashley E. Wiggins, D.C. Bar No. 481557
Griffin & Murphy, LLP
1912 Sunderland Place NW
Washington, DC 20036
Telephone: 202-429-9000
*Attorney for Respondent Philogene*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2006 a copy of the foregoing document was served by hand to:

Alcoholic Beverage Control Board      Tasha Hardy, Esquire
941 N. Capitol Street NE, 7th Floor      441 4th ST NW, Suite 450 North
Washington, DC 20002                         Washington, DC 20001

with a courtesy copy to:

Andrea M. Bagwell, Esquire
1010 Vermont Avenue NW
Washington, DC 20005

Ashley E. Wiggins

**CLUB ZONE OVERTIME**

**MEETING AGENDA**

**9-18-06**

Exhibit I

1. Welcome to All

2. Introduction of SOD

3. Introduction of ABRA-Mrs. Maria Delaney

4. Introduction of Club Owners

5. Overview of the Reimbursable Overtime Order

6. Reimbursable Fee Form- 30 days in Advance – Fee is also due at this time. To ensure officers are paid accordingly. **Officer Marsha Thompson**

7. Need for Officers-District Commanders Discretion

8. Minimum of Two Officers-will be adjusted according to demand/incidents

9. Hours of Each Detail

10. Documentation of ABRA Violations

11. Comments

12. Conclusions

202 727 4284    Special Operations Divisi    SOD 202-727-4284    11:39:32   01-25-2007   3/3

# Metropolitan Police Department
Special Operations Division
2301 E Street, NW
Washington, DC 20037
Phone: 202 671-6522/Fax 202: 727-6839

Lime Club
1800 Half Street SW
Washington, DC

**INVOICE**
**STATEMENT FOR POLICE SERVICES RENDERED**
Date: 11/23/06
Federal Tax ID # 51-6001131
Prepared by: M. Thompson
Date Received:11/22/06

TACIS Code: _____

Issued On:_____

Event:    **Lime Club**

Location:   1800 Half Street SW

Reimbursable Detailed Handled By:    **First District  / Lt. Charnette Robinson**
Date & Time Notified                 **Nov. 22, 2006 / 1100 hrs**

Event Organizer Advised of Estimated
Cost of Police Services (Name/Date):    **Mr. Hubert Philegene / Nov. 22, 2006**

| DATE | PERSONNEL | TIMES | # OF HOURS | TOTAL HOURS | |
|------|-----------|-------|------------|-------------|---|
| Dec. 14, 2006 | 3 | 2300-0300 | 4 | 12 | ✓ |
| Dec. 16, 2006 | 4 | 2300-0400 | 5 | 20 | |
| Dec. 17, 2006 | 3 | 2300-0400 | 5 | 15 | |
| Dec. 21, 2006 | 3 | 2300-0300 | 4 | 12 | ✓ |
| Dec. 23, 2006 | 4 | 2300-0400 | 5 | 20 | |
| Dec. 24, 2006 | 3 | 2300-0400 | 5 | 15 | |

|  |  |
|--|--|
| **$55.71 PER HOUR** | |
| SUBTOTAL HOURS | 235 |
| SUB GRAND TOTAL FOR EVENT | 13,091.85 |
| GRAND TOTAL FOR EVENT | 11,699.10 |
| 80% OF THE GRAND TOTAL DUE IMMEDIATELY | 9,359.28 |
| REMAINDER BALANCE DUE AFTER THE EVENT | 2,339.82 |



**CARIBBEAN CULTURAL CENTER,. LLC**
**DBA LIME**
1824 HALF STREET S. W.
WASHINGTON, DC 20024

1824
65-320/550
BRANCH 0430

Date _____

Pay to the
Order of _____ DC Treasury _____                    $ 9,359.28

One Thousand Three Hundred fifty nine 28/100 _____ Dollars

**WACHOVIA**
Wachovia Bank, N.A.
wachovia.com

DON'T WORRY BE HAPPY

Police Detail Nov 23 - Dec 24

⑈005 1824⑈ ⑆055003201⑆ 20000 26950433⑈

**Metropolitan Police Department**
Special Operations Division
2301 L Street, NW
Washington, DC 20037
Phone: 202 671-6522/Fax 202: 727-6839

Lime Club
1800 Half Street SW
Washington, DC

**INVOICE**
STATEMENT FOR POLICE SERVICES RENDERED
Date: 09/20/06
Federal Tax ID# 51-6001131
Prepared by: M. Thompson
Date Received:09/20/06

TACIS Code: _____

Issued On:_____

Event:     **Lime Club**

Location:   1800 Half Street SW

Reimbursable Detailed Handled By:
Date & Time Notified

First District  / Lt. Charnette Robinson
Sept. 20, 2006 / 1000 hrs

Event Organizer Advised of Estimated
Cost of Police Services (Name/Date):     Mr. Hubert Philegene / September 20, 2006

| DATE | PERSONNEL | TIMES | #OF HOURS | TOTAL HOURS |
|------|-----------|-------|-----------|-------------|
| Oct. 14, 2004 | 3 | 2300–0400 | 5 | 15 |
| Oct. 15, 2006 | 4 | 2300–0400 | 5 | 20 |
| Oct. 19, 2006 | 4 | 2300–0400 | 5 | 20 |
| Oct. 21, 2006 | 3 | 2300–0400 | 5 | 15 |
| Oct. 22, 2006 | 4 | 2300–0400 | 5 | 20 |
| Oct. 26, 2006 | 4 | 2300–0400 | 5 | 20 |
| Oct. 28, 2006 | 3 | 2300–0400 | 5 | 15 |
| Oct. 29, 2006 | 4 | 2300–0400 | 5 | 20 |

| $55.71 PER HOUR HOURS | GRAND TOTAL | 390 |
|---|---|---|
| GRAND TOTAL FOR EVENT | | 21,726.90 |
| 80% OF THE GRAND TOTAL DUE IMMEDIATELY | | 17,381.52 |
| + 619.76 OWED FROM SEPT. 3,2006 GRAND TOTAL DUE IMMEDIATELY | | 18,001.28 |
| REMAINDER BALANCE DUE AFTER THE EVENT | | 4,345.38 |

APPROVED   Yes    No    Commander, SOD _____   Date _____

APPROVED   Yes    No    Assistant Chief of Police, OSS _____   Date _____

APPROVED   Yes    No    Exec. Asst. Chief of Police, Operational Services Group _____   Date _____

ATTENTION         Cluster Controller, Public Safety and Justice _____   Date _____

**PLEASE MAKE CHECKS PAYABLE TO:  D.C. TREASURER**

202 727 6839    T-482  P.001/002  F-301

Sep-01-2005  05:11pm  From-SOD SPECIAL EVENTS

*EXibit I*



Special Operations Division
Special Events Branch

METROPOLITAN POLICE

Commander
Cathy Lanier
Office 202-671-6522
Fax   202-727-6839

*973-906-8016*

*Thomson*

## Facsimile Transmission Cover Sheet

DATE: *12/1/05*

TO: *LEVI or Herbert*

Fax Number: *202-479-4171*

FROM: SOD Special Events Planning Unit

Reference: *Limn Club*

Number of pages including cover sheet: *2*

If you do not receive all pages, please call 202-671-6522

Comments:

3301 Street, NW, Washington, DC 20007  •  (202) 671-6522  •  Fax: (202) 727-6839

Jan-10-2006  07:48pm  From-SOD SPECIAL EVENTS

**Special Operations Division**
**Special Events Branch**



**METROPOLITAN POLICE**

Commander
Cathy Lanier
Office 202-671-6522
Fax    202-727-6839

*Exhibit I*

## Facsimile Transmission Cover Sheet

DATE: _1-10-06_

TO: _Lima Club_

Fax Number: _479-4171_

FROM:  SOD Special Events Planning Unit

Reference: _INVOICES_

Number of pages including cover sheet: _4_

If you do not receive all pages, please call 202-671-6522

Comments:

300 I Street, NW, Washington, DC 20037  •  (202) 671-653.  •  Fax: (202) 727-6839

*Exhibit H*

# THE DISTRICT OF COLUMBIA
## ALCOHOLIC BEVERAGE CONTROL BOARD

| | |
|---|---|
| **In the Matter of:** ) | |
| ) | |
| Caribbean Cultural Center, LLC ) | |
| t/a Lime ) | License No.   72458 |
| ) | Case No.   7920, 8122-07/004C |
| Holder of a Retailer's ) | Order No.   2008-099 |
| Class CN License ) | |
| at premises ) | |
| 1824 Half Street, S.W. ) | |
| Washington, D.C. 20020 ) | |
| ) | |

**BEFORE:**   Peter B. Feather, Chairperson
Judy A. Moy, Member
Albert G. Lauber, Member
Mital M. Gandhi, Member[1]

**ALSO PRESENT:**   Ashley E. Wiggins, Esquire, on behalf of the Respondent, Hubert
Philogene

Andrea Bagwell, Esquire, on behalf of the Respondents, George
Garnier and Phillip Allen

Tasha Hardy, Esquire, Assistant Attorney General, on behalf of the
District of Columbia

Fred P. Moosally, III, Esquire, General Counsel
Alcoholic Beverage Regulation Administration

## FINDINGS OF FACT, CONCLUSIONS OF LAW,
## AND ORDER

On April 4, 2007, the Government served a Notice to Show Cause on Caribbean
Cultural Center, LLC t/a Lime (Respondent) at premises 1824 Half Street, S.W.,
Washington, D.C., charging the Respondent with several violations. Specifically, the
Notice to Show Cause, dated April 4, 2007 alleges in Charge I, Specification A, that the
Respondent changed the stock ownership or partnership interest of Caribbean Cultural

---

[1] ABC Board Member Mital M. Gandhi was not present at the July 18, 2007 or the August 7, 2007 hearings
but he read the transcripts from these two hearing dates.

1

Center, LLC by 50% or more, within any 12 month period, without seeking prior approval from the Alcoholic Beverage Control Board (Board) in violation of D.C. Official Code § 25-405 (2001). The Notice to Show Cause alleges in Charge II, Specification A that the Respondent failed to adhere to the filing requirements set out in D.C. Official Code § 25-405 (2001). Additionally, the Notice to Show Cause alleges in Charge III, Specification A, that the Respondent failed to submit to the Board in a timely manner, but no later than 15 calendar days after the change had occurred, documentation reflecting a change in controlling 25% or more of common stock of a corporate license, or of the partnership interest of a limited partnership licensee in violation of D.C.M.R. § 601.8. Under Charge IV, Specification A of the Notice to Show Cause, the Respondent is alleged to have, without seeking prior approval from the Board, extended the hours of its operation in violation of D.C. Official Code § 25-762 (b) (13) (2001). Lastly, under Charge V, Specification A, the Respondent sold, served or permitted the consumption of alcoholic beverages beyond the permitted hours of sale and service for on-premises retail licensees, in violation of D.C. Official Code § 23-723 (b) (3) (2001). The dates of the alleged violations are February 24, 2006, and October 29, 2006.

The case came before the Board for Show Cause hearings on July 18, 2007, and August 7, 2007 in accordance with D.C. Official Code § 25-601 (2001). The Board, having considered the evidence, the testimony of the witnesses, the arguments of counsel, and the documents comprising the Board's official file, makes the following:

## FINDINGS OF FACT

1. The Board issued the Notice to Show Cause, dated April 4, 2007 to the Respondent. (See Show Cause Case File No. 7920, 8122-07/004C.) The Respondent holds a Retailer's Class "CN" License and is located at 1824 Half Street S.W. (See ABRA Licensing File No. 72458.) The establishment's approved hours of operation are from 10:00 a.m. to 2:00 a.m. on Sunday through Thursday and from 10:00 a.m. to 3:00 a.m. on Friday and Saturday. (See ABRA Licensing File No. 72458; Tr. 8/7/07 at 112-113.)

2. The Board held hearings in this matter on July 18, 2007 and August 7, 2007. The Notice to Show Cause charges the Respondent with: (1) changing the stock ownership or partnership interest of Caribbean Culture Center, LLC by 50 % or more, within any 12 month period, without seeking prior approval from the Board, in violation of D.C. Official Code § 25-405 (2001); (2) failing to adhere to the filing requirements set out in D.C. Official Code § 25-405 (2001), in violation of D.C.M.R. § 601.8; (3) failing to submit to the Board in a timely manner, but no later than 15 calendar days after the change had occurred, documentation reflecting a change in controlling 25 % or more of common stock of a corporate license, or of the partnership interest of a limited partnership licensee in violation of D.C.M.R. § 601; (4) having, without seeking prior approval from the Board, extended the hours of operation, in violation of D.C. Official Code § 25-762 (b) (2001); and 5) selling, serving or permitting the consumption of alcoholic beverages beyond the permitted hours of sale and service for on-premises retail licensees, in violation of D.C. Official Code § 23-723 (b) (3) (2001). (See Show Cause Case File No. 7920, 8122-07/004C.)

2

3. On July 18, 2007, the Respondent filed a Motion to Dismiss or in the Alternative, A Motion to Stay, Charges I, II, and III of the Show Cause Notice. (Tr. 07/18/07 at 10.) After hearing oral arguments, the Board denied the Respondent's Motion to Dismiss on July 18, 2007. (Tr. 07/18/07 at 17.) Respondent did not contest the allegations set forth in Charges IV and V. (Tr. 07/18/07 at 21, 23.)

4. Laverne Fletcher is a Mediation Specialist with the Alcoholic Beverage Regulation Administration. (Tr. 07/18/07 at 25.) She has also served as Interim Chief Investigator where her responsibility was to oversee the operation of the Enforcement Division. (Tr. 07/18/07 at 25-26.) It was during her tenure as the Interim Chief Investigator that she became familiar with the Respondent when she investigated its activities. (Tr. 07/18/07 at 27, 43.) In the course of her investigation, she reviewed the ABC License Application, the Certificate of Organization, the Notice of Issuance of the ABC License and the nightclub's Operating Agreement. (See Government Exhibit No. 1; Tr. 07/18/07 at 29-30.) The ABC License Application is dated April 4, 2005. (Tr. 07/18/07 at 41-42.) Only Hubert Philogene's name is on the ABC License Application and his title is listed as manager. (Tr. 07/18/07 at 30, 38, 41-42.) The Notice of Issuance of the ABC License also only contains Mr. Philogene's name. (Tr. 07/18/07 at 30.)

5. Investigator Fletcher's review of the nightclub's Operating Agreement revealed that Mr. Philogene, Mr. Garnier and Mr. Allen each have a 33.3 percent interest in the nightclub. (See Government Exhibit No. 1C; Tr. 07/18/07 at 31, 45.) The Operating Agreement designates Mr. Allen as the Manager, Mr. Garnier as the First Assistant Manager and Mr. Philogene as the Second Assistant Manager. (Tr. 07/18/07 at 32, 94.) Investigator Fletcher stated that the ABC License Application was never updated to reflect the current ownership structure nor were any documents submitted to ABRA to demonstrate a change in ownership of the nightclub. (Tr. 07/18/07 at 32, 39.) Investigator Fletcher indicated that ABRA procedure requires licensees to file an Application to Transfer to New Owner within 15 days of the date of change in ownership. (Tr. 07/18/07 at 33, 44-46.) This submission is necessary in order to receive the Board's approval. (Tr. 07/18/07 at 44.) The nightclub's Operating Agreement was executed February 24, 2006 and no Application to Transfer to New Owner was filed within 15 days of the February 24, 2006 date. (Tr. 07/18/07 at 33.)

6. Phillip Allen has lived at 3711 Essex Road, Baltimore, Maryland for over eight years. (Tr. 07/18/07 at 58.) He is self-employed and works as a professional real estate investor. (Tr. 07/18/07 at 58-59.) He is familiar with the Respondent because of an event he attended at the establishment in May or June of 2005. (Tr. 07/18/07 at 59.) Mr. Philogene told Mr. Allen that for an investment of $60,000.00, Mr. Allen could have an interest in the nightclub and for an investment of $120,000.00, Mr. Allen could become a partner in the nightclub. (Tr. 07/18/07 at 62, 87; Tr. 08/07/07 at 8.) Based upon a verbal agreement, Mr. Allen made an initial payment to Mr. Philogene of $30,000.00 on June 28, 2005. (Tr. 07/18/07 at 62, 65-66; Tr. 08/07/07 at 7, 10.) Between June 2005 and August 2005, Mr. Allen made an additional investment in the amount of $42,800.00. (Tr. 08/07/07 at 14-16.) Mr. Allen made another payment of $56,000.00 jointly with Mr. Garnier after the Operating Agreement was executed. (Tr. 07/18/07 at 66-67, 78.) Mr. Allen contributed a total of $282,000.00 to the nightclub's operations to pay for back rent, remodeling, salaries, promotional events, marketing, liquor inventory and upgrades.

(Tr. 07/18/07 at 67-69; Tr. 08/07/07 at 31.)  Mr. Allen considered himself to be a partner in the business.  (Tr. 07/18/07 at 70; Tr. 08/07/07 at 6, 16.)

7.  Mr. Allen trusted Mr. Philogene to operate in a business relationship with him without a written agreement until February 2006.  (Tr. 07/18/07 at 70.)  Mr. Philogene produced an initial Operating Agreement in the fall of 2005, but Mr. Allen and Mr. Garnier refused to sign it because it listed four partners, one of whom was making no financial investment in the business.  (Tr. 07/18/07 at 70-71, 74-75; Tr. 08/07/07 at 52, 71.)  When Mr. Allen met Mr. Garnier at a business meeting, he believed Mr. Garnier to be one of the owners. (Tr. 07/18/07 at 73.)  Mr. Allen, Mr. Garnier and Mr. Philogene eventually entered into an Operating Agreement on February 24, 2006 that listed the three men as partners.  (See Government Exhibit No. 1C; Tr. 07/18/07 at 75-77; Tr. 08/07/07 at 52.)

8.  Mr. Allen believed that when he invested in the nightclub, he would own 33.3 percent of the establishment.  (Tr. 07/18/07 at 80.)  An Addendum to the Operating Agreement (Addendum), also dated February 2006, reflected Mr. Allen's investment of $30,000.00. (Government's Exhibit No. 1C; Tr. 07/18/07 at 83.)  The Addendum reflected that Mr. Philogene relinquished the day-to-day managerial duties to Mr. Allen and Mr. Garnier. (See Government's Exhibit No. 1C; Tr. 07/18/07 at 93, 95.)  It was Mr. Allen's understanding that in exchange for his investment in the nightclub, he would receive an allocation of the profits based upon his percentage interest in the ownership.  (Tr. 07/18/07 at 111; Tr. 08/07/07 at 36.)

9.  Mr. Allen also understood that all three partners would be listed on the ABC liquor license.  (Tr. 07/18/07 at 78-80.)  He was told by the establishment's attorney that he had rights to the ABC license because he was a member of the nightclub.  (Tr. 08/07/07 at 18-19, 21, 33, 67-68.)  He learned in December of 2005 that his name was not listed on the license.  (Tr. 08/07/07 at 19.)  Mr. Allen stated that he and Mr. Garnier produced the necessary documentation for Mr. Philogene to file the Application for Transfer to New Owner with ABRA.  (Tr. 7/18/07 at 86.)  The three men met with ABRA staff to effectuate the license change.  (Tr. 08/07/07 at 25-26; 65-66.)  There were problems with the filing because Mr. Philogene could not produce a Clean Hands certificate for the business.  (Tr. 08/07/07 at 55-56.)  Mr. Allen's relationship with Mr. Philogene deteriorated following the execution of the Operating Agreement.  (Tr. 07/18/07 at 86; Tr. 08/07/07 at 31.)  He stated that Mr. Philogene failed to comply with the terms of the Operating Agreement and there is no oversight regarding the income or the monetary investments.  (Tr. 07/18/07 at 86; Tr. 08/07/07 at 31-32.)

10.  George Garnier is a 27 year resident of Takoma Park, Maryland.  (Tr. 08/07/07 at 75.)  He is self-employed as a welding and heating construction worker.  (Tr. 08/07/07 at 76.)  Mr. Garnier entered into a business relationship with Mr. Philogene in September 2004 when he invested $5,000.00 in the nightclub.  (Tr. 08/07/07 at 83, 106.)  Over time, Mr. Garnier invested a total of $160,000.00 to $180,000.00 into the business.  (Tr. 08/07/07 at 83.)  The investment was used to purchase liquor, equipment and supplies; renovate the building and pay staff salaries.  (Tr. 08/07/07 at 84, 100.)  Mr. Garnier understood that his position in the nightclub from the very beginning was to be a partner. (Tr. 08/07/07 at 84, 117.)  He did not initially sign any documents formalizing the business relationship because he trusted Mr. Philogene.  (Tr. 08/07/07 at 85.)

4

11. Mr. Garnier met Mr. Allen in August 2005 through his relationship with Mr. Philogene. (Tr. 08/07/07 at 86.) Mr. Allen was introduced to Mr. Garnier as Mr. Philogene's partner. (Tr. 08/07/07 at 88, 98.) The three men entered into the Operating Agreement because they were having financial difficulty with the business. (Tr. 08/07/07 at 89.) Mr. Garnier continued to invest money but the nightclub wasn't generating enough income on a given weekend to purchase the liquor for a subsequent weekend. (Tr. 08/07/07 at 90.) The nightclub's bills were not being paid either. (Tr. 08/07/07 at 90.) Mr. Garnier understood that he and Mr. Allen were supposed to be listed on the ABC liquor license. (Tr. 08/07/07 at 91.) Mr. Garnier believed that the Operating Agreement established a three way partnership with each partner receiving 33.3 percent interest in the nightclub. (Tr. 08/07/07 at 92, 107, 118.)

12. Mr. Garnier discovered he too, was not on the Respondent's liquor license in August 2005. (Tr. 08/07/07 at 119.) He was told that he did not have to be on the license to be a part of the management. (Tr. 08/07/07 at 121.) He prepared all the information required of him to file the documents for the Change of Ownership Application. (Tr. 08/07/07 at 92-93, 122-123.) Mr. Philogene, Mr. Allen and Mr. Garnier met with ABRA staff to file the Transfer Application in June 2006. (Tr. 08/07/07 at 93, 103, 120.) Mr. Garnier stated that he and Mr. Allen could not make the changes to the Application on their own accord because Mr. Philogene was the only member listed on the original ABC License. (Tr. 08/07/07 at 94.) Mr. Garnier gave all of the documentation to Mr. Philogene to file with ABRA but the Application was never processed. (Tr. 08/07/07 at 94, 120-121.) Mr. Philogene told Mr. Garnier that he lost the documentation and that he couldn't find it. (Tr. 08/07/07 at 94.) Mr. Garnier's relationship with Mr. Philogene has also deteriorated. (Tr. 08/07/07 at 94.) He was not permitted to enter the establishment the last time he visited, because Mr. Philogene had changed the locks. (Tr. 08/07/07 at 95, 108.) Mr. Philogene told him he was removing him from the business. (Tr. 08/07/07 at 96.)

13. Hubert Philogene is a resident of Silver Spring, Maryland. (Tr. 08/07/07 at 145.) He formed the establishment, Caribbean Culture Center, LLC located at 1824 Half Street N.W., in 2004. (Tr. 08/07/07 at 145-146.) He was the only member listed when he applied for his ABC license in March 2005. (See ABRA Licensing File No. 72458; Tr. 08/07/07 at 146-147, 178.) He considered Mr. Garnier to be an investor. (Tr. 08/07/07 at 147.) Mr. Allen came into the business as an investor as well in June 2005. (Tr. 08/07/07 at 148, 157.) He offered Mr. Allen and Mr. Garnier his draft of the Operating Agreement, but the two investors never signed it. (Tr. 08/07/07 at 148.)

14. Mr. Philogene stated that all three members met in February 2006 wherein all three signed the Operating Agreement. (Tr. 08/07/07 at 158.) At that time, Mr. Philogene agreed to have Mr. Allen and Mr. Garnier act as managers of the nightclub. (Tr. 08/07/07 at 158.) He stated that he could not accomplish the transfer of ownership for the new ABC license due to problems he was having with the Clean Hands certification. (Tr. 08/07/07 at 159.) It is Mr. Philogene's position that the Operating Agreement is not valid. (Tr. 08/07/07 at 176.)

15. Mr. Philogene acknowledges that an ABRA investigator did enter the nightclub and that ABRA violations occurred at the establishment. (Tr. 08/07/07 at 175.) He has taken

5

steps to address the violations such as posting the hours of operation at the bar and announcing last call one half hour before the nightclub closes. (Tr. 08/07/07 at 175.) Mr. Philogene has not submitted the Security Plan requested by the Board on March 15, 2006. (Tr. 08/07/07 at 189-190.)

16. The Respondent admitted Charge IV wherein he extended the hours of his operation without the prior approval of the Board and Charge V wherein he sold, served or permitted the consumption of alcoholic beverages beyond the permitted hours of sale and service. (Tr. 07/18/07 at 21, 23.)

## CONCLUSIONS OF LAW

17. The Board has the authority to suspend or revoke the license of a licensee who violates any provision(s) of Title 25 of the D.C. Official Code pursuant to D.C. Official Code § 25-823 (1) (2001). Additionally, the Board has the authority to impose civil penalties on a licensee who violates any provision(s) of Title 25 of the D.C. Official Code pursuant to D.C. Official Code § 25-830 (2001). In the present case, the Board finds that the Respondent's violations of D.C. Official Code § 25-405 (2001), D.C. Official Code § 25-762 (2001) and D.C. Official Code § 25-763 (2001), as described below, warrant the revocation of the Respondent's Class "CN" Retailer's License.

18. With regard to Charge I, Specification A, the Board found that the testimony of ABRA Investigator Fletcher clearly established that the Respondent changed the stock ownership without seeking prior approval of the Board. Specifically, she testified that Mr. Philogene was the sole individual listed on the original ABC license application filed with ABRA on April 4, 2005. He is also the only party listed on the Notice of Issuance of the ABC License. Subsequent to the filing of the original ABC license application, Mr. Philogene entered into an Operating Agreement with Mr. Allen and Mr. Garnier to govern the operations of the nightclub. Investigator Fletcher's review of the February 24, 2006 Operating Agreement reveals that Mr. Allen is listed as the Manager, Mr. Garnier is listed as the First Assistant Manager and Mr. Philogene is listed as the Second Assistant Manager. Additionally, each of the three members were granted a 33.3% interest in the nightclub. Investigator Fletcher testified that the ABC license was never updated to reflect the current ownership structure as set forth in the Operating Agreement. Nor were any documents submitted to ABRA to demonstrate a change in the ownership of the nightclub. The nightclub's Operating Agreement was executed February 24, 2006 and no Change of Ownership Application was filed within 15 days of the February 24, 2006 date as required by law. Consequently, the Board found under Charge I, Specification A, that the Respondent changed the stock ownership or partnership interest of Caribbean Cultural Center, LLC by 50% or more, within a 12 month period, without seeking prior approval from the Alcoholic Beverage Control Board (Board) in violation of D.C. Official Code § 25-405 (2001).

19. With regard to Charge II, Specification A, the Board must find that the Respondent failed to adhere to the filing requirements set out in D.C. Official Code § 25-405 (2001) in violation of D.C.M.R. § 601.8. The Board notes that in finding the Respondent guilty of Charge I, the Board also finds the Respondent guilty of Charge II as Charge II is a

6

lesser charge that contains the same Specification A alleged in Charge I. This is consistent with previous Board practice and procedure in other Show Cause hearings.

20. With regard to Charge III, the Board must determine that the Respondent failed to submit to the Board in a timely manner, but no later than 15 calendar days after the change had occurred, documentation reflecting a change in controlling 25% or more of common stock of a corporate license or of the partnership interest of a limited partnership licensee in violation of D.C.M.R. § 601. The Board notes that in finding the Respondent guilty of Charge I and II, the Board also finds the Respondent guilty of Charge III as Charge II and III are lesser charges that contain the same Specification A alleged in Charge I and II. This is consistent with previous Board practice and procedure in other Show Cause hearings.

21. With regard to Charge IV, the Board must determine whether the Respondent, without seeking prior approval from the Board, extended the hours of its operation. At the July 18, 2007 Show Cause Hearing, the Respondent admitted to the allegations set forth in Charge IV and as a result, the Board found that the Respondent did extend its hours of operation without prior Board approval in violation of D.C. Official Code § 25-762 (b)(13) (2001).

22. With regard to Charge V, the Board must determine whether the Respondent sold, served or permitted the consumption of alcoholic beverages beyond the permitted hours of sale and service for on-premises retail licensees. At the July 18, 2007 Show Cause Hearing, the Respondent admitted to the allegations set forth in Charge V and as a result, the Board found that the Respondent sold, served or permitted the consumption of alcoholic beverages beyond the permitted hours of sale and service for on-premises retail licensees, in violation of D.C. Official Code § 23-723(b) (3) (2001).

23. In making its decision to revoke the Respondent's license rather than suspend it, the Board relied on the testimony and evidence submitted by Investigator Fletcher. Her thorough examination of the ABRA license file and the Operating Agreement underscores the Respondent's failure to file, as required by law, an Application for Transfer to New Owner when the ownership of the establishment was changed to include two additional members. The Board found these charges to be serious as it is imperative that the Board knows and has confidence with regard to who owns and is operating a licensed establishment. Additionally, the Respondent failed to submit the proper documentation requesting written approval of the transfer. The Board found that these violations and the disregard of the nightclub's management to comply with the laws and regulations that govern licensed establishments, notwithstanding their knowledge of the licensing requirements, warrants the revocation of the Respondent's license.

24. Based upon the above, the Board finds that the Respondent's violation of D.C. Official Code § 25-405 (2001), as set forth in Specification A of Charge I and II, and the violation of D.C.M.R. § 25-601 in Charge III, in addition to the violation of D.C. Official Code § 25-762 (b) (13) (2001) of Charge IV and D.C. Official Code § 25-723 (b) (3) (2001) of Charge V warrants the revocation of the Respondent's Retailer's Class "CN" License.

7

## ORDER

Based upon the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** on this 19th day of March 2008, that:

1. The Respondent's Retailer's Class "CN" License, at 1824 Half Street S.W., Washington, D.C., shall be and is hereby revoked.

District of Columbia
Alcoholic Beverage Control Board

*Peter B. Feather*

Peter B. Feather, Chairperson

*Judy A. Moy*

Judy A. Moy, Member

_____

Albert G. Lauber, Member

_____

Mital M. Gandhi, Member

Pursuant to pursuant to Section 11 of the District of Columbia Administrative Procedure Act, Pub. L. 90-614, 82 Stat. 1209, D.C. Official Code §2-510 (2001) and Rule 15 of the District of Columbia Court of Appeals, any party adversely affected has the right to appeal this Order by filing a petition for review, within thirty (30) days of the date of the service of this Order, with the District of Columbia Court of Appeals, 500 Indiana Avenue, N.W., Washington D.C. 20001.

Also, pursuant to section 11 of the District of Columbia Administrative Procedure Act, Pub. L. 90-614, 82 Stat. 1209, D.C. Official Code § 2-510 (2001), and Rule 15 of the District of Columbia Court of Appeals, any party adversely affected has the right to appeal this Order by filing a petition for review, within thirty (30) days of the date of service of this Order, with the District of Columbia Court of Appeals, 500 Indiana Avenue, N.W., Washington, D.C. 20001. However, the timely filing of a Motion for Reconsideration pursuant to 23 DCMR § 1719.1 (April 2004) stays the time for filing a petition for review in the District of Columbia Court of Appeals until the Board rules on the motion. See D.C. App. Rule 15(b).

8

# CLUB ZONE OVERTIME

## MEETING AGENDA

### 9-18-06

Exhibit I

1. Welcome to All

2. Introduction of SOD

3. Introduction of ABRA-Mrs. Maria Delaney

4. Introduction of Club Owners

5. Overview of the Reimbursable Overtime Order

6. Reimbursable Fee Form- 30 days in Advance – Fee is also due at this time. To ensure officers are paid accordingly. **Officer Marsha Thompson**

7. Need for Officers-District Commanders Discretion

8. Minimum of Two Officers-will be adjusted according to demand/incidents

9. Hours of Each Detail

10. Documentation of ABRA Violations

11. Comments

12. Conclusions

Dec-01-2005  03:11pm    From-SOD SPECIAL EVENTS

*Exibit I*



Special Operations Division
Special Events Branch

**METROPOLITAN**
**POLICE**

Commander
Cathy Lanier
Office 202-671-6522
Fax    202-727-6839

*Thomson*                    *973-906-8016*

# Facsimile Transmission Cover Sheet

DATE: _____*12/1/05*_____

TO: _____*LEVI OR HORBURT*_____

Fax Number: _____*202-479-4171*_____

FROM: SOD Special Events Planning Unit

Reference: _____*Lime club*_____

Number of pages including cover sheet: _____*2*_____

If you do not receive all pages, please call 202-671-6522

Comments:

_____

300 I Street, NW, Washington, DC 20017  •  (202) 671-6522  •  Fax: (202) 727-6839

Special Operations Division
Special Events Branch



Commander
Cathy Lanier
Office 202-671-6522
Fax    202-727-6839

Exhibit J

## Facsimile Transmission Cover Sheet

DATE: _1-10-06_

TO: _Limo Club_

Fax Number: _479-4171_

FROM: SOD Special Events Planning Unit

Reference: _INVOICES_

Number of pages including cover sheet: _4_

If you do not receive all pages, please call 202-671-6522

Comments:

**Metropolitan Police Department**
Special Operations Division
2301 L Street, NW
Washington, DC 20037
Phone: 202 671-6522/Fax 202: 727-6839

Lime Club
1800 Half Street SW
Washington, DC

**INVOICE**
STATEMENT FOR POLICE SERVICES RENDERED
Date: 11/23/06
Federal Tax ID:# 51-6001131
Prepared by: M. Thompson
Date Received:11/22/06

TACIS Code: _____

Issued On: _____

Event:      **Lime Club**
Location:   1800 Half Street SW

Reimbursable Detailed Handled By:
Date & Time Notified

First District  / Lt. Charnette Robinson
Nov. 22, 2006 / 1100 hrs

Event Organizer Advised of Estimated
Cost of Police Services (Name/Date):      Mr. Hubert Philegene / Nov. 22, 2006

| DATE | PERSONNEL | TIMES | # OF HOURS | TOTAL HOURS |
|------|-----------|-------|-----------|-------------|
| Dec. 14, 2006 | 3 | 2300-0300 | 4 | 12 |
| Dec. 16, 2006 | 4 | 2300-0400 | 5 | 20 |
| Dec. 17, 2006 | 3 | 2300-0400 | 5 | 15 |
| Dec. 21, 2006 | 3 | 2300-0300 | 4 | 12 |
| Dec. 23, 2006 | 4 | 2300-0400 | 5 | 20 |
| Dec. 24, 2006 | 3 | 2300-0400 | 5 | 15 |

**$55.71 PER HOUR**

| | |
|---|---|
| SUBTOTAL HOURS | 235 |
| SUB GRAND TOTAL FOR EVENT | 13,091.85 |
| GRAND TOTAL FOR EVENT | 11,699.10 |
| 80% OF THE GRAND TOTAL DUE IMMEDIATELY | 9,359.28 |
| REMAINDER BALANCE DUE AFTER THE EVENT | 2,339.82 |

CARIBBEAN CULTURAL CENTER, LLC
DBA LIME
1824 HALF STREET S. W.
WASHINGTON, DC 20024

1824
65-320/550
UPA ICH D432I

Pay to the
Order of    DC. Treasury                    Date _____

W ne Thousand Three Hundred fifty nine 59/00              J  9,359.28

**WACHOVIA**
Wachovia Bank, N.A.
wachovia.com                                            Dollars

DON'T WORRY BE HAPPY

Police Detail Nov23 - Dec 24

⑈001824⑈ ⑊055003201⑊ 20000269504330⑈

**Metropolitan Police Department**
Special Operations Division
2301 L Street, NW
Washington, DC 20037
Phone: 202 671-6522/Fax 202: 727-6839

Lime Club
1800 Half Street SW
Washington, DC

**INVOICE**
STATEMENT FOR POLICE SERVICES RENDERED
Date: 09/20/06
Federal Tax ID# 51-6001131
Prepared by: M. Thompson
Date Received:09/20/06

TACIS Code: _____

Issued On: _____

Event:    **Lime Club**

Location:    1800 Half Street SW

Reimbursable Detailed Handled By:    First District  / Lt. Charnette Robinson
Date & Time Notified    Sept. 20, 2006 / 1000 hrs

Event Organizer Advised of Estimated
Cost of Police Services (Name/Date):    Mr. Hubert Philegene / September 20, 2006

| DATE | PERSONNEL | TIMES | #OF HOURS | TOTAL HOURS |
|------|-----------|-------|-----------|-------------|
| Oct. 14, 2004 | 3 | 2300-0400 | 5 | 15 |
| Oct. 15, 2006 | 4 | 2300-0400 | 5 | 20 |
| Oct. 19, 2006 | 4 | 2300-0400 | 5 | 20 |
| Oct. 21, 2006 | 3 | 2300-0400 | 5 | 15 |
| Oct. 22, 2006 | 4 | 2300-0400 | 5 | 20 |
| Oct. 26, 2006 | 4 | 2300-0400 | 5 | 20 |
| Oct. 28, 2006 | 3 | 2300-0400 | 5 | 15 |
| Oct. 29, 2006 | 4 | 2300-0400 | 5 | 20 |

| | | |
|---|---|---|
| **$55.71 PER HOUR HOURS** | **GRAND TOTAL** | **390** |

| | |
|---|---|
| GRAND TOTAL FOR EVENT | 21,726.90 |
| 80% OF THE GRAND TOTAL DUE IMMEDIATELY | 17,381.52 |
| + 619.76 OWED FROM SEPT. 3,2006 GRAND TOTAL DUE IMMEDIATELY | 18,001.28 |
| REMAINDER BALANCE DUE AFTER THE EVENT | 4,345.38 |

APPROVED    Yes    **No**    Commander, SOD _____    Date _____

APPROVED    Yes    **No**    Assistant Chief of Police, OSS _____    Date _____

APPROVED    Yes    **No**    Exec. Asst. Chief of Police, Operational Services Group _____    Date _____

ATTENTION    _____    Cluster Controller, Public Safety and Justice    Date _____

**PLEASE MAKE CHECKS PAYABLE TO:  D.C. TREASURER**



**EXHIBIT**

**C**

## 2008 CA 004005 B PHILOGENE, HUBERT Vs. DISTRICT OF COLUMBIA

| File Date | 05/29/2008 | Case Status | Closed | Case Status Date | 05/29/2008 |
|---|---|---|---|---|---|
| | | Case Disposition | Notice of Removal To USDC | Case Disposition Date | 08/12/2008 |

### Party Information

| Party Name | Party Alias(es) | Party Type | Attorney(s) | Attorney Phone |
|---|---|---|---|---|
| PHILOGENE, HUBERT | | PLAINTIFF | PRO SE | |
| DISTRICT OF COLUMBIA | | Defendant | JACKSON, Ms TONI M | (202)727-3625 |
| DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS | | Defendant | | |
| ALCOHOLIC BEVERAGE REGULATION (ABRA) | | Defendant | | |
| METROPOLITAN POLICE DEPARTMENT (MPD) | | Defendant | | |

### Financial Entries

| Receipt # | Date | Received From | | Amount Paid |
|---|---|---|---|---|
| 111449 | 08/06/2008 | PRO SE | | 20.00 |

| Payment | | Fee | |
|---|---|---|---|
| Cash | 20.00 | Cost | 10.00 |
| Change | -10.00 | | |

| Receipt # | Date | Received From | | Amount Paid |
|---|---|---|---|---|
| 111106 | 08/01/2008 | PRO SE | | 40.00 |

| Payment | | Fee | |
|---|---|---|---|
| Cash | 40.00 | Cost | 40.00 |

| Receipt # | Date | Received From | | Amount Paid |
|---|---|---|---|---|
| 105351 | 05/29/2008 | PRO SE | | 140.00 |

| Payment | | Fee | |
|---|---|---|---|
| Cash | 140.00 | Cost | 140.00 |

### Docket Entries

| Date | Text |
|---|---|
| 08/13/2008 | Notice of Hearing Mailed Next Business Day Notice Of Removal Sent on: 08/13/2008 |

15:27:42

08/12/2008 Event Resulted: The following event: Initial Scheduling Conference-60 scheduled for 09/05/2008 at 9:30 am has been resulted as follows: Result: Event Not Held Case Dismissed Judge: FISHER, GERALD I Location: Courtroom 519

08/12/2008 Notice of Removal to USDC for The District of Columbia #

08/12/2008 Notice of Removal to USDC. Filed. Submitted. 08/12/2008 13:42. ncv. Attorney: COATES, NICHOLAS ()

08/11/2008 Proof of Service Method : Service Issued Issued : 07/25/2008 Service : Summons Issued Served : 08/07/2008 Return : 08/11/2008 On : DISTRICT OF COLUMBIA Signed By : Reason : Proof of Service Comment : Tracking #: 5000051093

08/11/2008 Affidavit of Service of Summons & Complaint on DISTRICT OF COLUMBIA (Defendant);

08/11/2008 Affidavit of Service of Summons & Complaint on METROPOLITAN POLICE DEPARTMENT (MPD) (Defendant); on 08/07/08

08/11/2008 Affidavit of Service of Summons & Complaint on DISTRICT OF COLUMBIA, Mayor Office (Defendant); on 08/07/08

08/11/2008 Affidavit of Service of Summons & Complaint on ALCOHOLIC BEVERAGE REGULATION (ABRA) (Defendant) on 8-7-08

08/11/2008 Affidavit of Service of Summons & Complaint on DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS (Defendant) on 8-7-08

08/06/2008 Summons Reissued on The District of Columbia, Office of the Mayor Filed Attorney: PRO SE (999999) Receipt: 111449 Date: 08/06/2008

08/01/2008 Re-Issue Summons On District Of Columbia Attorney General Office Filed Attorney: PRO SE (999999) HUBERT PHILOGENE (PLAINTIFF); Receipt: 111106 Date: 08/01/2008

08/01/2008 Re-Issue Summons District Of Columbia Alcoholic Beverage Regulation Filed Attorney: PRO SE (999999) HUBERT PHILOGENE (PLAINTIFF); Receipt: 111106 Date: 08/01/2008

08/01/2008 Re-Issue Summons On District Of Columbia Metropolitan Police Department Filed Attorney: PRO SE (999999) Receipt: 111106 Date: 08/01/2008

08/01/2008 Re-Issue Summons On District of Columbia Department Of Consumer Regulatory Affairs Filed Attorney: PRO SE (999999) Receipt: 111106 Date: 08/01/2008

07/31/2008 Motion for Extension of Time to Respond to Plaintiff's Amended Complaint. Filed. Submitted. 07/31/2008 12:45. ncv. Attorney: COATES, NICHOLAS ()

07/30/2008 Proof of Service Method : Service Issued Issued : 07/25/2008 Service : Summons Issued Served : 07/24/2008 Return : 07/30/2008 On : ALCOHOLIC BEVERAGE REGULATION (ABRA) Signed By : Jennifer Johnson Reason : Proof of Service Comment : Tracking #: 5000051096

07/30/2008 Affidavit of Service of Summons & Complaint by certified mail on ALCOHOLIC BEVERAGE REGULATION (ABRA) (Defendant);

07/30/2008 Affidavit of Service of Summons & Complaint by certified mail on DISTRICT OF COLUMBIA (Defendant) on 7-21-08

07/30/2008 Affidavit of Service of Summons & Complaint by certified mail on DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS (Defendant) on 7-23-08

07/21/2008 Denial of Default Pursuant to Rule 55 (a). Notice Mailed DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS (Defendant);Only

07/17/2008 Amended Complaint Filed Attorney: PRO SE (999999) HUBERT PHILOGENE (PLAINTIFF);

07/16/2008 Proof of Servcie to Order Granting Defendant's Consented Motion for a more Definite Statement Submitted 07/16/2008 16:35. Signed by Judge Fisher on 7/15/08. ts. Attorney: FISHER, GERALD I (251058)

07/16/2008 Order Granting Defendant's Consented Motion for a more Definite Statement Submitted 07/16/2008 16:35. Signed by Judge Fisher on 7/15/08. ts. Attorney: FISHER, GERALD I (251058)

07/16/2008 ORDER GRANTING Defendant District of Columbia's Consented Motion for More Definite Statement; and Further ORDERED that the Plaintiff must file a more definite statement within ten (10) days of the date of this Order. (Order signed by GIF on July 15, 08.) Entered on the Docket and Efiled on July 16, 08. scc

06/27/2008 Defendant District of Columbia's Consented Motion for More Definite Statement Filed. Submitted 06/27/2008 12:21 jhc. Attorney: JACKSON, Ms TONI M (453765) DISTRICT

OF COLUMBIA (Defendant);

06/20/2008 Affidavit of Subpoena by Special Process Server on Betty Diallo on June 20, 2008 at 9:48 am

06/20/2008 Proof of Service Method : Service Issued Issued : 05/30/2008 Service : Summons Issued Served : 06/02/2008 Return : 06/20/2008 On : DISTRICT OF COLUMBIA Signed By : via Certified Mail Reason : Proof of Service Comment : Tracking #: 5000048837

06/20/2008 Affidavit of Service of Summons & Complaint on DISTRICT OF COLUMBIA (Defendant);

06/20/2008 Proof of Service Method : Service Issued Issued : 05/30/2008 Service : Summons Issued Served : 06/02/2008 Return : 06/20/2008 On : DISTRICT OF COLUMBIA Signed By : via Certified Mail Reason : Proof of Service Comment : Tracking #: 5000048836

06/20/2008 Affidavit of Service of Summons & Complaint on DISTRICT OF COLUMBIA (Defendant);

06/20/2008 Proof of Service Method : Service Issued Issued : 05/30/2008 Service : Summons Issued Served : 06/11/2008 Return : 06/20/2008 On : DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS Signed By : via Certified Mail (Lisa M Morgan) Reason : Proof of Service Comment : Tracking #: 5000048838

06/20/2008 Affidavit of Service of Summons & Complaint on DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS (Defendant);

05/30/2008 Issue Date: 05/30/2008 Service: Summons Issued Method: Service Issued Cost Per: $ DISTRICT OF COLUMBIA 441 4th Street, NW WASHINGTON, DC 20001 Tracking No: 5000048836 DISTRICT OF COLUMBIA 1350 Pennsylvania Avenue, NW WASHINGTON, DC 20004 Tracking No: 5000048837 DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS 941 North Capitol Street, NE WASHINGTON, DC 20002 Tracking No: 5000048838

05/29/2008 Additional Summons Receipt: 105351 Date: 05/29/2008

05/29/2008 Alias Summons Filed Receipt: 105351 Date: 05/29/2008

05/29/2008 Event Scheduled Event: Initial Scheduling Conference-60 Date: 09/05/2008 Time: 9:30 am Judge: FISHER, GERALD I Location: Courtroom 519 Result: Event Not Held Case Dismissed

05/29/2008 Complaint for Abuse of Process Filed Receipt: 105351 Date: 05/29/2008

**EXHIBIT**

D

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

Case: 2008 CA 004005 B
Dkt: CIVASSC

                                  )
                                  )
                Plaintiff(s)      )      Civil Action No. 0004005-08
                                  )
                                  )      FILED
        vs.                       )      CIVIL ACTIONS BRANCH
                                  )      JUN 20 2008
                Defendant(s)      )      SUPERIOR COURT
                                  )      OF THE DISTRICT OF COLUMBIA
                                         WASHINGTON, DC

AFFIDAVIT OF SERVICE BY REGISTERED/CERTIFIED MAIL

        I, _Hubert Philogene_____, under oath do
hereby state the following:
        That my age and birth date are as follows: _40_
_2-6-68_
        That my residential or business address is: _1909_
_Bronzegate Blvd Silver Sprg MD._
        That a copy of the Initial Order, Complaint and Summons
was mailed by the affiant to the above named defendant _Darlene_
_Fields_____ by registered/certified mail.
        That the return receipt attached hereto was signed by
_____, the Defendant herein or
_____, a person of suitable age
and discretion residing therein at the Defendant's usual place of
abode, and the said receipt show the date of delivery as _6-2_
_2008_.

If return receipt does not purport to be signed by the party named
in the Summons, then state specific facts from which the Court can
determine that the person who signed the receipt meets the
appropriate qualifications for receipt of process as required by
SCR (Civil) 4(e)(2) and 4(c)(3).

SPECIFIC FACTS

                                  _____
                                  Signature

Subscribed and sworn to before me this _20_ day of _June_ 19 _2008_

                                  _____
                                  Deputy Clerk/Notary Public

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                   ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery  6/9/8

D. Is delivery address different from Item 1?  ☑ Yes
   If YES, enter delivery address below:        ☐ No

1. Article Addressed to:

oR. Nadine Wilburn Dovelene Fields
441 4th street N.W. 6th fl.
south, Washington, D.C.
           2000?

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7007 2560 0002 1547 3746

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540



EXHIBIT

E

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

```
                              )
                              )
             Plaintiff(s)     )     Civil Action No. 0004005-08
                              )
                              )
      vs.                     )
                              )        FILED
             Defendant(s)     )    CIVIL ACTIONS BRANCH
                              )
                                      JUN 20 2008

                                      SUPERIOR COURT
                                OF THE DISTRICT OF COLUMBIA
                                       Washington, DC
```

AFFIDAVIT OF SERVICE BY REGISTERED/CERTIFIED MAIL

I, _Hubert Philogene_____, under oath do
hereby state the following:
     That my age and birth date are as follows: _40_
_2-6-68_
     That my residential or business address is:
_1909 Bronzegate Blvd. Silver Spring, MD._
     That a copy of the Initial Order, Complaint and Summons
was mailed by the affiant to the above named defendant _Lisa M._
_Moogan_ by registered/certified mail.
     That the return receipt attached hereto was signed by
_Barry Strong_____, the Defendant herein or
_____, a person of suitable age
and discretion residing therein at the Defendant's usual place of
abode, and the said receipt show the date of delivery as _June 11_
_2008_.

If return receipt does not purport to be signed by the party named
in the Summons, then state specific facts from which the Court can
determine that the person who signed the receipt meets the
appropriate qualifications for receipt of process as required by
SCR (Civil) 4(e)(2) and 4(c)(3).

SPECIFIC FACTS

_____
                                      Signature

Subscribed and sworn to before me this _20_ day of _June 18, 2008_

_____
Deputy Clerk/Notary Public

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: LisA M. Morgan.

941 North Cupitol St.
N.E. First Floor
Washington, D.C. 20001

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☐ Agent ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

BARRY STRONG

3. Service Type
   ☑ Certified Mail  ☐ Express Mail
   ☐ Registered      ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*  ☐ Yes

2. Article Number
   *(Transfer from service label)*

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540


EXHIBIT
F

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

)
)
Plaintiff(s)    )        Civil Action No. _00040005-08_
)
)
vs.             )
)
Defendant(s)    )
)

FILED
CIVIL ACTIONS BRANCH
JUN 2 0 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

AFFIDAVIT OF SERVICE BY REGISTERED/CERTIFIED MAIL

I, _Hubert Philogene_____, under oath do
hereby state the following:
     That my age and birth date are as follows: _40___
_2-6-68_
     That my residential or business address is: _____
_1909 Boonze geade. Blvd. Silver Spring MD. 200904_
     That a copy of the Initial Order, Complaint and Summons   _Tabatha_
was mailed by the affiant to the above named defendant _The Mayors_  _Braxton_
_Office Of Secretary_ by registered/certified mail.
     That the return receipt attached hereto was signed by
_M. Smith_____, the Defendant herein or
_____, a person of suitable age
and discretion residing therein at the Defendant's usual place of
abode, and the said receipt show the date of delivery as _6-2_
_2008_

If return receipt does not purport to be signed by the party named
in the Summons, then state specific facts from which the Court can
determine that the person who signed the receipt meets the
appropriate qualifications for receipt of process as required by
SCR (Civil) 4(e)(2) and 4(c)(3).

SPECIFIC FACTS

_____
                Signature

Subscribed and sworn to before me this _20_ day of _June_ 19 _2008_

_____
Deputy Clerk/Notary Public

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Tabatha Braxton

The Mayor Office of

Secretary

1350 Pennsylvania Ave. N.W.

20004

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X M. Smith

☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

DLiver 6-2-2008

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7007 2560 0002 1547 4750

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

4013798 SHUN/ATEM 06/24/2008 9:41:58 AM

FILED
CIVIL ACTIONS BRANCH
JUL 3 0 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

EXHIBIT
G

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

Hubert Philogene )
_vs_ )
Plaintiff(s) )
District of Columbia )
_vs_ )
_ _ _ )
Defendant(s) )

Civil Action No. 2008CA004005B

## AFFIDAVIT OF SERVICE BY REGISTERED/CERTIFIED MAIL

I, Hubert Philogene _____, under oath do
hereby state the following:
        That my age and birth date are as follows: 40
2-6-68 _____
        That my residential or business address is: 1909
Bronzegate Blvd. Silver Spring MD. 20904
        That a copy of the Initial Order, Complaint and Summons
was mailed by the affiant to the above named defendant Department of
Consumer and Regulatory Affairs by registered/certified mail
        That the return receipt attached hereto was signed by
_____, the Defendant herein or
_____, a person of suitable age
and discretion residing therein at the Defendant's usual place of
abode, and the said receipt show the date of delivery as 7-23
2008 _____.

If return receipt does not purport to be signed by the party named
in the Summons, then state specific facts from which the Court can
determine that the person who signed the receipt meets the
appropriate qualifications for receipt of process as required by
SCR (Civil) 4(e)(2) and 4(c)(3).

SPECIFIC FACTS

_____
                                          Signature

Subscribed and sworn to before me this 30 day of July 19 2008

_____
Deputy Clerk/Notary Public

Case: 2008 CA 004005 B
2008-327549SC
Dkt: CIVASSC

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Department of Consumer Regulatory Affairs
941 North Capitol Street N.E
Washington DC 20002

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                   ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
                                  7·23·08

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

ヤc

EXHIBIT

H

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION



Hubert Philogene                    )
                                    )
                    Plaintiff(s)    )        Civil Action No. 2008CA004005B
         District A Columbia        )
                                    )
              vs.                   )
                                    )
                    Defendant(s)    )
                                    )

FILED
CIVIL ACTIONS BRANCH
JUL 30 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

AFFIDAVIT OF SERVICE BY REGISTERED/CERTIFIED MAIL

      I, _Hubert Philogene_____, under oath do
hereby state the following:

      That my age and birth date are as follows: __40__
_2-6-68_____

      That my residential or business address is: _1909_
_Boonreyate Blvd Silver Spring MD. 20904_

      That a copy of the Initial Order, Complaint and Summons
was mailed by the affiant to the above named defendant _The_
_Mayor_____ by registered/certified mail.

      That the return receipt attached hereto was signed by
_Carmen Gauthney_____, the Defendant herein or
_____, a person of suitable age
and discretion residing therein at the Defendant's usual place of
abode, and the said receipt show the date of delivery as _July 21_
_2008_____.

If return receipt does not purport to be signed by the party named
in the Summons, then state specific facts from which the Court can
determine that the person who signed the receipt meets the
appropriate qualifications for receipt of process as required by
SCR (Civil) 4(e)(2) and 4(c)(3).

SPECIFIC FACTS
    Agent

                              _____
                                  Signature

Subscribed and sworn to before me this _30_ day of _July_ 20 _08_

                      _____
               Deputy Clerk/Notary Public

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Mayor
1350 Pennsylvania Ave.
N.W. Washington DC.
20004

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X ☑ Agent
☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery
CARMEN GAUTHNEY   7-21-08

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☑ No

2008 CA 004005B

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
*(Transfer from service label)*

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540



SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

FILED
CIVIL ACTIONS BRANCH
JUL 3 0 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

Hubert Philogene )
                 )
       Plaintiff(s) )        Civil Action No. 2008CA 004005B
DISTRICT of Columbia )
vs.              )
                 )
       Defendant(s) )

AFFIDAVIT OF SERVICE BY REGISTERED/CERTIFIED MAIL

        I, _Hubert Philogene_____, under oath do
hereby state the following:
        That my age and birth date are as follows: _40_
_2-6-68_
        That my residential or business address is: _1909_
_Bronzegate Blvd Silver Spring MD 20904_
        That a copy of the Initial Order, Complaint and Summons
was mailed by the affiant to the above named defendant _Jennifer L._
_Johnson, Alcoholic beverage Regul_ by registered/certified mail.
        That the return receipt attached hereto was signed by
_θ_____, the Defendant herein or
_____, a person of suitable age or
and discretion residing therein at the Defendant's usual place of
abode, and the said receipt show the date of delivery as _July_
_24, 2008_____.

If return receipt does not purport to be signed by the party named
in the Summons, then state specific facts from which the Court can
determine that the person who signed the receipt meets the
appropriate qualifications for receipt of process as required by
SCR (Civil) 4(e)(2) and 4(c)(3).

SPECIFIC FACTS
_No discription_

                                    _____
                                         Signature

Subscribed and sworn to before me this _30_ day of _July_ 19 _2008_

                                    _____
                                    Deputy Clerk/Notary Public

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jennifer L. Johnson
941 North Capitol ST. N.E
Washington D.C. 20002
Suite 7200

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
                                   7-24-08

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

2008CA004005B

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540



EXHIBIT
J



FILED
CIVIL ACTIONS BRANCH
AUG 1 1 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

# Superior Court of the District of Columbia
## CIVIL DIVISION

HUBERT PHILOGENE
_____ Plaintiff

vs.

Civil Action No 2008 CA 004005 B

DISTRICT OF COLUMBIA
_____ Defendant

## AFFIDAVIT OF SERVICE BY PROCESS SERVER

I, __William David Fich__ , having been duly authorized to make service of the Summons, Complaint and Initial Order in the above entitled case, hereby depose and say:

That my age and date of birth are as follows: __25    year-old__
__May 2nd, 1983__

That the residential or business address is : __368 Randolph St NW__

That at __4:51__ o'clock a.m. p.m on the __7th__ day of __August__

20 _____

☐ I served the above named defendant(s)    (personally) _____
_____ (defendant's name) a copy

of the Summons, Complaint and Initial Order at _____

_____

☑ I served the above named defendant(s) __District of Columbia, Office of the Mayor__
(defendant's name) by leaving a copy of the Summons, Complaint and Initial Order at his/her place of abode or business
at __1350 Penn Ave NW #319__ with __Tabatha Braxton__ a person of
approximately __33__ years of age, who stated that he, she resides therein with the defendant.

If return receipt does not purport to be signed by the party named in the Summons, then state specific facts from which the Courts can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process as required by SCR. (Civil) 4 (e) (2).

SPECIFIC FACTS:

_____ Signature

Subscribed and sworn to before me this __7__ day of __August__ 20 __08__

TABATHA BRAXTON
Notary Public District of Columbia
My Commission Expires May 14, 2012



**EXHIBIT**
K

# Superior Court of the District of Columbia
## CIVIL DIVISION

FILED
CIVIL ACTIONS BRANCH
AUG 11 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

Case: 2008 CA 004005 B

HUBERT PHILOGENE
_____
Plaintiff

vs.

DISTRICT OF COLUMBIA
_____
Defendant

Civil Action No 2008CH004005B

## AFFIDAVIT OF SERVICE BY PROCESS SERVER

I, __William David Fish_____ , having been

duly authorized to make service of the Summons. Complaint and Initial Order in the above entitled case, hereby depose
and say:

That my age and date of birth are as follows: 25 years old
May 2nd 1983

That the residential or business address is : 1368 Randolph St NW, Washington, DC

That at 2.41 o'clock a.m./p.m. on the 7th day of August

20 08.

☐ I served the above named defendant(s)    (personally) _____

_____ (defendant's name) a copy

of the Summons, Complaint and Initial Order at _____

_____

☒ I served the above named defendant(s) Alcohol Beverage Regulation Administration c/o Office of Attorney General

(defendant's name) by leaving a copy of the Summons, Complaint and Initial Order at his/her place of abode or business

at 441 4th St #600 NW    Washington with David Robinson _____ a person of

approximately 2-8 years of age, who stated that he/she resides therein with the defendant.

If return receipt does not purport to be signed by the party named in the Summons, then state specific facts from
which the Courts can determine that the person who signed the receipt meets the appropriate qualifications for
receipt of process as required by SCR. (Civil) 4 (e) (2).

SPECIFIC FACTS:

_____
Signature

Subscribed and sworn to before me this __7__ day of __Aug__ 20 08

TABATHA BRAXTON
Notary Public District of Columbia
My Commission Expires May 14, 2012


**EXHIBIT**
L

# Superior Court of the District of Columbia
## CIVIL DIVISION

FILED
CIVIL ACTIONS BRANCH
AUG 1 1 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

HUBERT PHILOGENE
_____
Plaintiff

vs.

Civil Action No 2008CA004005B

DISTRICT OF COLUMBIA
_____
Defendant

## AFFIDAVIT OF SERVICE BY PROCESS SERVER

I, ___William David Fish_____, having been

duly authorized to make service of the Summons, Complaint and Initial Order in the above entitled case, hereby depose

and say:

That my age and date of birth are as follows: 25 years old
May 2nd, 1983

That the residential or business address is : 1368 Randolph St. NW

That at 3.06 o'clock a.m./p.m. on the 7th day of August

20 08.

☐  I served the above named defendant(s)   (personally) _____

_____ (defendant's name) a copy

of the Summons, Complaint and Initial Order at _____

_____

☒  I served the above named defendant(s) Metropolitan Police Department

(defendant's name) by leaving a copy of the Summons, Complaint and Initial Order at his/her place of abode or business

at 300 Indiana Ave NW with LORNA TUCKER-JACKSON a person of
(Washington DC #300)
approximately 58 years of age, who stated that he/she resides therein with the defendant.

If return receipt does not purport to be signed by the party named in the Summons, then state specific facts from

which the Courts can determine that the person who signed the receipt meets the appropriate qualifications for

receipt of process as required by SCR. (Civil) 4 (e) (2).

SPECIFIC FACTS:

Case: 2008 CA 004005 B
Dkt: CI9A55c

_____
Signature

Subscribed and sworn to before me this 7 day of August 20 08

TABATHA BRAXTON
Notary Public District of Columbia
My Commission Expires May 14, 2012



EXHIBIT

M

### Superior Court of the District of Columbia
**CIVIL DIVISION**

FILED
CIVIL ACTIONS BRANCH
AUG 1 1 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

HUBERT PHILOGENE
*Plaintiff*

vs.

Civil Action No. 2008CA004005B

DISTRICT OF Columbia,
*Defendant*

## AFFIDAVIT OF SERVICE BY PROCESS SERVER

I, William David Fish , having been
duly authorized to make service of the Summons, Complaint and Initial Order in the above entitled case, hereby depose
and say:

That my age and date of birth are as follows: 25 years - old
May 2nd, 1983

That the residential or business address is: 1368 Randolph St NW Washington, DC 20011

That at 4:20 o'clock a.m. p.m. on the 7th day of August
20 08

☐ I served the above named defendant(s)     (personally) _____

_____ (defendant's name) a copy
of the Summons, Complaint and Initial Order at _____

☒ I served the above named defendant(s) District of Columbia, Department of Consumer
Regulatory Affairs
(defendant's name) by leaving a copy of the Summons, Complaint and Initial Order at his her place of abode or business
at 941 N. Capitol St. #800 with TONIA ROBINSON a person of
approximately 28 years of age. who stated that he. she resides therein with the defendant.

If return receipt does not purport to be signed by the party named in the Summons, then state specific facts from
which the Courts can determine that the person who signed the receipt meets the appropriate qualifications for
receipt of process as required by SCR. (Civil) 4 (e) (2).

SPECIFIC FACTS: _____

Case: 2008 CA 004005 B
00032154386
DKT: CIVASSC

_____
Signature

Subscribed and sworn to before me this 17 day of August 20 08

TABATHA BRAXTON
*Notary Public District of Columbia*
*My Commission Expires May 14, 2012*



EXHIBIT
N

XC

# Superior Court of the District of Columbia
## CIVIL DIVISION

FILED
CIVIL ACTIONS BRANCH
AUG 1 1 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

HUBERT PHILOGENE
_Plaintiff_

vs.

Civil Action No 2008CA0040005B

DISTRICT OF Columbia
_Defendant_

## AFFIDAVIT OF SERVICE BY PROCESS SERVER

I, __William David Fish__, having been
duly authorized to make service of the Summons, Complaint and Initial Order in the above entitled case, hereby depose
and say:

That my age and date of birth are as follows: __25 years - old__
__May 2nd, 1983__

That the residential or business address is __1368 Randolph St NW__  __Washington DC 20011__

That at __3:31__ o'clock a.m. / (p.m) on the __7-TH__ day of __August__
20 __08__.

☐ I served the above named defendant(s)   (personally) _____
_____ (defendant's name) a copy
of the Summons, Complaint and Initial Order at _____

☒ I served the above named defendant(s) __Alcohol Beverage Regulation Administration__
(defendant's name) by leaving a copy of the Summons, Complaint and Initial Order at his/her place of abode or business
at __941 N. Capitol #7200__ with __Jennifer Johnson__ a person of
approximately __32__ years of age, who stated that he, she resides therein with the defendant.

If return receipt does not purport to be signed by the party named in the Summons, then state specific facts from
which the Courts can determine that the person who signed the receipt meets the appropriate qualifications for
receipt of process as required by SCR. (Civil) 4(c)(2)

SPECIFIC FACTS:

Case: 2008 CA 004005 B

Signature

Subscribed and sworn to before me this __7__ day of __August__ 20 __08__
TABATHA BRAXTON
Notary Public District of Columbia
My Commission Expires May 14, 2012

EXHIBIT

_O_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Hubert Philogene,                )
                                 )
                Plaintiff,       )
                                 )        Civil No. 08-01399 (RWR)
v.                               )
                                 )
District of Columbia, et al,     )
                                 )
                Defendants.      )
_____  )

## AFFIDAVIT OF ROBERT CARTER

I, ROBERT CARTER , being duly sworn, states that the following is true to the best of my knowledge, information and belief:

1.      I am the Interim Claims Manager, Settlements and Judgments for the Tort Liability Division, District of Columbia Office of Risk Management.  The Tort Liability Division receives, processes and investigates potential claims against the District of Columbia, pursuant to D.C. Official Code § 12-309 (2001 ed.).  The Office of Risk Management commenced to receive potential claims on January 15, 2004.

2.      Receipt of written notice of claims against the District of Columbia, are forwarded directly to the Tort Liability Division for processing.  When the Tort Liability Division receives notices of claims either from the Mayor's Office or directly, the Tort Liability Division records the receipt of such notice in its claims management system.

3.   Claims previously handled by the Claims Unit for the Office of the Attorney General still under investigation as of January 15, 2004, were also transferred to the Office of Risk Management and recorded in its claims management system.

4.   I have conducted a diligent search of the records placed in the Risk Management system in the DC Office of Risk Management.  The result of this search has revealed that the Tort Liability Division of the District of Columbia Office of Risk Management, has received no claim notice from HUBERT PHILOGENE that referred to claims of false arrest and imprisonment, illegal citations, illegal seizure or due process violations, described in the Amended Complaint in Civil No. 08-01399 (RWR).

                                    ROBERT CARTER


DISTRICT OF COLUMBIA, ss:

       I, _____ , a Notary Public in and for the District of Columbia, do hereby certify that ROBERT CARTER, whose name is signed to the foregoing affidavit, bearing the date of the _____ day of August, 2008, personally appeared before me and executed the said release, and acknowledged the same to be his act and deed.

       Given under my hand and official seal this _____ day of August, 2008.

                                    NOTARY PUBLIC
                          My Commission Expires: _2/28/09_

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Hubert Philogene,    )
          )
    Plaintiff,   )
          )  Civil No. 08-01399 (RWR)
v.         )
          )
District of Columbia, et al,  )
          )
    Defendants.  )
_____)

## <u>ORDER</u>

   Upon consideration of Defendants' Motion to Dismiss Plaintiff's Amended

Complaint, the Memorandum of Points and Authorities in Support, and any opposition

thereto, it is by the Court, this _____ day of _____, 2008,

   **ORDERED** that Defendants' Motion to Dismiss is hereby GRANTED.  It is

   **FURTHER ORDERED**, that the Amended Complaint is DISMISSED with

prejudice.

            _____
              Judge Richard W. Roberts

Copies to:  Nicholas Coates
      Assistant Attorney General
      441 4th Street, N.W.
      Washington, D.C.

      Hubert Philogene
      915 5th St. NW
      Washington, DC 20001